**Name:** Alexandra Ferreira da Silva

**Street Address:** 10232 Luther Rd

City and County: Live Oak, Sutter

State and Zip Code: California, 95953

**Telephone Number:** 530 315 21 90



**FILED**

OCT 0 1 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

## Robert T. Matsui Federal Courthouse · Address

### 501 I St, Sacramento, CA 95814 – 4th Floor

| | |
|---|---|
| ALEXANDRA FERREIRA DA SILVA; | ) |
| Plaintiff. | ) |
| -against-<br>01208 | ) Case Number 2:21-cv-<br>1208 15m c kd (PS) |
| DHS – ICE – Yuba County Jail – Sheriff Dp. Of Yuba Co. | ) Amend complaint |
| Officer Morgan Heidi C. (floor officer) | ) |
| Litigants, | ) |

**Amended to complaint**

**Table of contents**

1 – Cover

2 – Defense v Sovereign immunity

3 –News > crime public safety

4 – Civil rights complaint

5 – Claim for personal injuries (Govt C910)

6 – Form - Claim for damage, injury, or death

7 – Pictures 1– hallway/ area where physical assault took place

8 – Pictures 1– hallway/ area S-tank where harassments and psychological tort took place

9 – Overview about officer Morgan accusation

9 – Several issues at Yuba County Jail

10 – Accusation of fraud – ICE

11 – F1 Visa General information

12 – Medico record

13 – Litigation hold letter

14 –Litigation letter / notification parties

14 – New prosecutorial discretion police

15 – Proof of service

**Definition of sovereign immunity.**

*The sovereign immunity refers to the fact that the government cannot be sued without its consent.*

**Overview**

*Sovereign immunity was derived from British common law doctrine based on the idea that the King could do no wrong. In the United States, sovereign immunity typically applies to the federal government and state government, but not to municipalities. Federal and state governments, however, have the ability to waive their sovereign immunity. The federal government did this when it passed the Federal Tort Claims Act, which waived federal immunity for numerous types of torts claims.*

**Within 6 months**

*Under California Government Code § 945.6, you must sue within 6 months from the date of the postmark or personal delivery of your right to sue letter. If the agency does not provide any written notice rejecting your claim, you have two years from the date of injury or damage.*

**Federal Tort Claims Act**

*In this case Sovereign Immunity does not apply. The authorities mentioned have violated my constitutional rights, and those rights are clearly known by the parts motioned as it establishes that a reasonable officer / reasonable official would have known he/she committed the constitutional violation.* Also known as the FTCA (Federal Tort Claims Act). Authorizes private tort actions against the United States where, if the United States were a private person, it would be liable to the claimant according to the law of the place where a particular act or omission occurred.

https://www.law.cornell.edu/wex/sovereign_immunity

**"FTCA" redirects here. For the Federal Trade Commission Act, see Federal Trade Commission Act.**

Legislative Reorganization Act of 1946/Great Seal of the United States/ Long title/To provide for increased efficiency in the legislative branch of the Government. / Enacted by the 79th United States Congress/ Effective August 2, 1946; 75 years ago/ Citations / Public law Pub.L. 79–601 / Statutes at Large       60 Stat. 812 through 60 Stat. 852 (40 pages)/ Legislative history/ Signed into law by President Harry S. Truman on August 2, 1946/ United States Supreme Court cases/ Feres v. United States/ Millbrook v. United States

The Federal Tort Claims Act (August 2, 1946, ch.646, Title IV, 60 Stat. 812, 28 U.S.C. Part VI, Chapter 171 and 28 U.S.C. § 1346) ("FTCA") is a 1946 federal statute that permits private parties to sue the United States in a federal court for most torts committed by persons acting on behalf of the United States. Historically, citizens have not been able to sue their state—a doctrine referred to as sovereign immunity. The FTCA constitutes a limited waiver of sovereign immunity, permitting citizens to pursue some tort claims against the government. It was passed and enacted as a part of the Legislative Reorganization Act of 1946.

https://en.wikipedia.org/wiki/Federal_Tort_Claims_Act

In most California Tort Claim Act claims, proper notice of a claim must be filed within six months of the injury or accident.

See also, public employees are liable for their torts except as otherwise provide by statute (govt c §1820(a)). Government code §815.6 makes a public liable for breach of mandatory duty imposed by an enactment that is designed to protect against the risk of particular kind risk of injury, unless the [public entity. California Code, Evidence Code - EVID §669, §835, §9.29 (a), gray v state (1989)

Assault and Battery: 5Also found in: Dictionary, Thesaurus, Medical, Acronyms, Idioms, Encyclopedia, Wikipedia.

Related to Assault and Battery: false imprisonment - Assault and Battery: Two separate offenses against the person that when used in one expression may be defined as any unlawful and unpermitted touching of another. Assault is an act that creates an apprehension in another of an imminent, harmful, or offensive contact. The act consists of a threat of harm accompanied by an apparent, present ability to carry out the threat. Battery is a harmful or offensive touching of another.

The main distinction between the two offenses is the existence or nonexistence of a touching or contact. While contact is an essential element of battery, there must be an absence of contact for assault. Sometimes assault is defined loosely to include battery.

Assault and battery are offenses in both criminal and Tort Law; therefore, they can give rise to criminal or civil liability. In Criminal Law, an assault may additionally be defined as any attempt to commit a battery.

At Common Law, both offenses were misdemeanors. As of the early 2000s, under virtually all criminal codes, they are either misdemeanors or felonies. They are characterized as felonious when accompanied by a criminal intent, such as an intent to kill, rob, or rape, or when they are committed with a dangerous weapon. - Intent: Intent is an essential element of both offenses. Generally, it is only necessary for the defendant to have an intent to do the act that causes the harm. In other words, the act must be done voluntarily. Although an intent to harm the victim is likely to exist, it is not a required element of either offense. There is an exception to this rule for the attempted battery type of criminal assault. If a defendant who commits this crime does not have an intent to harm the victim, the individual cannot be guilty of the offense.

**Physical and psychological integrity pursuant to article 8 ECHR**

The protection of private life under article 8 ECHR encompasses a person's physical and psychological integrity. A person's body is an intimate aspect of his or her private life (Y.F v Turkey) and a sound mental state is an important factor for the possibility to enjoy the right to private life (Bensaid v UK para 47). Measures which affect the physical integrity or mental health have to reach a certain degree of severity to qualify as an interference with the right to private life

under Article 8 (Bensaid v UK, para 46). However, the Court has also held that even minor interferences with a person's physical integrity may fall within the scope of article 8 if they are against the person's will (Storck v Germany, para 143)

As far as the physical integrity is concerned, the scope of article 8 overlaps with the ambit of article 3 ECHR. As pointed out above, the Court distinguishes the fields of application of these two provisions according to the gravity of the interference. While it considers article 3 lex specialist if grave interferences with a person's well-being are in question, the right to private life comes into play when the interference does not reach the threshold required to qualify it as torture or inhuman treatment.

https://human-rights-law.eu/echr/article-8-echr-right-to-private-life-family-life-correspondence-and-home/physical-psychological-integrity-pursuant-article-8-echr/

### What Is Psychological Abuse?

Psychological abuse can be defined as the systematic use of malicious manipulation through nonphysical acts against an intimate partner, child, or dependent adult. Also known as emotional abuse, these actions can include threatening the physical health of the victim or the victim's loved ones, purposely controlling the victim's freedom, and/or acting to undermine or isolate the victim. Psychological abuse can occur prior to physical, sexual, or other abuses. However, it can also happen at the same time. Even when it occurs by itself, it is thought to cause long-term damage to the victim's mental health.

Frequent bruising and broken bones are often signs of physical abuse, but this type of abuse leaves no visible marks. Psychological abuse is emotionally damaging because it is about someone manipulating your emotions in a psychological manner. In private, many emotional abusers may come across as bullies. However, it is more than just bullying or verbal assaults. This makes it difficult for others to believe the victim is being abused because the abuser often fakes affection in public, while knowing precisely how to manipulate situations in private that hurt and humiliate his or her victims.

The abuser is not crazy. He or she chooses who to be mean to and will often do whatever it takes to stay in control of the relationships and victims. For example, the person who is nice to the friend who irritates him or her, but comes home to call his or her spouse or children stupid, lazy, or worthless for the same irritation.

e-definition-lesson-quiz.hthttps://study.com/academy/lesson/what-is-psychological-abusml

### What is PHYSICAL VIOLENCE?

the term that is applied to bodily harm that a person will inflict on another person.

https://thelawdictionary.org/physical-violence/

**What is AGGRESSION?**

Harmful behavior. It can be physical or emotional and may have built up for a long time. The act can be directed at people or a thing.

https://thelawdictionary.org/aggression/

**Omission of help**

What is OMISSION?

Failure to complete a duty or task, usually as a result of apathy, complacency or neglect.

The Law Dictionary; Featuring Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.

What is SLANDER?

In torts. Oral defamation; the speaking of false and malicious words concerning another, whereby injury results to his reputation.

See Pollard v. Lyon, 91 U. S. 227, 23 L. Ed. 308; Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 3SS; Ross v. Ward, 14 S. D. 240, 85 N. W. 182, 80 Am. St. Rep. 746; Gambrill v. Schooley, 93 Md. 48, 48 AU. 730, 52 L. R. A. 87, 80 Am. St Rep. 414; Republican Pub. Co. v. Mosman, 15 Colo. 399, 24 Pac. 1051; Civ. Code Ga. 1895, https://thelawdictionary.org/slander/

see also: Defamation is an invasion of the interest in reputation. It may be libel or slander. (California Civil section 44; herein, "Civ. Code § __.") The tort involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage. Civ. Code §§ 45, 46; see Smith v. Maldonado (1999) 72 Cal.App.4th 637, 645; Seelig v. Infinity Broadcasting Corp. (2002) 97 Cal.App.4th 798, 809.

Because libel and slander are intentional torts, the defendant must have intended the publication. But malice, or actual ill will, is not an element of defamation. However, evidence of malice is relevant to obtain punitive damages or to overcome certain privileges.

$\cancel{\phantom{X}}$ 10/11/2021

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

After a Decision by the Court of Appeal

Fourth Appellate District, Division One

BRIEF OF AMICI CURIAE CALIFORNIA STATE ASSOCIATION

OF COUNTIES AND LEAGUE OF CALIFORNIA CITIES IN

SUPPORT OF DEFENDANT/RESPONDENT

By Mr JENNIFER B. HENNING, SBN 193915

Litigation Counsel

Attorney for Amici Curiae

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................ii

I. INTRODUCTION......................................................................................... 1

II. ARGUMENT.............................................................................................. 2

A. Historical Background of the Government Claims Act........................... 2

1. The concept of absolute sovereign immunity is part of California's

historical common law......................................................................... 2

2. The Government Claims Act strikes a careful balance between

competing policy considerations. ...................................................... 4

B. The claims presentment requirement is an important element in the

overall statutory scheme of the Government Claims Act and should not be

disregarded without specific direction from the Legislature. ......................... 6

C. Changes in the Code of Civil Procedure do not relieve a plaintiff from

the more stringent requirements of the Government Claims Act................... 8

III. CONCLUSION ......................................................................................... 12

CERTIFICATION OF COMPLIANCE WITH

CALIFORNIA RULES OF COURT, RULE 14(c) ......................................14

ii

TABLE OF AUTHORITIES

Cases

Austin v. Massachusetts Bonding & Ins. Co. (1961) 56 Cal.2d 596.............10

Becerra v. County of Santa Cruz (1998) 68 Cal.App.4th 1450...................... 5

Chase v. State of Calif. (1977) 67 Cal.App.3d 808.........................................10

Elson v. Public Utilities Commission (1975) 51 Cal.App.3d 577..............3, 5

Greyhound Lines, Inc. v. County of Santa Clara (1986) 187 Cal.App.3d 480

.....................................................................................................................10, 11

Johnson v. State of Calif. (1968) 69 Cal.2d 782............................................4, 5

Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist. (2001) 90

Cal.App.4th 64 ............................................................................................... 7

Life v. County of Los Angeles (1991) 227 Cal.App.3d 894.............................. 7

Lipman v. Brisbane Elementary School District (1961) 55 Cal.2d 224

...........................................................................................................3, 4, 5

Martell v. Antelope Valley Hospital Medical Center (1998) 67 Cal.App.4th

978.................................................................................................................... 9

Mohlmann v. City of Burbank (1986) 179 Cal.App.3d 1037.......................... 7

Munoz v. State of Calif. (1995) 33 Cal.App.4th 1767...................................... 7

Muskopf v. Corning Hospital District (1961) 55 Cal.2d 211......................3, 4

Nunn v. State of Calif. (1984) 35 Cal.3d 616.................................................... 4

People v. Superior Court of San Francisco (1947) 29 Cal.2d 754 ............... 3

State of Calif. v. Superior Court (2004) 32 Cal.4th 1234................................ 7

Whittaker v. County of Tuolumne (1892) 96 Cal. 100 ...................................... 3

iii

Williams v. Horvath (1976) 16 Cal.3d 834 ....................................................... 7

Wood v. Riverside General Hosp. (1994) 25 Cal.App.4th 1113 .................... 7

Wright v. State of Calif. (2004) 122 Cal.App.4th 659 ...................................... 5

Statutes

Cal. Gov. Code §§ 810-996.6 ............................................................................. 1

Cal. Gov. Code § 815.2........................................................................................ 5

Cal.Gov. Code § 815.6........................................................................................ 5

Cal. Gov. Code §§ 910 et seq............................................................................ 6

Cal. Gov. Code § 911.2.................................................................................... 10

Code Civ. Proc. § 340.1.................................................................................1, 8

Code Civ. Proc. § 364 ..................................................................................... 10

Stats 1961 ch 1404 § 1 .................................................................................... 4

Stats 1963 ch 1681 § 1 .................................................................................... 4

Stats 1987 ch. 1208 ....................................................................................... 10

Other Authorities

Calif. Law Rev. Comm., 4 Reports Recommendations

 and Studies (1963)......................................................................................2, 4

1

I. INTRODUCTION

One of the issues confronting the Court in this case is whether the timelines contained in the statutory scheme commonly known as the California Government Claims Act (Cal. Gov. Code §§ 810-996.6) for presenting a claim to a public entity are altered by recent amendments to the Code of Civil Procedure reviving certain claims of childhood sexual abuse that would otherwise be barred by the statute of limitations. (Code Civ. Proc. § 340.1.) As the Court considers this very important question, Amici Curiae the California State Association of Counties 1 and the League of California Cities 2 The claims presentment process in the Government Claims Act is more than a procedural requirement. It serves an important function in the urge the Court to keep in mind the history and purposes of the Government Claims Act.

1

 The California State Association of Counties (CSAC) is a non-profit corporation. The membership consists of the 58 California counties. CSAC sponsors a Litigation Coordination Program, which is administered by the County Counsels' Association of California and is overseen by the Association's Litigation Overview Committee, comprised of county counsels throughout the state. The Litigation Overview Committee monitors litigation of concern to counties statewide and has determined that this case is a matter affecting all

counties.

2

 The League of California Cities is an association of 476 California cities united in promoting the general welfare of cities and their citizens. The League is advised by its Legal Advocacy Committee, which is comprised of 24 city attorneys representing all 16 divisions of the League from all parts of the state. The

committee monitors appellate litigation affecting municipalities and identifies those that are of statewide significance.

2

scheme of public entity liability, and is part of the careful balancing of competing policies undertaken by the Legislature when the Government Claims Act was enacted. As such, courts should require that any changes to the claims presentment process be found only when the Legislature uses specific, unmistakably clear language of its intent to make such changes.

## II. ARGUMENT

A. Historical Background of the Government Claims Act Among the questions before this Court is whether a statutory amendment to the Code of Civil Procedure reviving claims that would otherwise be barred by the relevant statute of limitations also changes the timing of claim presentment requirements in the Government Claims Act. To answer that question, it is important to understand how the Government Claims Act has developed and its intended purposes.

1. The concept of absolute sovereign immunity is part of California's historical common law. Historically, as is the case today, the services to the people it governed, a unique and vulnerable position that was found to warrant a higher level of protection against legal claims than private entities. (Calif. Law Rev. Comm., 4 Reports Recommendations and Studies 807 (1963).) The unique nature of the government's relationship

3

with the public is evident in the types of services it provides, including its power to issue and revoke licenses, quarantine sick persons, prosecute and incarcerate violators of the law, administer prison systems, and build and maintain thousands of miles of streets, sidewalks, and highways. In historical times, the practical necessity of exercising these government functions led to creation of the doctrine of sovereign immunity, which generates from the legal fiction that the king can do no wrong. (See People v. Superior Court of San Francisco (1947) 29 Cal.2d 754, 756.) This doctrine had general acceptance in California's common law. (Id.) The general rule was that neither the state nor its political subdivisions could be sued without their consent. (Whittaker v. County of Tuolumne (1892) 96 Cal. 100, 101.) As such, government entities in California were generally immune from liability for acts undertaken in a governmental capacity. (Elson v. Public Utilities Commission (1975) 51 Cal.App.3d 577, 582.) By the 1960's, the common law doctrine of sovereign immunity in California had been "riddled with exceptions and inconsistencies." (Id. at583.) In 1961, this Court essentially abolished common law sovereign immunity in Muskopf v. Corning Hospital District (1961) 55 Cal.2d 211, and Lipman v. Brisbane Elementary School District (1961) 55 Cal.2d 224. The basic rule established by the Court in Muskopf and Lipman was that government officials could be held liable for their negligent performance of 4 ministerial duties, but were entitled to immunity for discretionary decisions.

(Muskopf, supra, 55 Cal.2d at 220; Lipman, supra, 55 Cal.2d at 229.)

In response, the State Legislature enacted a moratorium suspending the effects of the Muskopf and Lipman decisions (Stats 1961 ch 1404 § 1), and appointed a Law Revision Commission to thoroughly study the issue of governmental immunity and make policy recommendations. The work of the Law

Revision Commission became, in essence, the first version of the Government Claims Act, which was enacted in 1963. (Stats 1963 ch 1681§ 1.)

2. The Government Claims Act strikes a careful balance between competing policy considerations.

The Law Review Commission's sovereign immunity study undertook a detailed analysis of the policy considerations both in support of

and against the concept of sovereign immunity. (See generally Calif. Law Rev. Comm., 4 Reports Recommendations and Studies (1963).) Supporting sovereign immunity is the separation of powers doctrine – the notion that the judiciary should not second-guess the decisions and judgments of governmental agencies. (See, e.g., Johnson v. State of Calif. (1968) 69 Cal.2d 782, 794; Nunn v. State of Calif. (1984) 35 Cal.3d 616, 622.) A similar concern underlying the doctrine of sovereign immunity is that, in discharging their duties, public employees should be permitted to

5

exercise their judgment without fear of liability or the burden of a trial. (Johnson, supra, 69 Cal.2d at 790.) In support of eliminating sovereign immunity is the idea of fairness. As this Court noted in Lipman, it is "unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss, rather than distribute it throughout the community." (Lipman, supra, 55 Cal.2d at 230.)

**The Government Claims Act is the Legislature's attempt at** reconciling these two competing policy considerations. In striking the balance between the objectives, the Act has both substantive and procedural elements.3

3

As is explained fully below, the elements that are generally procedural innature within the Governments Claims Act are actually essential elements in-proving a cause of action in court. Substantively, the statute abolished all common law based on the doctrine of absolute sovereign immunity. (Becerra v. County of Santa Cruz (1998) 68 Cal.App.4th 1450.) Instead, all government liability must be based on statute. (Elson v. Public Utilities Commission (1975) 51 Cal.App.3d 577.) The general rule in California since 1963 is sovereign immunity, with government liability limited to exceptions specifically set forth by statute. (Wright v. State of Calif. (2004) 122 Cal.App.4th 659.)

Those exceptions include direct liability for a breach of mandatory duties and derivative liability for certain employee negligence. (Cal. Gov. Code §§ 815.2, 815.6.)

6

But in addition to these more substantive provisions, the Government Claims Act adopted certain procedural requirements as part of striking the balance between the competing policy concerns. Of particular interest to the case now before this Court is the requirement that a claim be filed with the public entity within a certain timeframe after an incident giving rise to a cause of action has occurred. (Cal. Gov. Code §§ 910 et seq..) In other words, the Legislature determined that it would allow government liability only under specified conditions, including compliance with certain procedural safeguards.

B. The claims presentment requirement is an important element in the overall statutory scheme of the Government Claims Act and should not be disregarded without specific direction from the Legislature.

The Law Revision Commission and the Legislature undertook a comprehensive review of government sovereign immunity before settling on the basic principles now set forth in the Government Claims Act. The claim presentment requirement is an essential component of the statutory scheme. Under the relevant provisions, a public entity can be found liable, but unlike private defendants, liability can only be established if the plaintiff *(I am showing)* shows it has complied with the claim presentment requirement.

The claim presentment requirement serves several very important functions. First, it provides the public entity with prompt notice of the

7

events leading up to the claim so that an investigation can take place while evidence and witnesses are fresh. Second, it allows ample opportunity for the possibility of settlement, thereby avoiding expenditure of public funds in needless litigation. And third, it allows the public entity to be informed in advance as to possible liability and indebtedness to facilitate budgeting for upcoming fiscal years. (Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist. (2001) 90 Cal.App.4th 64; Munoz v. State of Calif. (1995) 33 Cal.App.4th 1767; Life v. County of Los Angeles (1991) 227 Cal.App.3d 894; Mohlmann v. City of Burbank (1986) 179 Cal.App.3d 1037.) Our courts have consistently found that the claim presentment requirement is more than a procedural element of a claim, but is an essential element to a cause of action. (State of Calif. v. Superior Court (2004) 32 Cal.4th 1234; Wood v. Riverside General Hosp. (1994) 25 Cal.App.4th 1113.) A failure to allege compliance with the claim presentment statute constitutes a failure to state a cause of action, and is subject to a general demurrer. (State of Calif. v. Superior Court (2004) 32 Cal.4th 1234.) As this Court has found, in enacting the Government Claims Act "[t]he Legislature did not intend 'to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.'" (Id. At 1243 (citing Williams v. Horvath (1976) 16 Cal.3d 834, 838).) Thus,

8

presenting a timely claim to a public entity is more than mere procedure, and it serves a different purpose than an ordinary statute of limitations. In the present case, Code of Civil Procedure section 340.1 subdivision (c) revives claims that would have been barred "solely because the applicable statute of limitations has or had expired. . .. " (Code Civ. Proc. § 340.1)(emphasis added).) Compliance with the claim presentment requirement, however, is more than a statute of limitations issue. It is an essential component of a comprehensive and carefully balanced sovereign immunity structure established by the Legislature. The issue of when changes in that structure should be presumed go beyond the particular facts of this case.

Given the careful policy balancing that has taken place in creating the Government Claims Act and the general rule of government immunity with limited waiver only where the elements of the statute are satisfied, courts should not find that the requirements of the Act have been changed by amendments to other statutory provisions unless the Legislature has specifically indicated such an

intent. C. Changes in the Code of Civil Procedure do not relieve a plaintiff from the more stringent requirements of the Government Claims Act. While a revival statute such as the one at issue in the present case may give new life to cases against private defendants, an entirely different

9

set of policy considerations are at stake when the defendant is a public entity. This Court should not assume a change in the ability to bring a case against a private defendant applies also to public entity defendants unless the Legislature so specifies. Indeed, the courts have frequently found that instances where the Legislature has changed statutes of limitations or other procedural rules as to private defendants do not change the timelines established in the Government Claims Act. For example, Martell v. Antelope Valley Hospital Medical Center (1998) 67 Cal.App.4th 978, involved the time limits for filing claims for medical malpractice injuries sustained during minority. In the case, both sides agreed that if a private hospital engaged in the alleged malpractice, the complaint at issue would have been timely because the Legislature had extended the ordinary time to file such claims.

But the court found the action against a public defendant was timebarred. It determined that because the Government Claims Act existed when the Legislature enacted the longer statute of limitations for minors, the Legislature is presumed to know about it. In failing to make an exception for claims against public entities, the court inferred that the Legislature intended even minors to be bound by the shorter timeframes of the Government Claims Act, despite the important policy considerations served by allowing minors an extended time to file medical malpractice claims. (Id. at 983.)

10

Similarly, under the Code of Civil Procedure, a defendant sued under a fictitious name and later brought into the case by an amendment substituting his true name is considered a party to the action from its commencement for purposes of the statute of limitations. (Austin v. Massachusetts Bonding & Ins. Co. (1961) 56 Cal.2d 596, 602.) Not so, however, when the defendant is a public entity. (Chase v. State of Calif. (1977) 67 Cal.App.3d 808.) Instead, the Government Claims Act must be complied with even where the exact public entity defendant is not yet known when the complaint is filed. (Id. at 812.) A final example involves cross-complaints for equitable indemnity. Among private parties, a defendant may file a cross-complaint for medical malpractice under specified guidelines. (Code Civ. Proc. § 364.) However, where a defendant claims that a public entity is partly responsible for the damages alleged by the plaintiff, it still must file a claim with a public entity within six months of receiving the complaint, 4

/ / /

even if the identity of the public entity defendant is not yet known. (Greyhound Lines, Inc. v. County of Santa Clara (1986) 187 Cal.App.3d 480.)

/ / /

4

The court in Greyhound actually held the claim must be filed within 100 days of receiving the complaint, but in 1987, the Government Claims Act was amended to change the 100-day filing deadline to the six-month filing deadline that remains in place today. (Stats 1987 ch 1208; Cal. Gov. Code § 911.2.)

11

In the present case, plaintiff argues that it is a fallacious conclusion that "plaintiff would have to file her government tort claim in 1980 and wait until 2003 to file her lawsuit when the Legislature passed the new law allowing adults to sue for childhood sexual abuse." (Answer Brief, Pg. 12.) However, when a public entity is involved, there are policy interests that are not at stake when a private defendant is named. Plaintiff's argument might seem an intuitive response, but it ignores the significant work of the Law Revision Commission and Legislature in developing the current system of sovereign immunity. 5 Certainly, if the Court of Appeal's ruling is permitted to stand, it opens up public entities to infinite exposure for childhood sexual abuse, eviscerating one of the policy concerns of the Government Claims Act, which is allowing a public entity to interview witnesses and collect evidence while it is fresh. Unless the Legislature specifically indicates that the balance between sovereign immunity principles and recovery for injured persons should be upset, courts should maintain strict compliance with the Government Claims Act process.

5

A similar frustration was noted in a concurring opinion in the Greyhound decision mentioned above, though the unanimous court correctly upheld strict compliance with the Government Claims Act. In that concurrence, Justice Brauer deferred to the Legislature, though he felt personally that under the facts of the case, Government Code section 901's claim presentment requirement "works an injustice to a defendant who when served with a complaint does not know and has no reason to anticipate that a public entity has also contributed to a plaintiff's harm." (Greyhound Lines, Inc. v. County of Santa Clara (1986) 187 Cal.App.3d 480, 488.)

12

## III. CONCLUSION

The time limits for presenting claims to public entities found in the Government Claims Act serve very important purposes in California's scheme of sovereign immunity. Courts have consistently found that compliance with the claim presentment requirement is an element of a claim, and not a mere procedural requirement. There is good reason for this conclusion — the statutory regime currently in place for holding public entities liable came at the end of a thorough study and debate of the principles of sovereign immunity. This Court must be mindful of the history and purposes of the Government Claims Act in considering the issues presented by this case.

Any changes to the Government Claims Act should be found only where the Legislature has unmistakably indicated such an intent. To do otherwise would upset the balance between competing policy interests that was carefully crafted in the Government Claims Act.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13

For these reasons, CSAC and the League of California Cities respectfully request that this Court reverse the decision of the Court of Appeal and find Plaintiff's lawsuit barred by the Government Claims Act.

**CALIFORNIA STATE**

**ASSOCIATION OF COUNTIES**

**and**

**LEAGUE OF CALIFORNIA CITIES**

By: _____

Jennifer B. Henning, SBN 193915

Attorney for Amici Curiae

California State Association

of Counties and League of

California Cities

14

**CERTIFICATION OF COMPLIANCE WITH**

**CALIFORNIA RULES OF COURT, RULE 14(c)**

I hereby certify that this brief has been prepared using proportionately double-spaced 13-point Times New Roman typeface. According to the "Word Count" feature in my Microsoft Word software, this brief contains 2,518 words.

I declare under penalty of perjury under the laws of the State of

California that the foregoing is true and correct. Executed this ___ day of March, 2006 in Sacramento, California.

10/01/2021

_____

Jennifer B. Henning, SBN 193915

Counsel for Amici Curiae

California State Association of Counties

and L

9/30/21, 11:42 AM

Case 2:21-cv-01208-DJC-CKD Document 12 Filed 10/01/21 Page 16 of 203
People injured by California police would be eligible for crime victim funds under new bill

**NEWS > CRIME AND PUBLIC SAFETY**

# People injured by California police would be eligible for crime victim funds under new bill

Victims of police use of force could receive money even if the officer is not disciplined, charged or convicted



A protestor is taken into custody at Beverly near the Grove in Los Angeles, Saturday, May 30, 2020. A protest erupted into looting and rioting and face-offs with police leading to a curfew at 8pm due to violence throughout the city. (Photo by David Crane,



PUBLISHED: April 15, 2021 at 4:42 a.m. | UPDATED: April 15, 2021 at 4:44 a.m.

Californians injured by police or family members of those killed in such encounters may qualify for financial compensation from the state crime victims fund under a controversial bill making its way through the state Legislature.

Senate Bill 299, by state Sen. Connie Leyva, D-Chino, would allow the injured or families of the dead to receive financial aid for recovery, burial or other costs from a fund typically used for victims of traditional crime.

The bill unanimously sailed through the five-member Senate Public Safety Committee on Tuesday and is on the way to the Appropriations Committee, with opposition from law enforcement agencies that say it would take precious resources away from traditional crime victims and give them to "perpetrators of crime." The bill counters traditional thought promoted by law enforcement that use of police force is generally justified.

Under the proposal, the family of someone shot and killed by police could receive compensation even if the shooting is deemed justified.

## Over-reliance on police

The bill takes away what some see as the compensation board's over-reliance on police reports and law enforcement documentation to decide whether requests for financial aid are warranted. The bill would allow victims of police violence to present other forms of evidence, such as witnesses, to bolster their application for aid, as is the case for sexual assault and domestic violence victims.

"It is unacceptable that in order to receive assistance through the Victim Compensation program, police reports and the opinion of police would carry such heavy weight in the application for compensation, when the injuries were sustained as a result of police actions," Leyva said. "SB 299 will improve access to vital resources for victims of police violence as they recover from the physical and emotional injuries caused due to the actions of police or — in the cases of individuals killed by police — be able to bury their loved ones with dignity and respect."



## Reform-minded prosecutors support

Backing the bill is the progressive Prosecutors Alliance of California, founded by four reform-minded district attorneys, including Los Angeles County's George Gascon.

Cristine Soto DeBerry, executive director of the new alliance, said police rarely face penalties for use of force.

"Most of these cases do not result in criminal charges, but there certainly has been harm and there's a victim," DeBerry said. "Most families are left on their own."

The compensation board usually depends on potentially biased police reports to determine whether the injured person was at least partially to blame. Leyva's office said victims also can be turned down for not cooperating with police.

"It's pretty hard to get the people criminally or civilly liable to say, you are a victim," DeBerry said. "It (the bill) is unusual and it is exactly what prosecutors should be involved with. These are victims just like any other victims and they need the support of prosecutors in recovering from that harm."

## Pushback at hearing

The bill received pushback at Tuesday's committee hearing from Larry Morse, legislative director for the California District Attorneys Association. Morse told the panel that the proposal essentially would allow anyone alleging police brutality causing injury or death to potentially receive payments regardless of whether the accused peace officer was arrested or charged with a crime.

He said Leyva's bill "ignores the reality that use of force by peace officers is most often lawful and justified — not criminal," and that claimants, despite their own culpability, could be entitled to claim compensation.

Morse pointed to the Dec. 2, 2015, terrorist attack in San Bernardino, where 14 people were slaughtered in a mass shooting and the attempted bombing at the Inland Regional Center before perpetrators Syed Rizwan Farook and his wife, Tashfeen Malik, were shot and killed by police following a vehicle pursuit through the city.

"Do we really want to deny payment to individuals who have truly been victims of



## Revisions under review

DeBerry said the bill is still being revised and tightened in committee to address some outlier situations.

"My hope would be even if people differ on whether police should be charged with a crime, we all agree we should help people when they are hurt, even when they are hurt by police, especially if they are hurt by police," she said.

San Francisco District Attorney Chesa Boudin, who is endorsing the Senate bill, started a similar program for victims hurt or killed by police. In one year, the program has paid for one funeral/burial at a cost of $7,500.

The Victim Compensation Board did not return a request for comment.

Report an error
Policies and Standards
Contact Us

 **The Trust Project**

---

### Be the first to know.
*Sign up for Breaking News Alerts.*

> Enter your email

**SIGN UP**

By signing up, you agree to our privacy policy and terms of service.

---

Tags: **Crime, Government, Morning Wire, Police Accountability, Police Shootings, Police Violence, Public Safety**

 **Tony Saavedra**



 **Joe Nelson**

SPONSORED CONTENT



## 1 Odd Trick Restores Your Eyes To Perfect 20/20 Vision ⤴

By NewVisionBreakthrough.com

1 Odd Trick Restores Your Eyes To Perfect 20/20 Vision

# SUBSCRIBE TODAY!
## ALL ACCESS DIGITAL OFFER FOR JUST 99 CENTS!



1  Your Name:      Alexandra Ferreira da Silva

2  Address:        10232 Luther Rd unit B

3  Phone Number:   +1 530 315 2190

4  Fax Number:

5  E-mail Address: 9figar@gmail.com

6  Pro Se Plaintiff

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 |                                    | Case Number:   *2:21-cv-01208*

12 | Alexandra Ferreira da Silva        |

13 |            Plaintiff(s),           | **CIVIL RIGHTS COMPLAINT**

14 |       vs.                          | (42 U.S.C §1983)

15 | ICE – Immigration Custom Enforcement |

16 |                                    | DEMAND FOR JURY TRIAL

17 | DHS – Department of Homeland Security |

18 | Yuba CO Jail/Floor Officer Morgan, Heidi, C. | Yes ☐   No ☐

19 | Sheriff Department/ Yuba           |

20 | Defendant.                         |

21

22

23

24

25

26

27

28

COMPLAINT
PAGE __1__ OF __3__ *[JDC TEMPLATE – 10/2017]*

# PARTIES

1. **Plaintiff.**

Name: Alexandra Ferreira da Silva

Address: 10232 Luther Rd unit B, Live Oak, Ca, 95953

Phone number: 530 315 2190

2. **Defendant(s).**

Defendant #2 Name: **DHS/ ICE  - Government**

OFFICE OF THE CHIEF COUNSEL

Department of Homeland Security

Address: P.O. Box. 26445 San Francisco Ca, 94126-6449

Phone number:

Defendant #3 Name: Jail floor officer - Morgan, Heidi, C.

Address: 215 5ᵗʰ street, Marysville, Yuba, Ca, 95901

Phone number: 530 749-7740

Defendant #4 Name: Sheriff Department

Address: 720 Yuba Street, Marysville, Ca, 95901

Phone number: 530 749 77 80

# JURISDICTION

3.      My case belongs in federal court under federal question jurisdiction because it is based on 42 U.S.C. § 1983 and the United States Constitution.

# VENUE

*Venue refers to the location of the court that should decide your case. The counties in this district are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check each venue option that applies.*

4.   Venue is appropriate in this Court because:

☒ a substantial part of the events I am suing about happened in this district.

COMPLAINT
PAGE 2 OF 13 *[JDC TEMPLATE – Rev. 05/2016]*

1 ☐ I am suing the U.S. government, federal agency, or federal official in his or her

2 official capacity <u>and</u> I live in this district.

3 ☒ at least one defendant is located in this District and any other defendants are

4 located in California.

## INTRADISTRICT ASSIGNMENT

*This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka. First write in the county in which the events you are suing about happened, and then match it to the correct division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge.*

5. Because this lawsuit arose in Yuba County, it should be assigned to the Robert Matsui Courthouse (Sacramento) Division of this Court.

## STATEMENT OF FACTS AND CLAIMS

6. On *March 17, 2020*, I had an interaction with law enforcement at *Yuba CO. Jail* While I was held by ICE in Yuba County Jail. Besides of been a victim of:

7. Visa scheme (fraud)

8. Brach of contract

9. Unlawful arrestment

10. Tort

11. Negligence

12. Slander

13. 332.Bad Faith (First Party)—Failure to Properly Investigate. Claim—Essential Factual Elements. (See Rappaport-Scott v. Interinsurance Exch. of the Auto. Club (2007) 146

14. Cal.App.4th 831, 837 [53 Cal.Rptr.3d 245].)

15. Obstruction of justice

16. Emotional injures

17. Loss of earning

18. Etc

19. The interaction began when:

COMPLAINT
PAGE **3** OF 13 *[JDC TEMPLATE – Rev. 05/2016]*

Attached statement.

20. Next, *[continue describing what happened; use more pages]*

_____.

*[INSTRUCTIONS FOR SPECIFIC CLAIMS: Each of the XXXX sections below sets out one type of federal civil rights claim. Not all claims will apply to your situation. You should submit only those claims that apply to you. This template does not include all possible civil rights claims, and it does not include any claims under California law. PLEASE REVIEW THE INSTRUCTIONS AT THE BEGINNING OF THIS PACKET.]*

1    **Mistreatments while detained - Claim for Relief**

2    **(Excessive Force Before, During, or Without Arrest in Violation of Fourth Amendment**

3    **Against Defendant** *Floor Officer* Morgan, Heidi, C)**

4    *You may submit this claim if excessive force was used against you: (1) and you were not
     arrested; (2) before you were arrested; or (3) during your arrest. The force used against you must
5    have been objectively unreasonable. Whether force was reasonable depends on the circumstances
     existing at the time, not whether the force seems unreasonable now, looking back.*
6

7    *For each individual defendant you are suing, complete the following paragraphs, and
     include more pages if you need to.*

8

9    _____.   Defendant: Jail floor office: Morgan, Heidi, C.

10   *After been left for around 7 hours without any assistance, officer Morgan used*

11   *excessive force against me when she was escorting me to the dorm. She strike several times*

12   *on middle back with her two hands and shoved me through the hallway (from the elevator*

13   *close to booking until close to the kitchen area). She exposed me to humiliation in front of an*

14   *entire male population, afterwards, she falsely accused to disobey order and threaten her;*

15   *what is untrue.* Today I have an injury on my back and I can't even calculate the emotional

16   damage suffered previously and on the day of the incident, because I was deprived of access

17   to the medical resources and resources were necessary to actions in my defense. No pictures

18   were taken, body exams were made, no assistance to see if any other damages were caused to

19   my body. All this was requested and it was denied to me. Since March 17, 2020, I have

20   collaborating with the investigation, I sent all information that I had with me to the parties

21   involved and ICE, DHS didn't say anything about, disregarding the severity of the subject

22   and hardship exposed several time before the incident. Yuba County Jail, Sheriff department

23   are disregarding the subject and making it be difficult to have access to any evidences of the

24   "ongoing investigation" started by the County Sheriff department.  The incident

25   investigation's records were requested by me two times (October 27, 2020 by me, 5/12/2021

26   a lawyer on my behalf, Wed, Jun 16, 10:36 AM was requested again by me) and until now

27   they haven't respected the deadline assured by law to do so. Instead, was sent to me an email

28

COMPLAINT

PAGE 5 OF 13 *[JDC TEMPLATE – 11/16]*

1  from the undersheriff Nicholas Morawcznski, referring that the case was sent to their

2  counsel. After my request, the undersheriff sent their counsel contact.

3  _____.  This conduct was unreasonable because *[explain why it was unreasonable,*

4  *such as the alleged crime or problem being investigated; any effort made by the officer to*

5  *limit the amount of force; the threat reasonably understood by the officer; and whether you*

6  *actively resisted] All the mistreatment suffered I am stating in the attached statement.*

7  *I have been deprived to have access to any information of the "ongoing*

8  *investigation". Just a letter stating that part of my complaint was sustained. Wasn't offered*

9  *to help me any help to pay for the physical and emotional treatments required.*

10  *Breach of the implied covenant of good faith and fair dealing based on the insurer's*

11  *failure or refusal to conduct a proper investigation of the plaintiff's claim.*

12  _____

13  SB-731 Peace Officers: certification: civil rights. (2019-2020)

14  https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB731.

15  *According to the Government tort act liability practice Fourth edition 1 and 2,*

16  *Related to claims under federal civil rights Act. None of the entities and crimes mentioned*

17  *are exempt from responsibility for the crimes committed against me... The sovereign*

18  *immunity doesn't applies to this case. itle 42 of the United States Code (42 U.S.C. § 1983).*

19  *Section 1983 provides an individual the right to sue state government employees and others*

20  *acting "under color of state law" for civil rights violations. Section 1983 does not provide*

21  *civil rights; it is a means to enforce civil rights that already exist.*

22  *https://iss.washington.edu/requests/immigration-record-updates/change-status/*

23  *I could mention many other rights deprived and*

24

25  _____.  I was harmed by this force in the following ways:

26  Physically, emotionally, economically, negative self-image caused due to the image demand

27  caused by society's bad judgments about my honesty and character due to being incarcerated

28  by immigration...

Battery and assault_ **Claim for Relief**

**(Excessive Force Against Pretrial Detainee in Violation of Fourteenth Amendment Against**

**Defendant** *Floor Officer* Morgan, Heidi, C.

statement attached

*You may submit this claim if excessive force was used against you while you were in jail after arrest but before trial. The force used against you must have been objectively unreasonable. Whether force was reasonable depends on the circumstances existing at the time, not whether the force seems unreasonable now, looking back.*

*For each individual defendant you are suing, complete the following paragraphs, and include more pages if you need to.*

____. Defendant: Officer Morgan, Heidi, C. used excessive force against me when *was conducting*

*me from the library to the dorm when she assaulted without any provocation*

_____

____. This conduct was unreasonable because *[explain why it was unreasonable, such as*

*the alleged crime or problem being investigated; any effort made by the officer to limit the amount of*

*force; the threat reasonably understood by the officer; and whether you actively resisted]* _____

_____*statement attached*

_____

____. I was harmed by this force in the following ways: Attached statement

_____.

**Obstruction of justice Claim for Relief**

**(Deliberate Indifference to Serious Medical Needs of Pretrial Detainee in Violation of**

**Fourteenth Amendment Against Defendant** *[Yuba county Jail* )

*You may submit this claim if medical or other jail staff were deliberately indifferent to your serious medical needs. "Deliberate indifference" requires more serious misconduct than negligence or medical malpractice.*

*No visible action was taken to clarify and resolve the situation by the Jail authorities. They exposing me to an isolation cell and take my privileges Until now I see no action towards this matter*

*For each individual defendant you are suing, complete the following paragraphs, and include more pages if you need to.*

____. Defendant *[name] Sheriff Department/ Yuba County*
*No visible relevant action was taken to clarify and resolve the situation by the sheriff authorities until now I see no action towards this matter.*

COMPLAINT

PAGE 7 OF 13 *[JDC TEMPLATE – 11/16]*

- 8 -

1    *It*'s acts or failures to act regarding my serious medical needs caused me harm.

2    ____.   On *[date(s)]* _____,

3    I had a serious medical need *[describe your condition or need for treatment or medication]*:

4    _____.

5    ____.   Defendant  was aware that a substantial risk to my health and life were existed

6    because I exposed and presented proofs to  ICE/DHS about this matters and no visible action was

7    taken the transfer me to another detention center, and release me.

8    _____.

9    ____.   Defendant *[name]* _____ was

10   deliberately indifferent to these medical needs because Defendant *[mark each applicable and*

11   *complete]*:

12   ☑ Denied me treatment on *[date]* March 17,

13   2020_____ by *[describe Defendant's*

14   *denial of treatment]* to be seen by a doctor and have medical check done

15   ☒ _____.

16   ☑ Delayed my treatment by *[describe how Defendant delayed your treatment]*

17   deprived me from have any treatment was given by a nurse muscular relax and

18   medication for pain (at Yuba county Jail)

19   _____.

20   ☒ Ignored the following instructions of my treating physician or specialist *[list*

21   *instructions]*: My mental health follow ups and advices. And my health Issue

22   (brain Cyst)_and now are disregarding the damages caused to my life that  will

23   never be the same.

24   _____

25   The Jail staff were. Defendant was aware of these instructions because *I sent a*

26   *inmate request and a Kit to ICE agent Exams was made and putted in the records*

27   *and was sent an grievance stating the incident Issues*

28   _____

COMPLAINT
PAGE  8  OF  13  *[JDC TEMPLATE – 11/16]*

1        ☒ Interfered with my treatment *[describe how Defendant interfered with your*

2        *treatment]*

3        Depriving me to have a proper access to health care. Putting my life at risk and

4        making me experience several mistreatments to the point to think that die was my

5        only hope to see my pain ending.

6        ☒ *[list other action]* Attached document and statements

7        _____ on *[date(s)]* _____

8

9        **Omission of help/ health and safety Claim for Relief**

10    **(Fourteenth Amendment Violated by Conditions of Confinement, against** *[name Yuba county*

11    *staff/ Officer Morgan]_____ Disregarded the mental health evaluation and my physical*

12        condition (the other claims will be report on my statement)

13        *You may submit this claim if the conditions in which you were confined caused you harm,*
*and the jail officials were deliberately indifferent to the risk that you would be harmed in this way.*

14    *Conditions of confinement include the physical space in which you were confined, and may include*
*the other people who were incarcerated injured you.*

15

16        *For each individual defendant you are suing, complete the following paragraphs, and*
*include more pages if you need to.*

17

18        ____. On *March 17, 2020 was one of the worse mistreatment suffered while detained by*

19   *immigration_, I was harmed by [describe the conditions of confinement that harmed you]*

20

21        Attached statement

22        __made an intentional decision about the conditions under which I was confined *[describe*

23   *decision]*:

24   _____.

25        ____. Those conditions put me at substantial risk of serious harm *[describe the harm that*

26   *was likely]*:

27

28

COMPLAINT
PAGE 9 OF 13 *[JDC TEMPLATE – 11/16]*

1    The consequences of Defendant's conduct was obvious; a reasonable officer in the

2  circumstances would have understood the high degree of risk involved because *[describe facts*

3  *known by Defendant that showed you were at risk]*

4  _____.

5  ____. Defendant *[name]* OFFICER MORGAN did not take

6  reasonable available measures to eliminate the risk of harm;

7    ____. By not taking such measures, the defendant caused my injuries *[describe injuries]*:

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
PAGE 10 OF 13 *[JDC TEMPLATE – 11/16]*

### Health safety Claim for Relief

### (Liability of *[city or county]_ICE_* for Individual's Acts)

*This is not a stand-alone claim. You should only file this claim if: (1) you are submitting another claim that explains the actions of the individual city or county employees; and (2) the actions of the individual were taken according to a government policy or custom.*

_____.   When Defendant *[name of individual(s)]*

_____   _____

When disregarded many requests to transferred and just did when it was out controlee and the covid19 level was in one of the highest levels. The ICE agent spoke with me when I was in the first single cell, and just took the action to transfer me when saw me in poor condition in suicide watch.

_____ violated my rights,

Defendant was acting pursuant to a *[mark each that applies and explain; use more pages as needed]*:

☒ Defendant *[city or county]* A̶T̶T̶A̶C̶H̶E̶D̶   S̶T̶A̶T̶E̶M̶N̶T̶ 's

   policy *[describe the written policy or decisions of lawmakers]*:

   _____

☒ longstanding, widespread, well-settled practice or custom that constitutes a

   standard operating procedure of Defendant *[city or county]*

   A̶T̶T̶A̶C̶H̶E̶D̶   S̶T̶A̶T̶E̶M̶E̶N̶T̶ *[describe the prior similar violations]*:

☒ Defendant *[city or county]* YUBA   (~~PARISH COUNTY JAIL~~

   ratified the action when Defendant *[name of individual who was the city or*

   *county's final policymaker]*

   A̶T̶T̶E̶C̶H̶E̶D̶   S̶T̶A̶T̶M̶E̶N̶T̶

   knew of and specifically made a deliberate choice to approve the conduct of

   Defendant *[name of individual(s) who violated your rights]*

   _____

   and the basis for it *[describe how and when the conduct was approved]*:

COMPLAINT
PAGE 11 OF 13 *[JDC TEMPLATE – 11/16]*

1    ____. Defendant *[city or county]* _____'s

2    official policy or longstanding practice or custom caused the deprivation of my rights by Defendant

3    *[name of individual(s)]* _____

4    _____.

5                              **Demand for Relief**

6          Plaintiff respectfully requests the following relief:

7                1.  Compensatory damages;

8                2.  Costs and attorneys' fees as permitted by law;

9                3.  Any other relief the Court deems proper
        ☑    *[list other relief] All listed above and, convict the guilties and grant me the stay of*
10   *removal proceedings until resolving u visa with USCIS*
        ☑
11        *[Note this list does not include equitable relief, such as an injunction, or punitive damages.*
     *In certain cases, punitive damages may be awarded if the illegal conduct was engaged in with*
12   *malice, oppression, or reckless indifference to your rights under federal law. If this applies to your*
     *case, mark the box above, write in punitive damages, and make sure that the pages in your*
13   *Complaint include facts to show that defendant(s) acted with malice, oppression, or reckless*
     *indifference to your rights.]*
14

15                           **Demand for Jury Trial**

16        Plaintiff demands a jury trial on all issues.

17
         *By signing this Complaint, you are stating that you reasonably believe there is evidence to*
18   *support all of the statements in each of the claims you are submitting. This includes the form*
     *statements as well as the statements you wrote in yourself.*
19

20                              Respectfully submitted,

21

22

23
     Date:    September 30, 2021    Sign Name:    _____
24
                                    Print Name:   Alexandra Ferreira da Silva
25

26

27

28

COMPLAINT
PAGE *12* OF *13* *[JDC TEMPLATE – 11/16]*

1

*[Copy this page and insert it where you need additional space to explain what happened.]*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Govt §6.8 C Form: claim for personal injuries**

**Claimant**: Alexandra Ferreira da Silva

vs

**Against**

1 – DHS – Department Homeland Security

2 – ICE – Immigration Customs Enforcement

3 – Offer Morgan Heidi, C (floor Officer/Yuba Co. Jail)

4 – Yuba County Jail

5 – Sheriff/ Yuba County

N. _2:21-cv-01208

CAIM FOR PERSONAL
INJURIES (GOVT C910)

**The majority are located in Yuba City**

     I hereby to notify that I, Alexandra Ferreira da Silva whose address is 10232 Luther rd, unit B, Live Oak, ca, 95953, I am claiming for the damages from:

     **Party 1: Offer Morgan Heidi, C (floor Officer/Yuba Co. Jail)**

     Work address: Yuba County Jail

     215 5th St, Marysville, CA 95901

     **Party 2: Yuba County Jail**

     215 5th St, Marysville, CA 95901

     **Party 3: Yuba County Sheriff's Office**

     720 Yuba Street, Marysville, CA 95901

     **Party 4: Counsel ICE NTC - Government**

     OFFICE OF THE CHIEF COUNSEL

     Department of Homeland Security

     P.O. Box. 26445 San Francisco Ca, 94126-6449

**Party 5**: US **Immigration & Customs Enforcement**

  630 Sansome St #590, San Francisco, CA 94111.


**Note: Trail Attorney address: Representing parties 4 and 5**

Mr. Jonathan Kevin Ross, Esquire, Trail Attorney

DJO – US Division Office of immigration Litigation

P.O. Box 878, Benjamin Franklin Station

Washington, DC 20044


**County Counsel's Office Representing parties 1, 2 and 3**

Mr.Michael J. Ciccozzi, County Counsel

915 8th. Street, Suite 111

Marysville, CA 95901


  This claim is based on personal injuries sustained by me, Alexandra Ferreira da Silva (Claimant) while detained by ICE. Period between October 13, 2017 to May 07, 2020. The main incident that led me to file this claim takes place in Yuba County Jail facility, on March 17, 2020 and Mesa Verde, on March 27, 2020 to March 28, 2020. Under the following circumstances:

## ALLEGATIONS IN THE COMPLAINT

a) **Claim: 1 DHS/ ICE** – Obstruction of justice, slander, loss of earning, breach of contract, Omission of help, Exposition to Contamination (cove19), Violation of prisoner rights, psychological torture, Damage to reputation, Fraud and deceit, unlawful restraint - 25 CFR § 11.403 - Unlawful restraint, False imprisonment - Penal Code 236 PC – California False Imprisonment Laws

---

  Obstruction of justice of primary tabs- Definition 18 U.S.C.$ 1503, defines "obstruction of justice" as an act that corruptly or by threats, or force or by any threatening letter of communication, influence, obstructs or impedes, or endeavors to influence, obstruct, or impede, the administration of justice."

  I was detained for "overstay my status" in a fraudulent visa scam created to deceive and make money. I remained in the country after the emission of two I-20s and paid three times for the same procedure to exchange my status without leaving the country. California language school and DHS – Department of Homeland Security took advantage of my naivete, trust, incapability, and abscise of knowledge about law and to make a decision based on my own understanding. Afterward, they kept my money in their pocket and my nightmare was just starting. After it all, I

was arrested by ICE (Immigration Customs Enforcement) on my return from Mexico, and DHS and ICE accused me of overstaying my status (waive program).

I was kept arrested even after proving that I am a victim. I saw myself obliged to open my life in order to don't get deported and have the right to see a judge.

For no apparent reason I was taken from an ICE detention center, where I was just with Ice's detainee and I was forced to move to Yuba County Jail, with no notice, where I experienced the most horrible hardship of my life.

After mistreatment in Yuba, I was transferred to Mesa Verde. When I was booked in, an orange uniform was given to me; I said to the officer. Sr. here I don't use orange, I have no criminal record, I use blue… He said, `We will go by what ICE's report says about your classification and here said that you committed visa fraud, get this uniform and tomorrow you speak with your case manager. I filed a request for those records and made a phone call to Miss Valerie Zukin (ca. Bar attorney/ pro-bono) and she verified everywhere and didn't find anything. Of course, that I knew that, I never committed a crime. Since I was concerned about what ICE was accusing me of, I started to send messages through the Mesa Verde app and requested those records again. I made a formal request but the facility staff refused to sign it. Every time I would speak about it, they would verbally say, the records that we have about the detainee belong to ICE and we cannot release it without their permission. I sent this information to my case officer and requested for those records and why it was never given to me. Until my release date, I was waiting for it and it wasn't provided to me.it or any other records.

According to the guidelines given by DHS (immigration line), I was allowed exchange my permission and remain in the United States without having to return to Portugal. Also, my option to exchange my ESTA permission and extend my stay in US would be the F1 Visa. After applying, paying and send the mandatory documents required, was given to me the I-20 (document/permission to attend classes). I started attend the English classes normally. After complete the first part of the procedure, do payments, I started receiving massages in the student webpage (USCIS page) requesting "adjusts to the application. The first part of application was completed in April, 2017. On July, 2017 another payment had to be made in order to proceed with the process (according to the explanation given to me by the school manager). She stated that immigration was asking to replace a document and this procedure would be charged and I would have to pay another 200.00 (two hundred dollars). In September, without any explanation, I had my first application for the F1 visa denied. Without understanding what was going on, I took the decision to made another call to immigration and over the phone the agent said that my visa application was still pending of response, however it was active. I explained to the agent what was verify by the school manage and the agent submitted a request to the supervision to contact me, said that they would have access to details of my application that she didn't and they could verify and give me an answer about what was happening with my first application. The supervisor called me that day and said my options, wait for the letter with the explanation about my application, or apply again for the same procedure denied.  No further explanation would be providing over the phone due to the lack of ways how to proof that I was the applicant. Forced by my needs I did the

application again and paid a third payment for the same application and was given to me another I-20 to remain and keeping attending to the classes.

Due to the visa procedure, as DHS requirements I couldn't work; then DHS and the school informed me that within around 9 months studying 18 hours per day, I would be able to get the permission to work. Besides it all, I ended up without a visa, my money, I lost my freedom, endured several mistreatments, and years of life were taken from me, and, there is no way how to recovery. During the visa procedure, detention, and now in my new reality, I have no how to provide for myself. On October 13, 2021, will complete 4 years that am I without the possibility to provide for myself due to what DHS and ICE put me in. Also, the treatments needed to try to relieve my back injuries, my emotional condition, and time spent to provide for my defense lives me no room, and I have no permission to work and provide for myself.

Torture – no only I suffered with this arrestment, my relatives too… One of the worst parts of it was making my elderly parents suffer without knowing what I was going through and when I would be released. Feeling powerless for having no financial condition to help me.

Economic hardship due to the arrest and impossibility to do a normal life.

Putted my life at risk, for disregard my requests to be moved out after warning about mistreatment;

Disobey a judge's order, putting detainees' lives at risk. Exposing detainees to the highest risk of contamination with COVE19. I was transferred when it was at its highest level of contamination.

If the F1 visa was illegal. Each way, I was a victim of the system and I was and I am still suffering because of the unfair and unlawful situation that I was put in. Besides the very negative contribution to my emotional, and health issues, I have been deprived of access to health care for many times.

**Offer Morgan Heidi, C (floor Officer/Yuba Co. Jail)**

**Yuba County Jail**

**Sheriff/ Yuba County**

All the information (witness letters and additional proofs were sent directly to the undersheriff Ron Johnson who has now retired and a copy was also sent to Undersheriff Nick Morawcznski) This complaint is relating Battery, physical & verbal assault, & torture and omission of help (medical/all kind), at the hand of Officer Morgan, Heidi C. (floor officer on duty/ Yuba County Jail). I was not given a bathroom break or other assistance for approximate 7 hours. After being beaten without provocation, I was left without medical assistance as means to document photograph or treat my injuries properly. There was no body check following the beating on March 17, 2020 (at 23:50).

I sent a complaint via grievance about the incident which was taken. There was only one grievance taken, 3 following grievances were rejected as ordered by the sergeant (to my recollection the sergeant at that day was sergeant Palmer)

From this beating, I have a variety of problem and an ongoing injury in my mid back where I was struck by officer Morgan.

In this beating, I was brutally attacked in my mid back and was shoved from the elevator through the hallway exposing me to humiliation by abusing me in front of the men's housing cells line the hallway. Afterwards, she filed a false report stating that I threatened her and failed to follow the rules: all of which is untrue. I was an ICE detainee and at this time I had no lawyer, family, close friends or outside help here in the United States. I believe this was the reason she felt that she could abuse me without repercussion once would be her statement against me. After this time, I was placed in isolation falsely and not given proper blankets in the freezing cell and I only had a view of the wall. Then I was changed to another cell after a few days and to another cell in two or three days. I was placed in chains and treated as dangerous criminal when leaving my cell and returning to the cell

Being claustrophobic, I was placed in a very small cell close to mental health patients. I requested and expressed my inability to cope with the tiny cell and was ignored.

The Jail knew that in the past I suffered from a panic attack relating to this cell and tried to commit suicide because I could not take being in this environment. My emotional, physical, and psychological well-being was horrible and I did not receive proper care.

I Always tried to avoid being asking to go the restroom. So, I would start to stop drinking any liquid 2 hours before leaving the dorm. I was round 7 hours into the library. After the incident, I was around 9 hours (+/_) without water, around 7 without restroom break. I was dehydrated, needing to use the restroom and in panic because I was without communication with the controller officers due to the interphone being wrecked. I am not sure if the camera was working or not. I turned the lights on and off hoping that the controller room would see and send someone and no one appeared.

Knowing that this was an issue they placed me in this cell again despite my complaints and fears. After attempting suicide, they place me in a suicide watch cell which was a small cell as well. I was stripped, taking even my underwear and given a small garment for potential suicides (correction) and instead of being assisted by a female officer, I was assigned a male's officers. Those garments front to behind (correction) and I didn't have a garment to cover myself. Before the ICE agent showed up eventually moved me to a lager room.

Additional information: All my "privileges were taken from me. I had no access to visitation, classes, recreation area or contact and interaction with other detainees. My plates of food were putter through the door the door slot.

When I was placed in the first segregation cell, an ICE agent came to see me and asked about the incident. Afterwards, on March 27, 2020 he stopped by the suicide watch room to see me again, and asked if my poor emotional and physical condition was still related to what happened

the week before I nodded "yes". He said nothing and left. I can't be precise about the time, action and decision. But remember that a jail officer came to help me get dressed and chain me up, then I was transferred to a different center (Mesa Verde). I believe my transfer was to protect and shield me from further harm in this environment.

I remained in Mesa Verde from March 27, 2020 until May 7, 2020. I never was seen by medical personnel in Yuba and Mesa Verde.

*When I was released, I was not emotionally able to seek out help for my physical and emotional conditions. After speaking about my health concerns and pain with a couple of people, who told me that I could get help as an indigent at the hospital. I went to the ER to be seen for my medical conditions. The doctor told me to find a primary doctor for my back injury. I was seen at Ampla Health. They provided evidence about my injury. Before transferred to Yuba County jail (previously) at Mesa Verde, I was made an exam of my back, due to a fall, no injury shown, proving that the injure in my back now occurred, due to this incident during my time at Yuba.*

*Several situation and hardship were endured while I held at Yuba Co. Jail. Unfortunately for me, my health issue and difficulties to have access to records are depriving me to present it to your honor. As soon as I can, I will provide them those evidences.*

**Crimes committed against me:** Omission of help; Violation of prisoner rights; Battery and assault; Emotional distress; Psychological abuses; Disregard detainee care when requires special care; Persecution; Exposition to public humiliation; Inappropriate conduct; Abuse of power; Excessive use of force; Slander; Crimes against health and safety; Physical integrity, negligence.

**Damages and compensation**

Special damages for_____

General damages_____

Total incurred to date_____

Estimated prospective damages as far as known_____

Future expenses for medical and hospital care_____

Future loss of earning_____

Others prospective special damages_____

Prospective general damages_____

Total estimated prospective damages_____

**Total amount of claims: Maximum applicable to each crime**

I hereby request the maximum indemnity amount applicable by law for each crime. The reasons are expressed in my statement/claim and proofs presented to this court. First, I have no idea how much the whole health care treatment will cost; second, there are things, like life time, traumatic situations

experienced and damage caused to my image that I have no way to recover from. It will deprive me of adapting and having a normal interaction in society. I have no illusions that my life in society will be normal again, because now I have a detention's history and it will always create a situation of doubt about my character and honesty. I have experience it while released. I feel that I will always be in an exhausting situation where I will always have to prove myself to people, especially in terms of depending on their opinion to achieve things in life. I know who I am, that I have never committed any crime and have lived life as an honest person, but for having a detention's history, society will never see me this way again; it seems that there is no recovery for that, only palliative treatments like physical therapy for the injuries and mental health treatments. I am not a doctor, and I am having a hard time getting a proper evaluation from the doctors and treatments due to lack of money. It seems that because I didn't have the necessary treatment right after the incident, the damage caused to my back gave rise to the degenerative condition of the bones, which will no enable me to have a normal life. I cannot sit for too long or lift weights. I see my life conditioned to this new reality. For these new conditions, money will be needed to provide for me.

*I would like to request to this court also, that the culprits be convicted and pay for their crimes. Grant to me the stay of removal procedure until my u visa issue can be resolve with USCIS*

All notices or other communication with regard to this claim should be sent to Alexandra Ferreira da Silva, 10232 Luther rd, unit B, Live Oak, Ca, 95953

**September 30, 2021**

**General rule**

The information to include in the claim is discussed in §§6.1-6.6. Counsel should ascertain whether the public entity requires a specific number of copies of the claim form to be presented. On the department of general services rule providing for filing claims in triplicate, see comment to form in § 6.10.

The claim should be presented in accordance with Govt C §§ 915-915.4. If presentation is by ordinary mail, counsel should attach an affidavit of service by mail as authorized by Govt C § 915.2(c), in the form provided by CCP §1013a. If a claim is presented by mail, any period of notice and duty to respond is extended by 5 days for California address, 10 days for an address outside of California and 20 days if the address is outside of the United States of America, Govt C §915.2(b).

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Alexandra Ferreira da Silva

September 30, 2021

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code.<br><br>Alexandra Ferreira da Silva<br>10232 Luther Rd, unit B, Live oak, ca, 95953 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH<br>07/20/1977 | 5. MARITAL STATUS<br>divorced | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Attached statment and proof

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

n/a

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

n/a

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

attached statment and proof

| 11. | WITNESSES |
|---|---|
| **NAME** | **ADDRESS** (Number, Street, City, State, and Zip Code) |
| attached | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| | Back injury, | n/a | attached |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>5303152190 | 14. DATE OF SIGNATURE<br>sept. 30, 2021 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?   ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No   |   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

n/a

19. Do you carry public liability and property damage insurance?   ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in Item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**



PICTURE #

CELL WHERE I TRIED TO KILL MY SELF AND I WAS HOUSED (2 SECOND) TIME WITH THE INTENTION OF COURSE PHYSICAL DAMAGES PSYCHOLOGICAL TORTURE & A PUNISHING AND HARDSHIP IN ANKE SUICIDE ROOM

INDUCED TO HAVE A PANIC USING MY FEAR TO BE LEFT HOUSED AT THIS PLACE FOR THE SECOND TIME

PICTURE ①



PART OF THE ROUTE WHERE
I WAS BEATEN BY OFFICER
MORGAN AND HUMILIATED
IN FRONT OF ALL MALE
POPULATION)

**Overview about officer Morgan accusation**

When an officer is in a dangerous situation, they are required to call coworkers to back up her. The incident date was March 17, 2020, she didn't call for backup, or she would have to write it in her report. The second report officer Morgan states that I handed ICE lap-top and I had my box with my documents in my hands at R Dorm. when the truth is, she gave the order to leave ICE lap-top about the area the commissary, and it still a little far from R dorm glowing her reports, your honor will get the conclusion about the truth. The truth is, a person in my condition, would never threaten an officer. First, they have power, second, everything that you need comes through them, and if happen something you will need them.  Your honor, I am not underestimating your honor's intelligence, I know that you understand what I mean. The truth is, on March 17, 2020. Officer was not the victim; I was and still am.

10/1/2021

① Dear Valerie Zukin,

I will do a short record about what is happing with my case - legal mail.

✳ First deadline — February 19, 2019.
My mail was peked up by the officer on duty. (Coleyn +C) On Frebruary 16, 2019 to be sent out.

✳ February 26th, 2019, my mail was delivered back to me. The facility said that it happaned because I did not put stamps enough. I did geve the information previously to the jail that they must add some extra stamps, because I was without money in my jail account. They blamed me saying "Next time do not put any- thing if you know that your money will not be enough to send your mail out. I spoked with The ICE officer on duty (FRUST) and she spoke with the sergeant on duty. The sergeant sent it out (my mail). I requested to make a phone call to the court, and the person with whom I spoke with told me to send my mail out and wait. Later... The court gave me a new deadline — July 25th, 2019. (Was sent a letter to me).

(3)

At This Time, They advised me to send my paperwork To Them on The address: 85 Seven Street, San Francisco, CA 94103.

# August 05, 2019 (4) - I spoke to The court - They said, "We did not received anything from you. Was giving to me the court's fax number to send my brief by fax. I request to my case officer once before and it was a denied. So, I did another request (ICE Kite) saying That The court was requesting it from me. I have no answer about my last request yet.

# On August 12, 2019, I made other phone call, and utill that date The court did not received anything. nothing. I too Tried To copy everything ogain and send it in person Through a friend. I am waiting To have a answer from her next week.

My concern is, why The court is not getting my legal papers? I the made another grievance to The facility (First was sent on July 26th, 2018) regarding this this matter, and The sergeant sent it back through The officer in duty (Mora), and said. "Tell her That I gave To her my answer about this subject, and it is not

Name: Alexandra Ferreira de Silva
A No: 216 266 421
ICE detention facility: Yuba County Jail

United States Court of Appe
For the ninth Circuit

Alexandra Ferreira de Silva (detaine
Petitioner

V.                                    Case No 1872599
Jefferson B. Sessions III
Attorney General Respondent

Plaintiffs informal motion
for extention of time

Your honor,

As attached grievance, on February 11 2019 it was given to the facility Officer, My papper work to be sent to the court. It was delayed, and I had to call the court and explain myself by phone about what happen to me. Later, I received a letter from the court changing the date t send my documents again (the court gave me extra time to send the documents). The new schedule would be July 25, 2019. With all difficultie that I'm going through, I gave m best to have it ~~ready~~ ready to send ~~the~~ on July 5, 2019. I had allot of stress to have the documents ~~copyed~~ copied and delivered ~~through~~the floor officer ~~it~~ from the dorm. I was only able to send half of my documents July 11 2019 and the other half July 11, 2019. Officer Susan took part of mail first and the very next day Officer Topete took the rest. Even feeling uncomfor able because part of my legal mail was not closed infront of me, I gave it to the floor officer. On July 17, 2019 around 3pm (+/-) a phone call was given to me, and I made a phone call to the court (415 355 7840) to expos my concerns, and let the court know about it. I told the court about the dates that I gave my papework to the floor officer to be sent. The

again, and any extra help that
can be given to me in this matte

Respectfully

Alexandra Ferreira da Silva

To Whom it may concern

①③

Notice

To whom it may concern,
I am writing this letter to address
some issues I have been experiencing
when it comes to phone booth
request and the lack of attention
or repair to the ice laptop.
As I'm sure you are well aware
I am representing myself in my
current case and with that comes
aditional requirements and responsibilities
from me that are taken care of
by lawyers for other detainees.
For example, ~~there~~ ~~were~~ it is my
responsibility to make and keep
any and all appointments made by
myself or my case officer, ~~and~~
~~keep~~ with the position I find myself
currently in with my incarceration
most of these ~~appo~~ extra appointments
happen via the telephone booth,
however I feel that ~~both~~ my
informal as well as formal request
I have made in concern to such
appointments have been overlooked
and blantankly disregaurded. In turn
this has caused enormous setbacks
in my case as well as displayed
an image of disrespect to the courts
& its authority from me which in no
way is how I feel or want displayed
on my behalf.

2/3

SPECIFICALLY I WANT TO ADDRESS THE INCIDENT THAT TOOK PLACE ON JULY 23RD 2019 IN WHICH I HAD AN APPOINTMENT WITH THE COURTS TO CALL THEM BETWEEN 9:00am — 3:00pm WHICH AT THIS TIME, EVERY OTHER DETAINEE WAS GIVEN THE OPPORTUNITY TO USE THE TELEPHONE BOOTH AND EVEN THOUGH I FORMALLY PUT IN A REQUEST. I WAS THE ONLY ONE NOT ABLE TO USE THE BOOTH, GIVEN THE REASON, "THERE WAS NOT ENOUGH TIME FOR ME TO MAKE MY CALL." THIS LACK OF CARE & ATTENTION TO MY REQUEST WAS VERY DISHEARTING TO ME AND CAUSED MY CASE A HUGE SET BACK AND DISPLAYED YET ANOTHER SHOW OF DISRESPECT BY ME YET WAS OF NO FAULT OF MY OWN.

AS FAR AS THE ICE LAPTOP REPLACEMENT OR REPAIR THAT REMAINS STILL TO BE TAKEN CARE OF HAS NOT ONLY MADE IMPOSSIBLE FOR ME TO CONDUCT ANY LEGAL RESEARCH, FILL OUT ANY TIME SENSITIVE DOCUMENTS OR COMPOSE ANY COURT DOCUMENTS I NEED. I'M SURE YOU CAN SEE THE CATASTROPHIC SETBACK THIS PRESENTS FOR ME.

I DO NOT FEEL ANY OF THESE ARE OUTRAGIOUS OR UNANIMABLE

FRANKLY IT IS DISGUESTINGLY :
UNCOMPREHENDABLE TO ME WHY
I AM NOT HAVING MY BASIC RIGHTS
OR NEEDS MET WHEN IT COMES TO
CONDUCTING LEGAL RESEARCH OR BEING
GIVEN THE ABILITY TO ~~~~~ MAKE USE
OF THE ICE TELEPHONE BOOTH.
   IF I NEED TO ADDRESS THESE ISSUES/
PROBLEMS & UNNECESSARY SETBACKS
TO A HIGHER UP OR IN A DIFFERENT
MANNER SO WE MAY COME TO A
RESOLUTION I WILL DO SO ACCORDINGLY.


          THANK YOU FOR YOUR TIMELY
          RESPONSE TO THIS MATTER

            Alexandra Ferreira da Silva

          July 25, 2019

          A phone call was given
on july 25, 2019.
       But, I still need have my legal
appointments respected, and my
ICE lap-top fixed.
       I have to type and print
documents to send out to
court again
          07/26/19.

I need call The court
again, still need speak
with my counselor and
MUSborn.

# Incident Narrative

## YUBA COUNTY SHERIFF'S DEPARTMENT
### JAIL DIVISION                                    *"Building a Safe Community"*

**Date:** 7/30/2019                          **Incident Number:** 74182
**Incident Type:** ICE GRIEVANCE
**Entry Officer:** MORGAN, HEIDI C

**Occurrence Date/Time:**    7/30/2019   1:00
**Reported Date/Time:**      7/30/2019   1:06

**Incident Location/ Comments:** INMATE GRIEVING MAIL NOT BEING PROCESSED
FAST

---

### FERREIRA DA SILVA, ALEXANDRA

On the above date and time, I was assigned to level two females. While conducting an
hourly safety check, I was given a grievance by inmate Ferreira da Silva. Inmate Ferreira
da Silva is grieving that the "office of the clerk for immigration litigation and chief
counsel" did not receive her mail by the time she thought they should. Inmate Ferreira da
Silva wants an explanation about why.

Forward to graveyard shift Sgt.

Van de Bruinhorst – 07/30/2019: I talked to Ferreira when she was about to leave for Court
appearance. I asked her to waive time so we could talk to the Officers who handled her
mail. She was fine with that.

Van de Bruinhorst – 08/02/2019: Your mail was indeed picked up by the Officers
mentioned on Friday the 19th of July. The mail was processed Monday morning the 21st by
the Jail Commander's assistant; your envelopes received postage and were brought the
same day to the Marysville post office. This grievance is closed.

| This Box for Grievance Information Only | |
|---|---|
| | |
| Inmate Signature | Date |

| | |
|---|---|
| Reporting Deputy / Date | Receiving Supervisor / Date |

# Incident Narrative

**YUBA COUNTY SHERIFF'S DEPARTMENT**

**JAIL DIVISION**                           *"Building a Safe Community"*

**Date:** 8/27/2019                                    **Incident Number:** 74496
**Incident Type:** ICE DISCIPLINE
**Entry Officer:** BEATIE, MEE

**Occurrence Date/Time:**      8/27/2019   5:41
**Reported Date/Time:**        8/27/2019   5:48

**Incident Location/ Comments:** OLD BK ELEVATOR|FAIL TO FOLLOW ORDER|ICE|MN

---

**FERREIRA DA SILVA, ALEXANDRA**
**BEATIE, MEE**
**THOMPSON, K**

On 08/27/19, I Officer Beatie was assigned to work the female floor for the second half of graveyard shift. At approximately 0538 hours, LVN Shirley and I went up to the old roof to give Ferreira Da Silva her morning medications. When I got to the roof Ferreira Da Silva advised me she wanted to come down from the roof. I then escorted her in the elevator with LVN Shirley and her medicine cart back down.

As we were about to exit the elevator detainee Ferreira Da Silva grabbed the stack of medical sick call slips off LVN Shirley's medicine cart, which were sitting right next to all of the medications. I told Ferreira Da Silva that she can only get one sick call slip. I also told her she is not to grab anything off the medicine cart. Detainee Ferreira Da Silva argued with me by first disagreeing that she couldn't have more than one sick call slip. I explained to Ferreira Da Silva that Shirley was still passing medications and still needed to hand those sick call slips to others who needed them. She continued to argue that she was taking enough sick call slips for the rest of the dorm. Secondly, Ferreira Da Silva argued that it was "ok" for her to take stuff off of the medicine cart. I reiterated myself to Ferreira Da Silva. She was highly argumentative and escalated the situation by refusing to be quiet after I ordered her to stop talking numerous times. She raised her voice and continued to argue and talk back to me. She talked over me and would not let me complete my sentences.  Officer Thompson was also present and witnessed the incident as she was returning two inmates to Q-4.

| This Box for Grievance Information Only |
|---|
| |
| **Inmate Signature**                              **Date** |

| | |
|---|---|
| **Reporting Deputy / Date** | **Receiving Supervisor / Date** |

I ordered detainee Ferreira Da Silva several times to face the wall to create space between us. She refused and stated, "No, I will not face the wall!" "You can't make me face the wall!" I had Officer Thompson standby Ferreira Da Silva while I do a security check in Q-4. When I exited, Q-4 Ferreira Da Silva continued talking and complaining. Once again, I ordered her to be quite numerous times with no avail.

I escorted Ferreira Da Silva to R-dorm. She yelled and complained loudly the whole way there. I also raised my voice at her in hallway and in R-dorm as she just would not stop.

**OFFICER'S RECOMENDAION:** 7 days loss of visits, 7 days loss of commissary
Forwarded to SGT. Palmer/SGT. Little

**Supplement: Officer Beatie**
On 08/27/19 at approximately 2035 hours, I served detainee Ferreira Da Silva her discipline. She would like to have a hearing.

<table>
<tr><td colspan="2" align="center">**This Box for Grievance Information Only**</td></tr>
<tr><td>**Inmate Signature**</td><td>**Date**</td></tr>
<tr><td>**Reporting Deputy / Date**</td><td>**Receiving Supervisor / Date**</td></tr>
</table>

On 8/27/19 I woke around 6 A.M
to cloud shouting coming from
officer beatie towards the distance
of ferrer telling her to shut up over
and over. I felt she was being
very rude towards her and the rest
of the dorm. She was acting
Disrespectful and putting her finger
over her mouth treating ferrer
like a child.

Jennifer Dys

To Whom It may Concern,

I was sitting with Alexandra Ferreira da Silva at the table on December 26th 2019. She politely asked the officer on duty at approx. 3:20 P.M. if she could use or get a form. The officer rudely said "I don't have time to think about you." This is true and correct.

Respectfully,

Jackie Todd
#137780

# Incident Narrative

## YUBA COUNTY SHERIFF'S DEPARTMENT
### JAIL DIVISION
*"Building a Safe Community"*

**Date:** 9/4/2019                                    **Incident Number:** 74594
**Incident Type:** ICE GRIEVANCE
**Entry Officer:** CHAVEZ-GARCIA, GABRIELA

**Occurrence Date/Time:**     9/04/2019  9:00
**Reported Date/Time:**       9/04/2019  9:01

**Incident Location/ Comments:** R-DORM/ICE/GRIEVING LEGAL MAIL OPENED

---

### FERREIRA DA SILVA, ALEXANDRA
### CHAVEZ-GARCIA, GABRIELA

On 09/04/19,  At approximately 0900 hrs I Officer Chavez-Garcia received a grievance from detainee Ferreira. She is grieving her legal mail being opened this morning (09/04/19). She received her mail close to 6 am.

Fwd to Sgt. Palmer

Sgt J Palmer:
On 09-05-19 at approximately 0500 hours, I spoke with detainee Ferreira at R-dorm while I was conducting a walk-through of the female housing areas. I advised Ferreira I had already spoken to the officer who had processed the mail. The officer was a newer officer and did not recognize that mail coming from a court did not need to be marked as legal mail. I advised her I would speak with all of the officers to ensure legal that is clearly marked and legal mail coming from courts would not be opened outside of her presence.

Ferreira began to talk about needing copies of all of the reports that have her name on it from 07-01-19 to the present. And needing new copies of the legal documents to send to the Immigration Courts due to the last ones she sent not being sent out in a timely manner. She stated she would not sign off on the grievance until she has copies of the reports she requested.

| This Box for Grievance Information Only |
|---|
| |
| Inmate Signature                                          Date |

| Reporting Deputy / Date | Receiving Supervisor / Date |
|---|---|

v. Van der Bruinhorst – 09/07/2019: I met with Ferreira. I informed her request for copies of documents was not a bargaining tool for her signature and I considered this matter closed. Ferreira however informed me the grievance at hand was indeed dealt with and she was willing to sign off the grievance. Grievance was signed and closed.

---

**This Box for Grievance Information Only**

_____     _____

**Inmate Signature**                                    **Date**

---

_____     _____

**Reporting Deputy / Date**                      **Receiving Supervisor / Date**

# Incident Narrative

## YUBA COUNTY SHERIFF'S DEPARTMENT

### JAIL DIVISION                    *"Building a Safe Community"*

**Date:** 8/23/2019                                          **Incident Number:** 74454
**Incident Type:** ICE DISCIPLINE
**Entry Officer:** BASS, Q

**Occurrence Date/Time:**        8/23/2019   2:30
**Reported Date/Time:**          8/23/2019   2:54

**Incident Location/ Comments:** R-DORM, ICE, POSS OF CONTRABAND/ MINOR

---

FERREIRA DA SILVA, ALEXANDRA
BASS, Q

On August 23, 2019 at approximately 0230 hours, I officer Bass was scanning outgoing mail in central control, when I came across a letter written by Ice Detainee Ferreira Da Silva, Alexandra. Right away I observed that the letter was written in pink ink. The county only provides black ink pens, and she is therefore in possession of contraband and violation of county rules from the inmate handbook.

<u>Rule violation</u>
# 10. Possession of contraband

See attachment letter on page #2

Officer's recommendation:  Conduct shakedown to find the pen and 7days loss of visits


On 08-23-19, I Officer Davis, served Detainee Ferreira Da Silva her discipline. She wants a hearing. Forward to Sgt Cordray

| This Box for Grievance Information Only |
|---|
| |
| **Inmate Signature**                      **Date** |

| | |
|---|---|
| **Reporting Deputy / Date** | **Receiving Supervisor / Date** |

# Hearing Narrative

## YUBA COUNTY SHERIFF'S DEPARTMENT

### JAIL DIVISION                          *"Building a Safe Community"*

Date: 8/29/2019                              Incident Number: 74454
Hearing Date: 8/24/2019  Time: 18:00        Name: FERREIRA DA SILVA,
ALEXANDRA

Hearing Status: COMPLETED
Hearing Findings: DROPPED

Hearing Officer: CORDRAY, C B
Hearing Supervisor: 7,

---

On the above date and time, I reviewed the disciplinary action for Detainee Ferreira.
Ferreira stated she wrote the letter in light blue ink that was provided to her while in class.
The explanation appears to be a reasonable explanation. Discipline will be dropped.

Sgt. Cordray

Receiving Deputy                                    Date

I Kimberly Wallace saw
Alexandra Ferreira De Silva
write her friend a letter in
class with the teachers pink
ink pen

Kimberly Wallace

9-25-19


Alexandra Ferreira
used my pink pen
in class sometimes
Claudia Newkirk
Sep 18, 2019

*Testigo*

Yo, Corona Moreno, Norma Patricia, nunca fui testigo berbalmente al acidente que passo en el 03/17/2019. La oficia Bass nunca me entrevisto, porque la oficia Bass y yo no podemos comunicar, por el idioma lla que que ella abla english y yo solo ablo fluente espanol, y siempre ahi confusion. Mas aparte, yo no queria ser parte de la situacion incomoda.

**Yo declaro y entiendo la penalidad del perjuro de la declaracion que esta ariva es verda. Yo soy la persona que iso la declaracion que esta ariva . La declaracion la ise y fue echa por mi propia volunta y es nada mas que la verda. Y no fui verval mante precionada por ninguna persona o grupo.**

### Testimonial Declaration

I, Corona Moreno, Norma Patricia, I never testify verbally in the incident dated 03/17/2019. Because we have languages issue. Officer Bass speaks English, and I just speak fluent Spanish which result in continuous misunderstanding. Aside from this, I did not want to participate in this uncomfortable situation.

**I declare under penalty of perjury that the above statement is true and factual. I am the above named person, and have said this of my own free will because it the truth. I have not been bribed or forced, pressured by any one, or group.**

Sincerely

Patricia Corona

Date: 7/11/1 9

# Incident Narrative

**YUBA COUNTY SHERIFF'S DEPARTMENT**

**JAIL DIVISION**                                       *"Building a Safe Community"*

**Date:** 3/17/2020                                    **Incident Number:** 77043
**Incident Type:** ICE DISCIPLINE
**Entry Officer:** MORGAN, HEIDI C

**Occurrence Date/Time:**       3/17/2020   23:50
**Reported Date/Time:**         3/17/2020   23:55

**Incident Location/ Comments:** FAILURE TO FOLLOW ORDERS/ THREAT TO STAFF

---

FERREIRA DA SILVA, ALEXANDRA
MORGAN, HEIDI C

**On the above date and time I was assigned to level two females. At approximately 2350 hours, I went to the law library to get inmate Ferreira da silva and return her to housing. As soon as I walked in to the law library inmate Ferreira da silva started raising her voice at me. She made a lot of demands for immediate attention. As she gathered her papers and box and the ICE laptop, I advised her that I arrived as soon as I could. Inmate Ferreira da silva told me that she never wants to go to the law library again. I advised her that if she wanted to use the ICE laptop, that was the only location she would be using it. We proceeded to the elevator.**

**Once on the elevator, inmate Ferreira da silva said, "I want a grievance and I will speak to the sergeant now."**

**I said, "You can put in a request."**

**Inmate Ferreira da silva replied in a very angry tone, "I want a grievance." My reply was the same as before. Inmate Ferreira da silva demanded once again to have a grievance.**

**I responded, "You can follow the proper procedure and fill out a request." She said "No." and continued to repeat herself.**

| This Box for Grievance Information Only |
|---|
| |
| Inmate Signature                                      Date |

| | |
|---|---|
| Reporting Deputy / Date | Receiving Supervisor / Date |

We exited the elevator on level two. Inmate Ferreira da silva exited left, towards booking. I said "No." I put my hands on her shoulders and directed her towards the G door due to her refusal to follow my instructions. She became very angry and repeated 'you can't touch me" many times. I continued to instruct her to walk to R Dorm. She was disrespectful, continued to stop walking and made immediate demands. I used an open palm and pushed her on her upper right shoulder to keep her forward movement and follow my order.

Inmate Ferreira da silva stopped at the door that leads to the female side. She continued to raise her voice loudly and make demands. I continued to tell her to walk. I opened the door and had her walk in front of me. I escorted her all the way to R dorm.

When we reached the door to R dorm, inmate Ferreira put the box down that she was carrying. She threatened me, saying "just put your hands on me and see what will happen". She puffed out her chest and advanced towards me. She was red faced from anger. I quickly opened the R dorm door and told her to go in. Inmate Ferreira da silva pushed her box in and continued to make demands as I shut the door.

**Officer recommendation: Due to safety and security concerns I recommend she be reclassified and rehoused. Forward to ICE.  30 days loss of visits**

| This Box for Grievance Information Only |
|---|
| |
| **Inmate Signature**                      **Date** |

| | |
|---|---|
| **Reporting Deputy / Date** | **Receiving Supervisor / Date** |

Case 2:2_____ Filed _____ Page 66 of 203

# Memorandum

## YUBA COUNTY SHERIFF'S DEPARTMENT

### JAIL DIVISION

*"Building a Safe Community"*

To: Ferreira, Alexandra 155100
_____NAME_____   ___ID#___

Re:   Inmate / Detainee Mail

This is to inform you that mail was received that was addressed to you. The mail was inspected by jail staff and a problem was identified with this article of mail.

Check appropriate box:

☒   Information or material which is considered to be a direct threat to the security of the jail facility. This mail article was returned to sender.

☐   Article received was a package. This mail article was returned to sender.

☐   Inmate / Detainee is no longer in custody.

☐   Address or name is insufficient to locate prisoner. Item returned to sender.

☐   Photographs larger than wallet size were enclosed. Pornographic images or drawings were discovered. Items available on our commissary were discovered. Gang indicia were discovered. These items were removed and placed into your property and will be added to your list of property items. The items removed are listed below.

1. Perfume on letter   3. _____

4. _____   5. _____   6. _____

_____   3-7-20
Supervisor signature          Date

## INMATE REQUEST FORM

**INMATE NAME:** FERREIRA DASILVA   **HOUSING AREA:** B 2

**REQUEST**

SIR, YOU ASK MORE TIME TO COMPLETE THE INVESTIGATION AND I HAVE COOPERATE WITH YOU LIKE I ALWAYS DO. MY MIND IS FREE OF GUILTY. BUT THE SITUATION THAT I AM IS NOT ~~RESPONSE~~ [FAIR]. I WOULD LIKE TO ASK YOU LET ME KNOW ABOUT THIS PROCESS, THAT IS MAKING ME SUFFER WITHOUT BE GUILTY. WHEN IT WILL END. THANK YOU

**RECEIVING DEPUTY** _____ **DATE / TIME** _____

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

---

## INMATE REQUEST FORM

**INMATE NAME:** Ferreira Da Silva   **HOUSING AREA:** 02

**REQUEST**

I WOULD LIKE TO KNOW AS WELL. I SENT THE GRIEVANCE BECAUSE NOBODY SHOW UP TO MAKE A PIC TO OF MY LEG AND IT WAS RETURNED TO ME AND I WAS WARNED THAT RESPONSE THE OFFICE WAS WARNED TO DON'T RECIEVE ANY GRIEVANCE FROM ME. WHY O IT IS NOT MY RIGHT? THANK YOU AND YOU BE MIT THE OFFICE TO BRING ATIV FOR ME?

**RECEIVING DEPUTY** _____ **DATE / TIME** _____

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

## Form 1 (top left)

ATTN: _____ (Thompson)

### INMATE REQUEST FORM

**INMATE NAME:** FERREIRA DA SILVA R
**HOUSING AREA:**

**REQUEST**

PLEASE I WEE USE
ICE LAP TOPE

**RESPONSE**

☞ LAW LIBRARY IN USE

2000 LEVEL 4 CLOSED FOR MAINTAINCE
(PDF NOX)

**RECEIVING DEPUTY**
**DATE / TIME** 3/14/2018 54
4:30 PM

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

## Form 2 (top right)

### INMATE REQUEST FORM

**INMATE NAME:**
**HOUSING AREA:** R

**REQUEST**

_(illegible handwriting)_

**RESPONSE**

_(illegible handwriting)_

**RECEIVING DEPUTY**
**DATE / TIME** 3.15.20 0720

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

## Form 3 (bottom left)

### INMATE REQUEST FORM

**INMATE NAME:** Ferreira da Silva
**HOUSING AREA:** IV

**REQUEST**

_(illegible handwriting)_

**RESPONSE**

**RECEIVING DEPUTY**
**DATE / TIME** 12/7/19

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

## Form 4 (bottom right)

ATTN: SERGEANT IN DUTY

### INMATE REQUEST FORM

**INMATE NAME:** FERREIRA DA SILVA R
**HOUSING AREA:**

**REQUEST**

I NEED THE INCIDENT REPORT
POLICE REPORTE SINCE 02/01/2020
TO TODAY 03/18/2020.
THANK YOU.

**RESPONSE**

COPY was Given

**RECEIVING DEPUTY**
**DATE / TIME** 3-17-20 0305

WHITE: RETURNING REPLY    YELLOW: INMATE COPY

ATTN, OFFICE

## INMATE REQUEST FORM

Ferreira da Silva R.
**INMATE NAME** _____   **HOUSING AREA**

### REQUEST

Please sir, I need speak
with you. Last with you told
that you would see me on
Juni 26, 2019. Tay Drink
Officer Chavez she told
Tied. He is not here. actually
she was in home on visitor
me. I ask to speak Witi you
So please the time no
send my Records to court
is coming som ~ 06/30/19

**RECEIVING DEPUTY** _[signature]_   **DATE / TIME**

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

---

## INMATE REQUEST FORM

Ferreira da Silva R.
**INMATE NAME** _____   **HOUSING AREA**

### REQUEST

Was give to the year
Officer a copy of
my application of and
motion for ex tu tion
3 pages and the cred

**RESPONSE** Notice
sent to ICE
3 pages.

Detainee Ferreira da silva
gave me a Yellow Envelope
going to office of the Clerk P.O. box
193824
Given to central control   07/25/19

**RECEIVING DEPUTY** _[signature]_   **DATE / TIME** 7/25/19

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

S210

**INMATE REQUEST FORM**

Ferreira dos Silva

INMATE NAME

R

HOUSING AREA

REQUEST

Sargent, I need speak with you about my mail and the grievance. Please, soon os possible.

RESPONSE

TALK TO YOUR FLOOR OFFICER!

RECEIVING DEPUTY _Maslee_      5-19/1241

DATE / TIME

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

---

**INMATE REQUEST FORM**

Ferreira dos Silva

INMATE NAME

R

HOUSING AREA

REQUEST

Sargent, I need speak with you about my mail and the grievance. Please, soon os possible.

RESPONSE

RECEIVING DEPUTY _Maslee_      5-19/1241

DATE / TIME

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

---

**INMATE REQUEST FORM**

Ferreira dos Silva

INMATE NAME

R

HOUSING AREA

REQUEST

I would like to have a leave with the Captian of the THL grievance. I see it if it fought with the memorys.

RESPONSE

Thank you.

Captian Garza

RECEIVING DEPUTY      DATE / TIME

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

OTHER PROBLEMS IS
HAVE ACCESS TO MY
RECORDS

**SICK CALL REQUEST / SOLICITU DE CITA MÉDIC A**

Today's Date / Fecha De Hoy

Time / ¿Hora del Pedido?

**YOUR NAME / NOMBRE**

I.D.# / Número de identificación

Your Housing Location / La Ubicación de su vivienda

Your Medical Problem? / ¿Su Problema Medico?

When did you last see a Jail Nurse or Doctor? / ¿Cuándo fúe la última vez que vió a la enfermera ó doctor de la carcel?

What medications are you taking now? / ¿Que medicamentos esta tomando ahora?

If the Courts Want your
Records They must send us
a formal request —

Received by Deputy

Date _____ Time _____

Received by Medical Staff

Date _____ Time _____

INMATE RECORDS
PHYSICAL ASSALT

## INMATE REQUEST FORM

Ferreira Silva          R
**INMATE NAME**                    **HOUSING AREA**

### REQUEST

Can you please send Me the
incident report between
Me and Officer Bullock
that involve the
BOSS. NEED IT ASAP
Thank

### RESPONSE

the action taken
over this issue
Thenk you very Much

**RECEIVING DEPUTY**              **DATE / TIME**

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

---

Command Guzman

## INMATE REQUEST FORM

Ferreira du Silva      R
**INMATE NAME**                    **HOUSING AREA**

### REQUEST

Sir, I would like to
speak with you. Please
I am will
since
that I do will
the other

### RESPONSE

told me
you would come back
and you have. Please
and speak but the
report myy's need my day

**RECEIVING DEPUTY**              **DATE / TIME**

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

---

ATTN: SGT Litter

## INMATE REQUEST FORM

Received by: Officer Guzman

Ferreira dos Silva     R
**INMATE NAME**                    **HOUSING AREA**

### REQUEST

Sargent litter, I know
that you charged the
Immate involved in the
incedint no. 1231 (physical harm,
agaist my self on the 3/17/19
I would please like a copy
of the (report) because used
to base the charges to the
immate. This report will
be used just for legal
reson.    Thank you's (06/15/19)

**OFFICER DEPUTY**              **DATE / TIME**

Denied

WHITE: RETURNING REPLY      YELLOW: INMATE COPY

## INMATE REQUEST FORM

INMATE NAME: Ferreira du Silva

HOUSING AREA: R

### REQUEST

Sergent Cotton, Can
you please send to me the
report about the incident
with the emergenc "Pulling of
extencher officer "Boss"

### RESPONSE

Report and then claim need
by the Jdue about the virus
Thanks you

RECEIVING DEPUTY: _____  DATE / TIME: _____

WHITE: RETURNING REPLY     YELLOW: INMATE COPY

---

## INMATE REQUEST FORM

INMATE NAME: Ferreira du Silva

HOUSING AREA: R

### REQUEST

Cotton I would like
write a letter with you
about how I need hel
of the fall you were
try to gee your perm
I need it for next week

### RESPONSE

wednesday or friday. Th
you
Will talk to you

RECEIVING DEPUTY: _____  DATE / TIME: _____

WHITE: RETURNING REPLY     YELLOW: INMATE COPY

---

## INMATE REQUEST FORM

INMATE NAME: Ferreira du Silva

HOUSING AREA: R

### REQUEST

I need you Want
with you tell me
when I need send
it down out

### RESPONSE

RECEIVING DEPUTY: _____  DATE / TIME: 4/14/11

WHITE: RETURNING REPLY     YELLOW: INMATE COPY

Attn: Sargent Ver du

## INMATE REQUEST FORM

Ferreira dos silva                                B

**INMATE NAME**                                    **HOUSING AREA**

### REQUEST

Sgt. I need the Deputy that
the issue occurred on. I've
detained (Borges) (to) Please
send it to my "Attorney" I'm
a *Pinky*. Thank you

### RESPONSE

nava

RECEIVING **DEPUTY**                    06/14/19

**DATE / TIME**

WHITE: RETURNING REPLY        YELLOW: INMATE COPY

# M Gmail

**Alex S <9figar@gmail.com>**

---

## Case # C20-02
2 messages

---

**Alex S <9figar@gmail.com>**                                           Wed, Jul 7, 2021 at 10:54 AM
To: mciccozzi@co.yuba.ca.us

Dear  Michael J. Ciccozzi,

I have been trying to speak with you since last week without success. What time would be the best time to call you?
Can you please let me know why the sheriff/record unit is not providing the copy of the process (C20-02) as
requested and paid, and is not respecting the time according to the deadline stipulated by law? I hope to hear from
you soon.
Miss Silva

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>              Wed, Jul 7, 2021 at 10:54 AM
To: 9figar@gmail.com



## Message blocked

Your message to **mciccozzi@co.yuba.ca.us** has been blocked.
See technical details below for more information.

The response from the remote server was:

550 #5.7.1 Your access to submit messages to this e-mail system has been rejected.

Final-Recipient: rfc822; mciccozzi@co.yuba.ca.us
Action: failed
Status: 5.0.0
Remote-MTA: dns; mx2.hc3509-35.iphmx.com. (216.71.137.205, the server for the
 domain co.yuba.ca.us.)
Diagnostic-Code: smtp; 550 #5.7.1 Your access to submit messages to this e-mail system has been rejected.
Last-Attempt-Date: Wed, 07 Jul 2021 10:54:55 -0700 (PDT)

---------- Forwarded message ----------
From: Alex S <9figar@gmail.com>
To: mciccozzi@co.yuba.ca.us
Cc:
Bcc:

Date: Wed, 7 Jul 2021 10:54:42 -0700
Subject: Case # C20-02
Dear  Michael J. Ciccozzi,

I have been trying to speak with you since last week without success. What time would be the best time to call you?
Can you please let me know why the sheriff/record unit is not providing the copy of the process (C20-02) as
requested and paid, and is not respecting the time according to the deadline stipulated by law? I hope to hear from
you soon.
Miss Silva

TO ICE SUPERVISE                    S

JANUARY 11, 2020

DEAR SIR/MADAM

SINCE i WENT TO YUBA COUNTY JAIL i HAVE
SUFFERING A LOT OF EMOTIONAL DISTRESS CAUSED
BY DIFFERENT iSSUES. BUT, TODAY i NEED BRING
TO THE "LIGHT" OF YOUR ATTENTION, THE iSSUE ABOUT THE
LAW LIBRARY ACCESS.

EVERY TIME THAT i REQUEST TO USE THE LAW
LIBRARY, OR AN SPACE TO USE ICE LAP-TOP TO
TYPE LEGAL PAPERWORK, THE JAIL'S STAFF HAS GIVEN
DIFFERENTS EXCUSES TO DEPRIVE ME FROM HAVE
ACCESS TO iT. FIRST WAS, "BOTH LIBRARIES WERE BE
BEEN USED DURING DAY FOR CLASS SESSIONS, OR THE
OFFICERS ARE VERY BUSY DURING DAY. i HAVE
BEEN "SHUTING" MY MOUTH AND PATIENTLY ACCEPTING
TO BE TAKE TO USE iT WHATEVER WHEN THE
OFFICERS TAKES ME, iT NORMALY HAPPEN BETWEEN
10 PM to 5 AM (GRAVE YARD TIME). THIS LASTS WEEK
WEEKS i REQUETED TO USE THE LAW LIBRARY
DURING DAY. SAID HOW i HAVE BEEN FEELING SICK
FOR STAY UP, WHEN WAS SUPPOSE BEING SLEEPING.
BUT THEY HAS KEEPING PUSHING ME TO USE iT
IN GRAVE YARD TIME. NOW, THEY START
RESTRICTING ME TO ONE HOUR PER DAY, AND GIVEN
ME "HARDSHIP" TO HAVE ACCESS TO EXTRA HOURS.
SOME TIMES SAY. "YOU WENT YESTERDAY, SO TODAY
YOU CANNOT GO. iT HAS CAUSED SEREOUS DIS-
TURBACES TO ME PROCESS, AND SEREOUS EMOTIO-
NAL DISTRESS THAT COULD BE AVOIDED.

I HAVE BEEN DISRESPECTED iN MY RIGHTS AND
AS HUMAN BEING, BY WORD AND ACTIONS.

ALEXANDRA FERREIRA DA SILVA

A. No. 216.26.6.421

PRO SE

DEAR SIR

i WOULD LIKE TO SPEAK TO A SUPERVISOR. I'VE
ATTEMPTED TO SPEAK TO OFFICER WINANS REGARDING
ISSUES, AND MISTREATME AND ABUSE OF POWER THAT
I AM ENDURING AT YUBA COUNT JAIL (AND OUT), BUT
HE'S DISREGARDING EACH TIME. COPIES OF LEGAL
PAPERWORK THAT I NEED FOR MY CASE ARE BEING
DENIED AND OTHER BASICS NEEDS. I AM STRUGGLING TO HAVE ACCESS TO. I AM NOT TAKEN
TO MAKE LEGAL PHONE CALL THOUGH I SUBMIT
REQUEST. I AM DEALING WITH A LOT THING AND
I NEED THOSE PHONE CALLS. I HAVE ACCESS TO ASTOL I AM NOT RECEIVING
MEDICAL CARE, IT HAVE BEING LIMITAD TO ME.
IT IS JUST SOME OF MY SEVERAL ISSUES THAT
I AM FACING SINCE I WENT TO YUBA AND I
WOULD LIKE TO ADDRESS WITH YOUR EXCELLENCY

RESPECTFUL SUBMITED BY

Alexandra Ferreira da silva

MARYSVILLE, CA - 02-18-2020

I would like to speak to a supervisor.

I'm not being helped by my ice agent (Winans) and I'm dealing with alot of things here at Yuba such as my copies that I request are not being done, I'm not receiving medical care and I'm not being called out to my legal phone calls that I submit requests for. These are just some of my issues that I'd like to address to a supervisor please. Thank you

1

Fair office by 3pm. Purchase of a Grandstand Event of Carnival ticket does not include...
Firearm crossover items

# LOCAL

s / 5    Forum / 6

Visit us at appealdemocrat.com

Wednesday, July

# Yuba County inmates begin hunger strike over conditions

**By Rachel Rosenbaum**
rosenbaum@appealdemocrat.com

Immigration detainees housed at Yuba County Jail have begun another hunger strike in protest of jail conditions.

Thirty-six detainees started refusing meals Sunday, according to a Campaign for Immigrant Detention Reform press release issued Tuesday.

Their demands, according to the release, include ending punitive conditions; providing contact visits, which enable fathers and mothers to hold their children in designated rooms; improving medical, mental health and dental treatment; increased phone access and reduced prices for use; addressing maintenance issues in a timely manner; addressing unsanitary conditions; and addressing exorbitant commissary prices.

Spokespeople for detainees allege that conditions include cockroaches under mattresses, in food tray carts and in commissary bags, broken toilets, and doctor visits and prescription requests that can take weeks.

The Yuba County Sheriff's Office does not officially recognize a hunger strike until nine consecutive meals have been refused, spokesperson Leslie Carbah wrote in an email Tuesday. Some of the detainees have refused meals but are still eating commissary items. She said some of their concerns include recreational items like TV programming and the exercising yard schedule, among other concerns, "some of which are outside of our control due to the mandates of the Consent Decree," she said.

That amended consent decree, also cited by CIDR's press release, orders Yuba County Jail to improve its conditions as proof of insufficient care. The agreement, which was reached in August and stems from a 1976

lawsuit, orders that the jail make a number of specific changes including limitations on safety cell placement, improved detoxification procedures, the creation of step-down cells for suicidal prisoners, licensed psychiatric staff on-site 24/7, and other improved programming, according to Appeal-Democrat archives.

"We will not turn a blind eye amid the cruel, degrading and inhumane treatment of our immigrant community members in detention at Yuba County Jail," Rhonda Rios Kravitz, co-founder of CIDR, wrote in the release. "As the nation is about to celebrate Independence Day on July 4, thousands of immigrants are being locked up and families are being torn apart. Right here in Marysville, about 180 immigrants are being detained daily in poor conditions..."

Carbah is unsure if the detainees on hunger strike are the same ones who participated earlier this year as Immigration and Customs Enforcement detainees fluctuate daily (the jail houses an average of 182 ICE detainees each day). She said detainees are discussing their concerns with jail command, and the department is hopeful it will be resolved before it officially becomes a hunger strike.

Forty-six detainees went on a six-day hunger strike in February citing 19-hour lockdowns and inadequate access to healthcare, according to archives. Activists shared optimism at the end of the strike, hopeful that ban said in February that a hunger strike was not necessary to have communication about various issues.

CIDR is hosting a press conference today at 10 a.m. at Yuba County Superior Court (215 5th Street, Marysville) in support of the hunger strikers and to discuss their concerns with jail conditions, according to the release.

# NWS says high temperatures lower than normal in Yuba-Sutter area

## Friday should bring mid-90 temps, officials report

**By Veronica Catlin**
vcatlin@appealdemocrat.com

"It'll still be warm but it's a few degrees lower than what it normally is.

Weather Service. "The hottest is expected to be at 97 to 99 d...

## CORRECTION PO...

The Appeal-Democrat pro... corrects all errors of subst... to report an error or requ... clarification, call 749-65...

## WHO TO CALL

### NEWSPAPER DELIV... AND SUBSCRIPTIO... INFO: 749-654...

Marysville office, 1530 Ell... Lake Drive
Business hours:
Monday-Friday, 9 a.m.-5 p.m.
Closed for lunch: Noon-1 p.m.

### NEWSROOM
Main number..........................749-

#### EDITOR
Steve Miller.........................749-

#### REPORTERS
Jake Abbott.........................749-
Veronica Catlin....................749-
Chris Kaufman.....................749-
Jeff Larson...........................749-
Ruby Larson.........................749-
Linda Lowe...........................749-
Rachel Rosenbaum..............749-
Nicki Schedler......................749-

#### SPORTS
John Stevens.......................749-
Sports scores......................749-

#### PHOTOS
Chris Kaufman, Editor...........749-

#### NEWSROOM FAX
749-8390

#### NEWSROOM EMAIL
ADnewsroom@appealdemocrat.com

### CLASSIFIED ADVERTISING
749-6556
Accounts Receivable.............749-
Classified Fax.......................749-
adclass@appealdemocrat.com
adobits@appealdemocrat.com
allegals@appealdemocrat.com

### DISPLAY ADVERTISING

**Alexandra Ferreira da Silva**

**Case No.:** 2160266.421

Address: 1179 Eager Rd.,

Live Oak, California, 95953.

_____

Pro Se Petitioner


_____

ALEXANDRA FERREIRA DA SILVA;   |

Petitioner.   |

V   |   Report – March 29, 2020

JEFFERSON, B. SESSION III;   |

General, Respondent   |

_____|


1) *March 28, 2020 I was transferred from Yuba County Jail to Mesa Verde Detention Center (MVDC) in Bakersfield. In my booking process I had my classification changed from Blue to Orange (blue individual without criminal record, to orange low criminal records (+/- meaning)). I asked the facilities staff why it was changed and I was advised to wait until the next day and address the issue with the facilities case manager (Miss. Parker).*

2) *On March 29, 2020 I submitted a formal request refering the matter to the classification department. The information provided by them was: "The classification is based on documents provided by ICE."*

3) *Officer Vicente (Bakersfield Ice office |+/- name) was warned about the subject. His answer was: "Don't worry! You will not be seen by a judge". He departed without providing the reason for the change in my uniforms color; including what accusation was made against me.*

4) *After submitting several requests to the facilities staff, the case manager (Miss Parker) showed me a document containing an accusation of fraud. A written copy of said accusation was NEVER mentioned or provided to me. They also REFUSED to receive any formal/written document/requests for records/ documents on my behalf. They refused also to receive any formal request for records/documents on my behalf.*

5) *Enduring these difficulties (my rights taken away); To date, access to the legal evidences and documents have not been provided to me. Therefore, requests were made to my case officer (ICE officer/ Bakersfield), She said: "I know what you are talking about. Today I have been working out of my office, but I will see about it when I return to my office". Again, to date, nothing has been provided.*

*I wasn't warned about the accusation mentioned above; no document(s) were handed to me. MVDC not only deprived me from having access to my legal rights but also stated: "We have a contract with ICE, we will not provide any document(s) to you without prior approval from ICE."*

*I hereby request copies of mentioned documents, as soon as possible, so I will be able to provide my defense.*

*Note: attached evidences...*

*Respectful submitted on June 5ᵗʰ, 2020 by:*

**Alexandra Ferreira da Silva**

JUNE 25 2020

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/14/20 09:08
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** library/law library/ Lexis Nexus/ Kiosks

**Request Info**

**Status:** CLOSED by CHarvey
**Facility Deadline:** 04/17/20 23:59

**Summary of Request:**

Legal need

**Details of Request:**

**Question / Pregunta:**
Good morning
Dear Miss. Harvey
I know that you are a very busy woman, and you are here not only for me... I always had , and still have a lot respect for you... At this time, I really need your attention about my legal need. I would please like to ask once again, to scheduled a meet to address the issues that I need to address. I just received a letter from court yesterday that I must to provide a quickly answer... I appreciate your understand and attention... Have a nice day

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/15/20 08:27 | CHarvey | Staff Response | Hello Ms. Ferreira: I will try to see you sometime on Wednesday. |
| 04/15/20 08:27 | CHarvey | Changed Status | From 'Open' to 'Closed' |
| 04/14/20 09:08 | Alexandra Ferreira da silva | Submitted New | Legal need |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/14/20 09:14
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Property - Delivery Approval

**Request Info**

**Status:** CLOSED by SORNELAS
**Facility Deadline:** 04/17/20 23:59

**Summary of Request:**

Legal need

**Details of Request:**

**What is your request?:**
Good morning
Dear Sir, Madame
I know that you are not here only for me... I always had , and still have a lot respect for your hard work.. At this time, I really need your attention about my ligal need. I would please like to ask once again to scheduled a meet to address the issues that I need to address, about my credit card and have access to a legal document that I must to provide to immigration and Court. I just received a letter from court yesterday that I must to provide a quickly answer... Thank you so much ... Have a nice day

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/14/20 09:34 | SORNELAS | Staff Response | Be advised your request has been given to Intake officers they will contact you with an answer have a great day. |
| 04/14/20 09:34 | SORNELAS | Changed Status | From 'Open' to 'Closed' |
| 04/14/20 09:14 | Alexandra Ferreira da silva | Submitted New | Legal need |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 11:54
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Visitation

**Request Info**

**Status:** CLOSED **by** KBLAIR
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Duplicate message

**Details of Request:**

**What is your request?:**
I am sorry for that.... I send it , but it just showed the confirmation number one time... Because this it was sending it again, more then one time ... I apologize for the inconvenient

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 14:32 | KBLAIR | Staff Response | ok |
| 04/13/20 14:32 | KBLAIR | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 11:54 | Alexandra Ferreira da silva | Submitted New | Duplicate message |

**Request #087142353**

| Profile Photo: | Detainee Info |
|---|---|
|  | **Name:** Alexandra Ferreira da silva (1977-07-20)<br>**Booking Number:** 216266421<br>**Nationality:** PT<br>**Submitted Date:** 04/13/20 11:55<br>**Submitted from Location/Room:** BNA01/Dorm 2B<br>**Current Location/Room:** BNA01/Dorm 2B<br>**Facility:** Mesa Verde ICE Processing Center CA |

**Audit Photo:**

### Form Info

**Category:** GEO
**Form:** Chaplain / Religious Service

### Request Info

**Status:** CLOSED by CHarvey
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Duplicate msg

**Details of Request:**

**Question / Pregunta:**
I am sorry for that.... I send it , but it just showed the confirmation number one time... Because this it was sending it again, more then one time ... I apologize for the inconvenient

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 12:40 | CHarvey | Staff Response | Hello, again, Ms. Ferreira: Just be more careful when clicking on the buttons on the tablet. We will take care of the requests that we can as soon as possible. Just remember, we have to follow ICE regulations when it comes to giving out various documents. |
| 04/13/20 12:40 | CHarvey | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 11:55 | Alexandra Ferreira da silva | Submitted New | Duplicate msg |

**Profile Photo:** 

**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 09:21
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Phone Service

**Request Info**

**Status:** CLOSED by KBLAIR
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Records request

**Details of Request:**

**What is your request?:**
I am representing myself, and as pro se, I would to request my records, any police report, incident report, or any document which contain my name... I appreciate your attention and respect about this matter... Thank you

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 15:00 | KBLAIR | Staff Response | The Case Manager and Programs Director have responded to your request. These are duplicates and will be closed unanswered. |
| 04/13/20 15:00 | KBLAIR | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 09:21 | Alexandra Ferreira da silva | Submitted New | Records request |

**Request #087121133**

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 09:20
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Security Issues

**Request Info**

**Status:** CLOSED by KBLAIR
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Records request

**Details of Request:**

**What is your request?:**
I am representing myself, and as pro se, I would to request my records, any police report, incident report, or any document which contain my name... I appreciate your attention and respect about this matter... Thank you

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 15:00 | KBLAIR | Staff Response | The Case Manager and Programs Director have responded to your request. These are duplicates and will be closed unanswered. |
| 04/13/20 15:00 | KBLAIR | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 09:20 | Alexandra Ferreira da silva | Submitted New | Records request |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

Name: Alexandra Ferreira da silva (1977-07-20)
Booking Number: 216266421
Nationality: PT
Submitted Date: 04/13/20 09:20
Submitted from Location/Room: BNA01/Dorm 2B
Current Location/Room: BNA01/Dorm 2B
Facility: Mesa Verde ICE Processing Center CA

**Form Info**

Category: GEO
Form: Visitation

**Request Info**

Status: CLOSED by KBLAIR
Facility Deadline: 04/16/20 23:59

**Summary of Request:**

Records request

**Details of Request:**

**What is your request?:**
I am representing myself, and as pro se, I would to request my records, any police report, incident report, or any document which contain my name... I appreciate your attention and respect about this matter... Thank you

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 14:59 | KBLAIR | Staff Response | The Case Manager and Programs Director have responded to your request. These are duplicates and will be closed unanswered. |
| 04/13/20 14:59 | KBLAIR | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 09:20 | Alexandra Ferreira da silva | Submitted New | Records request |

**Request #087118603**

---

**Profile Photo:**

**Audit Photo:**

**Detainee Info**

Name: Alexandra Ferreira da silva (1977-07-20)
Booking Number: 216266421
Nationality: PT
Submitted Date: 04/13/20 09:02
Submitted from Location/Room: BNA01/Dorm 2B
Current Location/Room: BNA01/Dorm 2B
Facility: Mesa Verde ICE Processing Center CA

**Form Info**

Category: GEO
Form: Classification/ Work Request

**Request Info**

Status: CLOSED by TPARKER
Facility Deadline: 04/16/20 23:59

**Summary of Request:**

Classification records issues

**Details of Request:**

Question / Pregunta:
Dear sir., Madame
Good morning
After speak with Miss. Parker (classification employee) this morning, was told by her that "the facility" is deprived of provide my classification records. And the facility have not athorizatio to give this document to me, only ICE can provides it... For this reason, and others facts that concerns me at this time, I would like to address this, and other issues, with the classication record's supervisor.. Can you please, meet me as soon as possible? Please it is a urgent matter... I really appreciate your attention about this subject... Receives me sincere wishes of a great week..

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 10:26 | TPARKER | Staff Response | This morning, Case Manager Parker explained to you in detail that all immigration forms must be request from an ICE agent/ staff member. Mesa Verde will not provide you with documents regarding your criminal history, etc. For safety reasons the form should not be in the housing unit. Case Manager Parker allowed you to see the form regarding your classification. Thank you. |
| 04/13/20 10:26 | TPARKER | Changed Status | From 'New' to 'Closed' |
| 04/13/20 09:02 | Alexandra Ferreira da silva | Submitted New | Classification records issues |

**Request #087228751**

| | |
|---|---|
| **Profile Photo:**  **Audit Photo:** | **Detainee Info** |

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/14/20 09:08
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** library/law library/ Lexis Nexus/ Kiosks

**Request Info**

**Status:** CLOSED by CHarvey
**Facility Deadline:** 04/17/20 23:59

**Summary of Request:**

Legal need

**Details of Request:**

**Question / Pregunta:**
Good morning
Dear Miss. Harvey
I know that you are a very busy woman, and you are here not only for me... I always had , and still have a lot respect for you... At this time, I really need your attention about my legal need. I would please like to ask once again, to scheduled a meet to address the issues that I need to address. I just received a letter from court yesterday that I must to provide a quickly answer... I appreciate your understand and attention... Have a nice day

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/15/20 08:27 | CHarvey | Staff Response | Hello Ms. Ferreira: I will try to see you sometime on Wednesday. |
| 04/15/20 08:27 | CHarvey | Changed Status | From 'Open' to 'Closed' |
| 04/14/20 09:08 | Alexandra Ferreira da silva | Submitted New | Legal need |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/20/20 10:42
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** library/law library/ Lexis Nexus/ Kiosks

**Request Info**

**Status:** CLOSED by CHarvey
**Facility Deadline:** 04/23/20 23:59

**Summary of Request:**

Notice and request

**Details of Request:**

**Question / Pregunta:**
Dear Miss Harvey
Good morning
I hope so you has a great weekend and a amazing start on this new week... I would please like to have from you my copy of the notice handed to you last Friday (07/17/2020) and the petition for records ... I will need it. Thank so much

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/21/20 16:09 | CHarvey | Staff Response | Hello Ms. Ferreira: I do have your forms and will try to see you some time on Wednesday or Thursday. However, please remember that all documents at Mesa Verde technically belong to ICE. The GEO staff is simply fulfilling a contract with ICE, and it is up to ICE to determine which documents you may or may not have. That's why I told you on Friday you need to check with ICE for authorization to receive any documents. See you soon. Have a good evening. |
| 04/21/20 16:09 | CHarvey | Changed Status | From 'Open' to 'Closed' |
| 04/20/20 10:42 | Alexandra Ferreira da silva | Submitted New | Notice and request |

**Profile Photo:** 

**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 09:20
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Security Issues

**Request Info**

**Status:** CLOSED by KBLAIR
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Records request

**Details of Request:**

**What is your request?:**
I am representing myself, and as pro se, I would to request my records, any police report, incident report, or any document which contain my name... I appreciate your attention and respect about this matter... Thank you

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 15:00 | KBLAIR | Staff Response | The Case Manager and Programs Director have responded to your request. These are duplicates and will be closed unanswered. |
| 04/13/20 15:00 | KBLAIR | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 09:20 | Alexandra Ferreira da silva | Submitted New | Records request |

**Profile Photo:** 

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 11:55
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Audit Photo:**

**Form Info**

**Category:** GEO
**Form:** Chaplain / Religious Service

**Request Info**

**Status:** CLOSED by CHarvey
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Duplicate msg

**Details of Request:**

**Question / Pregunta:**
I am sorry for that.... I send it , but it just showed the confirmation number one time... Because this it was sending it again, more then one time ... I apologize for the inconvenient

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 12:40 | CHarvey | Staff Response | Hello, again, Ms. Ferreira: Just be more careful when clicking on the buttons on the tablet. We will take care of the requests that we can as soon as possible. Just remember, we have to follow ICE regulations when it comes to giving out various documents. |
| 04/13/20 12:40 | CHarvey | Changed Status | From 'Open' to 'Closed' |
| 04/13/20 11:55 | Alexandra Ferreira da silva | Submitted New | Duplicate msg |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/24/20 17:20
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Mailroom

**Request Info**

**Status:** CLOSED by Crystal Garcia
**Facility Deadline:** 04/29/20 23:59

**Summary of Request:**

Legal mail

**Details of Request:**

**Question / Pregunta:**
Good morning
Miss, please... Sent my legal mail. I have no money... I have it ready to send at the dorm. .. Have a amazing weekend
Ferreira

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/27/20 09:36 | Crystal Garcia | Staff Response | 5 MLV= $10.20 INDIGENT 04/27/2020 |
| 04/27/20 09:36 | Crystal Garcia | Changed Status | From 'Open' to 'Closed' |
| 04/24/20 17:20 | Alexandra Ferreira da silva | Submitted New | Legal mail |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/24/20 17:08
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Classification/ Work Request

**Request Info**

**Status:** CLOSED by TPARKER
**Facility Deadline:** 04/29/20 23:59

**Summary of Request:**

Reclassification

**Details of Request:**

**Question / Pregunta:**
Good afternoon
Dear sir, Madame
After speak with my ice officer, was told that my classification was changed by Mesa Verde no ICE. So, I would like to request for a
reclassification or evidences about why I still with orange clothes..
Thank you so much for your attention.
Receive my sincere wishes of a safety and blessed life

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/24/20 17:40 | TPARKER | Staff Response | The staff at Mesa Verde ICE Process Center utilizes the Record of Deportable/Inadmissible Alien form presented by Immigration Customs and Enforcement to determine your classification by following the Performance Base National Detainee Standards. To my knowledge, you were able to view this form with your case manager. Thank you. |
| 04/24/20 17:40 | TPARKER | Changed Status | From 'Open' to 'Closed' |
| 04/24/20 17:08 | Alexandra Ferreira da silva | Submitted New | Reclassification |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/13/20 09:02
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Classification/ Work Request

**Request Info**

**Status:** CLOSED by TPARKER
**Facility Deadline:** 04/16/20 23:59

**Summary of Request:**

Classification records issues

**Details of Request:**

**Question / Pregunta:**
Dear sir., Madame
Good morning
After speak with Miss. Parker (classification employee) this morning, was told by her that "the facility" is deprived of provide my classification records. And the facility have not athorizatio to give this document to me, only ICE can provides it... For this reason, and others facts that concerns me at this time, I would like to address this, and other issues, with the classication record's supervisor.. Can you please, meet me as soon as possible? Please it is a urgent matter... I really appreciate your attention about this subject... Receives me sincere wishes of a great week..

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/13/20 10:26 | TPARKER | Staff Response | This morning, Case Manager Parker explained to you in detail that all immigration forms must be request from an ICE agent/ staff member. Mesa Verde will not provide you with documents regarding your criminal history, etc. For safety reasons the form should not be in the housing unit. Case Manager Parker allowed you to see the form regarding your classification. Thank you. |
| 04/13/20 10:26 | TPARKER | Changed Status | From 'New' to 'Closed' |
| 04/13/20 09:02 | Alexandra Ferreira da silva | Submitted New | Classification records issues |

**Profile Photo:**



**Audit Photo:**

**Detainee Info**

**Name:** Alexandra Ferreira da silva (1977-07-20)
**Booking Number:** 216266421
**Nationality:** PT
**Submitted Date:** 04/24/20 17:08
**Submitted from Location/Room:** BNA01/Dorm 2B
**Current Location/Room:** BNA01/Dorm 2B
**Facility:** Mesa Verde ICE Processing Center CA

**Form Info**

**Category:** GEO
**Form:** Classification/ Work Request

**Request Info**

**Status:** CLOSED by TPARKER
**Facility Deadline:** 04/29/20 23:59

**Summary of Request:**

Reclassification

**Details of Request:**

**Question / Pregunta:**
Good afternoon
Dear sir, Madame
After speak with my ice officer, was told that my classification was changed by Mesa Verde no ICE. So, I would like to request for a reclassification or evidences about why I still with orange clothes..
Thank you so much for your attention.
Receive my sincere wishes of a safety and blessed life

| DATE/TIME | USER | ACTION | DETAILS |
|---|---|---|---|
| 04/24/20 17:40 | TPARKER | Staff Response | The staff at Mesa Verde ICE Process Center utilizes the Record of Deportable/Inadmissible Alien form presented by Immigration Customs and Enforcement to determine your classification by following the Performance Base National Detainee Standards. To my knowledge, you were able to view this form with your case manager. Thank you. |
| 04/24/20 17:40 | TPARKER | Changed Status | From 'Open' to 'Closed' |
| 04/24/20 17:08 | Alexandra Ferreira da silva | Submitted New | Reclassification |



JUNE 25, 2020

# International Student Services

## Change of Status

Close Menu

**Immigration Record Updates**

Change of Address

Change of Funding

**Change of Status**

Name Change

Permanent Resident Approval: Notify ISS

Regaining F-1 Status

Temporary Online Travel Signatures

## Overview

When you enter the United States in nonimmigrant status, you do so for a specific purpose, such as study, work, or travel. You may enter the U.S. with one purpose and later change your purpose. When this happens, you may need to obtain a new status. Different visa/status categories allow different activities.

**Schedule an appointment with your International Student Services (ISS) adviser as soon as you know you must obtain a new status. Use the Virtual Front Desk or submit a request via the Contact ISS form. The process can be challenging, and we want to discuss your options with you.**

**ISS advisers are not immigration attorneys. We strongly advise you to consult an immigration attorney about your plans to apply to obtain F-1 status.**

## Gaining a New Nonimmigrant Status

There are two ways of gaining a new nonimmigrant status:

# Option 1: Travel and Reentry

Leave the U.S., apply for a new visa at a U.S. consulate, and reenter the U.S. with the new visa and other relevant documents. You will gain your new status when you are admitted into the U.S.

## Advantages

- This process is usually faster than changing status in the U.S.
- You will obtain the visa *and* the status

## Disadvantages

- Possibility of visa processing delay
- Expense of travel

For information about visas, including how to apply, review the <u>Visas page</u>.

# Option 2: Change Status in the U.S.

Submit an application to the U.S. Citizenship and Immigration Services (USCIS) for a change of status. Fees and instructions are on the <u>USCIS I-539, Application To Change Nonimmigrant Status webpage.</u>

This option allows you to change your nonimmigrant status while remaining in the U.S. With this option you may gain the new status but you will not receive a new visa; visas are only issued outside the U.S.

## Advantages

- Ability to stay in the U.S. during processing
- Avoid the hassle of a visa application process (for now)

## Disadvantages

- Processing can be very slow (six to nine months, and as long as one year), which may jeopardize your ability to begin your new activity, such as studying or accepting a research or teaching assistantship or other campus employment.
- You must stay in the U.S. during processing; exiting the U.S. cancels the application
- You must still obtain a visa stamp to match your status the next time you travel outside the U.S. (except for trips under 30 days to Canada or Mexico)
- The application might be denied, which could require you to quickly depart the U.S.

**When deciding which option is best for you, you should consider various factors:**

- Upcoming travel plans
- Application processing times
- The expiration date or special conditions of your current status.

The regulations of your future status will help determine if it is best to travel and reenter or apply to change status in the U.S. The following general information explains the process for applying to change nonimmigrant status in the U.S.

## Eligibility

**You may be able to change status if:**

- You are maintaining your current status.
- You are eligible for the new status.
- Your current status does not prohibit change of status in the U.S. The restrictions are listed below.

**You generally cannot change status if:**

- Your period of authorized stay has already expired.
- You have otherwise violated the conditions of your current status.

## Restrictions

- Individuals in J status who are subject to the two-year home-country residence requirement can change only to A or G status.
- Persons admitted under the Visa Waiver Program (marked "W/T" or "W/B" on the I-94) cannot change nonimmigrant status.
- Persons who hold C, D, or K status cannot change nonimmigrant status.
- A vocational student in M status cannot change to F status.

# Instructions to Obtain F-1 Status

1. Review your options for obtaining F-1 status (described above).
2. Schedule an appointment with an International Student Services (ISS) adviser to discuss your plans to obtain F-1 status. Use the Virtual Front Desk or submit a request via the Contact ISS form.
3. We strongly encourage you to also consult an immigration attorney to discuss the best option for you to obtain F-1 status.

4. Obtain an I-20 from UW.

If you are **newly admitted** to UW, request your I-20 from the Admissions office.

If you are **currently** already studying at the UW and wish to obtain F-1 status, submit the online I-20 request to ISS. You will be asked to upload a copy of your passport biographical page and financial documentation.

**REQUEST I-20 FOR F-1 STATUS**

5. Allow one month for ISS processing. You will receive an email from ISS when your I-20 is ready for pick

6. Follow the instructions from ISS and/or your immigration attorney to use the I-20 to obtain F-1 status (either through "Travel & Reentry" or a "Change of Status Application to USCIS."

7. **Notify ISS of Updates to your Status:**

**Students Who Travel, Apply for the F-1 Visa, and Reenter:**

After you reenter the U.S. in F-1 status, upload scans of your F-1 documents to the ISS website so we can activate your F-1 SEVIS record.

**Students Who Submit a Change of Status Application to USCIS:**

  a. Provide a copy of your USCIS Receipt Notice to ISS through our document upload webform.

  b. Provide a copy of any USCIS correspondence, such as an RFE (Request for Evidence) through our document upload webform.

  c. If your application is still pending after the I-20 program start date,  ISS must issue you a new I-20 with a deferred program start date. The I-20 information corresponds to your electronic F-1 SEVIS record. When an F-1 SEVIS record is first created, the electronic record is in "initial" status. The SEVIS database is designed so that an electronic F-1 record will automatically terminate if the record is not "activated" or "deferred" by a certain deadline within the quarter. ISS cannot "activate" the F-1 SEVIS record until USCIS approves your F-1 status application. Consequently, ISS must "defer" the F-1 SEVIS record program start date to the next available quarter in order to preserve the "initial" electronic F-1 SEVIS record and not jeopardize the pending change of status application. ISS will issue a new I-20 with the deferred program start date; you must submit the new I-20 to USCIS with a copy of your USCIS receipt notice.

  d. Provide a copy of your USCIS I-797 Approval Notice through our document upload webform.

# Other Change of Status Considerations

### Leaving the U.S. with Change of Status Application Pending

- Any student considering traveling outside of the U.S. when their Change of Status Application is pending should plan to withdraw their application from USCIS and apply for a new visa prior to returning to the U.S.

### USCIS Changed Bridge Application Requirement

- In July 2021, USCIS announced that students no longer need to file an application to bridge the gap between their F-1 status and their previous status.

### Immigration Record Updates

Change of Address

Change of Funding

**Change of Status**

Name Change

Permanent Resident Approval: Notify ISS

Regaining F-1 Status

Temporary Online Travel Signatures

**In-Person Front Desk**
Schmitz Hall 459
Mon-Thurs: 1 PM - 4PM

**ISS Virtual Front Desk Hours**
Mon-Friday: 9 am - 11 am
Friday: 2 pm - 4 pm

**INFO & ZOOM LINK**

# ISS News Blogroll ⏱

**ISS Services Autumn Quarter 2021**
1 week ago

**University District Community Art & Vaccine Pop-Up**
1 week ago

**Immigration Check-In Support Sessions**
2 weeks ago

More

## CONTACT ISS

**CONTACT ISS FORM**

## SEARCH ISS

Search for:

## OFFICE HOURS & CLOSURES

**Schmitz Hall is open 10:00 AM to 4:00 PM, Monday-Friday.**

**Location:** Schmitz 459

206-221-7857

**Autumn Quarter Closures**

**Nov 11, 2021** U.S. Holiday

**Nov 25-26, 2021** U.S. Holiday

**Dec 24, 2021** U.S. Holiday

**Dec 31, 2021** U.S. Holiday

____ Medico record/Yuba CO. Jail

1- Facts to notice
   a) Another confirmation that I was booking out on March 26, 2020
   b) As shows Inmate requests att. There is information about the inmate that harassed me and assaulted me
   c) There is the information about me been dehydrated
   d) The many times that I tried to kill myself for been hopeless, in a situation where I just had God
   e) The Nurse, without send me to do any exam, report that I have no injuries after the incident
   f) My issues with food allergies
   g) Etc..
      Ampla Health
2- Ampla health evaluation and difficulties to have access to health care
3- Physical therapy Examination report

6/7/2021                    CorEMR - FERREIRA DA SILVA, ALEXANDRA - #180252039 (07-20-1977) :: Full Patient History | v5.5.0

| 180252039 | Suicide Watch Initial Assessment for MH | History of substance abuse problems? | No | Bruno, Susan | 03-18-2019 9:03 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | History of mental health treatment or counseling, or diagnosis? If yes, Describe: | Yes (PTSD and Depression ) | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | History of debilitating medical illness, chronic pain or terminal illness? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Caucasian/White ethnicity? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Male | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Prior chart suggests suicide risk? (Note: Clinicians MUST check inmate chart and other relevant records for prior suicide attempts, prior risk assessments, prior placement on suicide watch). | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | In the last month, have you wished you were dead, could go to sleep and not wake up, or had thoughts of killing yourself? If yes, describe: | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | If yes, did you have some intent on acting on the thoughts? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | If yes, did you start to work out the details of how to kill yourself? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | In the last month have you attempted suicide? If yes, describe: | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Currently is feeling: | depressed | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Currently is feeling: | sad | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Currently displaying symptoms of: | none of the above | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Current or recent intoxication or withdrawal from drugs, pills, and/or alcohol? If yes, describe: | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Current charges are serious (murder, rape, child molestation, etc. or expect a long sentence)? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | First arrest? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Multiple charges? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Current/recent negative interactions or communication with friends or family and/or lack of support/visits, received bad news? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Current or recent death of loved one, loss of relationship/job/income/housing? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Inmate is in a single cell placement, segregated housing? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Problems in the jail, safety concerns in jail, or negative staff interactions? | No | Bruno, Susan | 03-18-2019 9:03 am |

| 180252039 | Suicide Watch Initial Assessment for MH | Current family support? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Friends or family to go back to? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Good social network or social support system? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | A place to live or home to go back to? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Children at home? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | On good terms with significant other and/or have spousal support? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Currently has financial resources? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Employed? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Student? | No | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Church or has strong spiritual, cultural, religious faith/beliefs? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Physically takes care of self (i.e., exercise regularly, eats healthy, etc.)? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Good coping and problem solving skills? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Good insight into problems? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Has future orientation and plans? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Optimistic about the future? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Shows confidence in oneself? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Housed with a cellmate or open group setting (i.e., not isolated)? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Compliant and motivated in mental health assessment and possible treatment? | Yes | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Subjective: | Met with patient cellside with officer Connely standing by. Patient has fair grooming and hygiene, fair eye contact, soft voice, denies SI and HI when assessed for lethality. | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Objective: | Contracts to safety with MH staff, No longer a danger to self. | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Assessment: | non lethal | Bruno, Susan | 03-18-2019 9:03 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Plan: | Cleared from stepdown, cleared for custody to house | Bruno, Susan | 03-18-2019 9:03 am |

| | | | | | |
|---|---|---|---|---|---|
| | | Neck nodes, Inguinal nodes, Ax nodes | | Maria | 2019 2:05 pm |
| 180252039 | Physical Exam - CMG | SKIN - General condition, Injury, Lesions, Color, Temperature, Turgor | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | CARDIOVASCULAR - Pulses: Apical/Radial/Extremity, Capillary fill, Heart sounds | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | CHEST/RESPIRATORY - Percussion, Auscultation, Pulse ox, Rate/character of respirations, Shape/symmetry, breast exam | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | ABDOMEN - Bowel sounds, Contour, Distension, Hernia, Masses, Liver, Spleen | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | GENITAL/URINARY - Pelvic/Pap, Rectal exam/PSA men >50, Masses, Lesions, Rash, Discharge | NA | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | MUSCULOSKELETAL - Gait/Stance/Posture, Edema/Swelling, Deformity, Joints, ROM, Muscle tone/Strength, Extremity symmetry | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | NEURO - Verbal Response, Motor Response, Sensory Response, Gait, Grip | normal | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Inmate Job Restrictions: | No | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Medical Equipment or Special Housing Considerations: | No | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Have you had recent or regular contact with your family? | Yes (Last spoke with family a month ago) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Are you a victim of domestic, physical or sexual Abuse? | Yes | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Have you had assault charges/domestic violence charges brought against you? | No | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Do you have a history of sex offenses? | Yes | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Smoking History | None (Tried smoking at age 16) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Any history of substance abuse? | Denies drug use Tried ETOH twice as a teenager | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | What is the total time you have spent in jail? | 1 year | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | In the past year mark the areas of loss you have experienced. | Other: (IRS) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Previous mental health treatment? (If yes, where did you receive treatment?) | Yes (- Few visits with psychologist in Portugal - Seen at Mesa Verde) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Do you have a mental health diagnosis? (If so describe) | Anxiety (- Major Depressive D/O - PTSD) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Do you have a mental health diagnosis? (If so describe) | Depression (- Major Depressive D/O - PTSD) | Malasan, Maria | 10-01-2019 2:05 pm |
| 180252039 | Physical Exam - CMG | Do you have a mental health diagnosis? (If so describe) | OTHER (describe) (- Major Depressive D/O - PTSD) | Malasan, Maria | 10-01-2019 2:05 pm |

| 180252039 | Assessment/Discharge for MH | wished you could go to sleep and not wake up? | | Susan | 2019 3:01 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you actually had any thoughts of killing yourself? | Yes | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you been thinking about how you might kill yourself? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you had these thoughts and had some intention of acting on them? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you started to work out or worked out the details of how to kill yourself? Do you intend to carry out this plan? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you ever done anything, started to do anything, or prepared to do anything to end your life? Examples: Collected pills, obtained a gun, gave away valuables, wrote a will or suicide note, took out pills but didn't swallow any, held a gun but changed your mind or it was grabbed from your hand, went to the roof but didn't jump; or actually took pills, tried to shoot yourself, cut yourself, tried to hang yourself, etc. | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | If YES, ask: How long ago did you do any of these? | Within the last three months | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Select and complete one of the following: | Identify Rationale for Discontinuing Watch: (no longer SI and no longer a danger to self ) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | (check all that apply) | Discharge from watch*, follow up in accordance with policy or sooner as clinically indicated. (f/u with MH next day to follow safety protocol) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | (check all that apply) | Property allowed (f/u with MH next day to follow safety protocol) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Clothing: | Regular uniform | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Food: | Regular tray | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Other: | Book | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Other: | Glasses | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Other: | Hygiene items (Specify): | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Consultation: | Not Indicated | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Refer to: | Other (Specify): (f/u with MH next day appt to follow safety protocol ) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Recommended Placement: | Appropriate for General Population | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Columbia Suicide Severity Rating Scale Completed *Columbia Suicide Severity Rating Scale required if downgrading or discontinuing watch | Yes | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge | Qualified Mental Health Professional | Susan Bruno, LMFT :::10/20/2019 1501 | Bruno, Susan | 10-20-2019 |

| | | | none reported. Provided active listening. Completed Columbia Scale. | | |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Appearance | Appropriate | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Speech | Appropriate | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Depressed (remains depressed and angry but no longer suicidal and no longer a danger to self ) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Affect | Appropriate | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Form | Coherent | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Content | Appropriate | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Person | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Place | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Time | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Situation | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Intelligence | Above Average | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Memory | Intact | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Insight | Good | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Judgement | Good | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behavior | Withdrawn (remains withdrawn but no longer a danger to self and denies SI and HI at this time) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Medication Compliant? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Suicidal Ideations? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Homicidal Ideations? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Medications: | see MAR | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Estimated current self-harm/suicide risk level | Low | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Has patient engaged in self-harm since last assessment? | No | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily | Have you wished you were dead or | Yes | Bruno, | 10-20- |

| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | If YES, ask: How long ago did you do any of these? | Within the last three months | Bruno, Susan | 10-20-2019 9:30 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Select and complete one of the following: | Identify Rationale for Downgrading Watch: (patient denies SI at this time but remains a danger to self due to marked impulsivity displayed and poor judgment and wrote a suicide note last night and told MH staff she wanted to harm herself and she had a plan but would not disclose plan ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Additional Information | patient is sobbing | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | (check all that apply) | Change level of watch* to (Specify): (patient moved from SAFETY CELL to STEPDOWN ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Clothing: | Safety blanket | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Clothing: | Safety smock | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Food: | Other (Specify): (soft tray ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Consultation: | Not indicated | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Refer to: | Other (Specify): (f/u with MH within 12 hours ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Recommended Placement: | Other (Specify): (placed in STEPDOWN at this time 0905) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Columbia Suicide Severity Rating Scale Completed *Columbia Suicide Severity Rating Scale required if downgrading or discontinuing watch | Yes | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Qualified Mental Health Professional | Susan Bruno, LMFT :::10/20/2019 0930 | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Gender: | Female | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Visit: | Discharge | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Watch and Frequency | Staggered 15 minutes | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Date placed on watch: | 10/19/2019 | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Number of Days on Watch | placed on stepdown on 10-20-19 | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Time placed on Watch | 0905 placed on STEPDOWN on 10-20-19 | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Reason for Watch | Plan (SI with a plan and a suicide note ) | Bruno, Susan | 10-20-2019 3:01 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Interventions during session: | Validated thoughts and feelings. Provided support and empathy. Assessed for lethality, | Bruno, Susan | 10-20-2019 3:01 pm |

| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | | | Susan | 2019 9:30 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Situation | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Intelligence | Above Average | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Memory | Intact | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Insight | Fair | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Judgement | Poor | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behavior | Withdrawn (sobbing and very angry at staff states "you're torturing me" ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Medication Compliant? | No | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Suicidal Ideations? | Refuses answer | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Homicidal Ideations? | Refuses answer | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Estimated current self-harm/suicide risk level | Intermediate | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Has patient engaged in self-harm since last assessment? | No | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behaviors of Concern: | SI with a plan and wrote a suicide note last night, currently very depressed and angry and sobbing, displays marked impulsivity and poor judgement | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | [blank] | Check here if patient refuses to answer | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you wished you were dead or wished you could go to sleep and not wake up? | Yes | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you actually had any thoughts of killing yourself? | Yes | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you been thinking about how you might kill yourself? | No | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you had these thoughts and had some intention of acting on them? | No | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you started to work out or worked out the details of how to kill yourself? Do you intend to carry out this plan? | No | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you ever done anything, started to do anything, or prepared to do anything to end your life? Examples: Collected pills, obtained a gun, gave away valuables, wrote a will or suicide note, took out pills but didn't swallow any, held a gun but changed your mind or it was grabbed from your hand, went to the roof but didn't jump; or actually took pills, tried to shoot yourself, cut yourself, tried to hang yourself, etc. | No | Bruno, Susan | 10-20-2019 9:30 am |

| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Columbia Suicide Severity Rating Scale Completed *Columbia Suicide Severity Rating Scale required if downgrading or discontinuing watch | Yes | Bruno, Susan | 10-20-2019 7:28 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Qualified Mental Health Professional | Susan Bruno, LMFT :::10/20/2019 0728 | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Gender: | Female | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Visit: | Daily Follow Up | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Watch and Frequency | Staggered 15 minutes | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Date placed on watch: | 10/20/2019 | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Number of Days on Watch | placed on SW last night 10-19-19 @ 1600 and placed in STEPDOWN 10-2-19 @ 0905 | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Time placed on Watch | 0905 placed in STEPDOWN | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Reason for Watch | Other (Describe): (marked impulsivity and poor judgment recently displayed, current presentation is sobbing, was SI with a plan last night ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Interventions during session: | Validated thoughts and feelings. Provided support and empathy. Provided active listening and validated thoughts and feelings. Assessed for lethality. | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Appearance | Appropriate | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Speech | Appropriate | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Depressed | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Angry | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Affect | Tearful (sobbing ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Form | Coherent | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Content | Appropriate (last night SI with a plan and wrote a suicide note and threatened to harm self if her housing was not changed ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Content | Suicidal (last night SI with a plan and wrote a suicide note and threatened to harm self if her housing was not changed ) | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Person | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Place | Bruno, Susan | 10-20-2019 9:30 am |
| 180252039 | Suicide Watch Daily | Oriented to | Time | Bruno, | 10-20- |

| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Situation | Bruno, Susan | 10-20-2019 7:28 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Intelligence | Above Average | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Memory | Intact | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Insight | Fair | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Judgement | Poor | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behavior | Withdrawn | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Medication Compliant? | No | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Suicidal Ideations? | Refuses answer | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Homicidal Ideations? | Refuses answer | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Estimated current self-harm/suicide risk level | High | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Has patient engaged in self-harm since last assessment? | No | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behaviors of Concern: | patient is uncooperative and will not speak with MH, she stated last night at 1600 on 10-19-19 "I will harm myself I have a plan" and wrote a suicide note to Sgt. and handed it to MH staff | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | [blank] | Check here if patient refuses to answer | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Select and complete one of the following: | Identify Reason Patient to Remain on Watch (including recent stressors, active ideation and/or plan): (patient unwilling to speak with MH and was suicidal last night with a plan and a suicide note ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | (check all that apply) | Continue current suicide watch and follow up daily | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Clothing: | Safety blanket | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Clothing: | Safety smock | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Food: | Other (Specify): (soft tray ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Consultation: | Not indicated | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Refer to: | Other (Specify): (f/u with MH in a few hours ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Recommended Placement: | Other (Specify): (continue SAFETY WATCH ) | Bruno, Susan | 10-20-2019 7:28 am |

| 180252039 | Suicide Watch Initial Assessment for MH | Other: | Other (Specify): | Bruno, Susan | 10-19-2019 4:33 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Refer to: | Other (Specify): (f/u with MH within 12 hours and place on psychiatrist's soonest available apt ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Recommended Placement: | Other (Specify): (on SAFETY WATCH ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Qualified Mental Health Professional | Susan Bruno, LMFT :::10/19/2019 1633 | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Gender: | Female | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Visit: | Daily Follow Up | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Watch and Frequency | Staggered 15 minutes | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Date placed on watch: | 10/19/2019 | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Number of Days on Watch | 10-19-19 @ 1600 placed | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Time placed on Watch | 1600 | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Reason for Watch | Plan (SI with a plan had a suicide note written ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Interventions during session: | pt uncooperative and only will state "you know what I want" and "you are torturing me" | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Appearance | Appropriate | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Speech | Other (Describe): (will not speak with MH only states she is being tortured and states "you know what I want" referring to her desire to change housing ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Depressed | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Affect | Flat | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Form | Coherent | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Content | Suicidal (pt will not speak to MH ) | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Person | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Place | Bruno, Susan | 10-20-2019 7:28 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Oriented to | Time | Bruno, Susan | 10-20-2019 7:28 am |

| 180252039 | Suicide Watch Initial Assessment for MH | Oriented to | Time | Bruno, Susan | 10-19-2019 4:33 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Oriented to | Situation | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Intelligence | Above Average | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Memory | Intact | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Insight | Fair | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Judgement | Poor | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Behavior | Impulsive | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Medication Compliant? | N/A | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Suicidal Ideations? | Yes | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Homicidal Ideations? | No | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Medications: | see MAR | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Estimated current self-harm/suicide risk level: | High | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Date of last self-harm incident: | wrote a suicide note and told MH therapist she was going to take her life and had a plan | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Behaviors of Concern: | patient has SI with a plan | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | (check all that apply) | Eliminate self-harm/self-harm statements | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Hopelessness, feelings of guilt or worthlessness (cell was moved and patient demands she get a new cell ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Impulsive (cell was moved and patient demands she get a new cell ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Other (Describe): (cell was moved and patient demands she get a new cell ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | (check all that apply) | Continue current suicide watch and follow up daily | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Clothing: | Safety blanket | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Clothing: | Safety smock | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Food: | Other (Specify): (soft tray ) | Bruno, Susan | 10-19-2019 4:33 pm |

| | | | | Maria | 2019 2:05 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Gender: | Female | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | [blank] | Check here if patient refuses to answer | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Type of Watch and Frequency | Staggered 15 minutes | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Date placed on watch: | 10/19/2019 | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Number of Days on Watch | placed @ 1600 on 10-19-19 | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Time placed on Watch | 1600 | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Reason for Watch | Plan (SI with a plan ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Placed on watch by | Mental Health (notified medical Brittany and consulted with Sgt. Vandee ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Events Leading to Suicide/Self-Harm Watch (include patient's report as well as the official records of the event) | patient is crying and had a note that she wrote stating she was thinking of taking her life and she reported this was true to MH and that she had a plan but when asked about the plan she stated "I refuse to answer that." | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Appearance | Appropriate | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Speech | Other (Describe): (tearful ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Depressed (demand she speak to Sgt about moving cells and tells MH she won't ever speak to her again if she gets put on SAFETY WATCH ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Anxious (demand she speak to Sgt about moving cells and tells MH she won't ever speak to her again if she gets put on SAFETY WATCH ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Angry (demand she speak to Sgt about moving cells and tells MH she won't ever speak to her again if she gets put on SAFETY WATCH ) | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Affect | Tearful | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Thought Form | Coherent | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Thought Content | Appropriate | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Oriented to | Person | Bruno, Susan | 10-19-2019 4:33 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Oriented to | Place | Bruno, Susan | 10-19-2019 4:33 pm |

| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | | | Christina | 2020 10:22 am |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Intelligence | Average | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Memory | Intact | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Insight | Fair | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Judgement | Fair | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behavior | Agitated | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behavior | Impulsive | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Medication Compliant? | No | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Suicidal Ideations? | Refuses answer | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Homicidal Ideations? | Refuses answer | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Current Medications: | stopped medications. Follow up with psychiatrist today | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Estimated current self-harm/suicide risk level | High | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Has patient engaged in self-harm since last assessment? | No | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Behaviors of Concern: | Refuses to answer questions. Pt wants to dictate based on housing | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | [blank] | Check here if patient refuses to answer | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Have you wished you were dead or wished you could go to sleep and not wake up? | No | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Additional Information | Pt would only respond to first quick after asked multiple times. Pt would not give clear answer on others | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | (check all that apply) | Continue current suicide watch and follow up daily | Boets, Christina | 03-26-2020 |

| 180252039 | Suicide Watch Initial Assessment for MH | Consultation: | Consultation with (Specify): (Sgt Cordray and Sgt Little) | Woods, Dustina | 03-25-2020 7:36 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Refer to: | Psychiatry (f/u with Dr. Boora 3/26/20) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Recommended Placement: | Other (Specify): (STEPDOWN) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Qualified Mental Health Professional | DUSTINA WOODS, LCSW:::03/25/2020 1936 | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Gender: | Female | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Visit: | Daily Follow Up | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Type of Watch and Frequency | Staggered 15 minutes | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Date placed on watch: | 03/25/2020 | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Number of Days on Watch | 1 day | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Time placed on Watch | 0952 | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Reason for Watch | Ideation/Threat | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Interventions during session: | Supportive counseling, motivational interviewing | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Appearance | Disheveled | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Angry | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Mood | Irritable | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Affect | Hostile | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily Assessment/Discharge for MH | Thought Form | Poverty of Thought | Boets, Christina | 03-26-2020 10:22 am |
| 180252039 | Suicide Watch Daily | Thought Content | Suicidal | Boets, | 03-26- |

| 180252039 | Suicide Watch Initial Assessment for MH | Thought Form | Other (Describe): (obsessive ) | Woods, Dustina | 03-25-2020 7:36 pm |
|---|---|---|---|---|---|
| 180252039 | Suicide Watch Initial Assessment for MH | Thought Content | Other (Describe): (hysterical) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Intelligence | Average | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Memory | Intact | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Insight | Poor | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Judgement | Poor | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Behavior | Agitated | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Medication Compliant? | No | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Suicidal Ideations? | Refuses answer | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Homicidal Ideations? | Refuses answer | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Current Medications: | ATARAX | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Estimated current self-harm/suicide risk level: | Intermediate | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Date of last self-harm incident: | N/A | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Behaviors of Concern: | Hysterical, isolated in Ad Seg, impulsive, strubborn | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | (check all that apply) | Decrease risk level as evidenced by: (patient answering writer's questions) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | (check all that apply) | Improve medication compliance (patient answering writer's questions) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Hopelessness, feelings of guilt or worthlessness | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Placement in segregation/isolation | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Select: | Other (Describe): (refuses to answer) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | (check all that apply) | Continue current suicide watch and follow up daily | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Clothing: | Safety blanket | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Clothing: | Safety smock | Woods, Dustina | 03-25-2020 7:36 pm |

|  | Pain/Cervical Injury - CMG |  |  | Francis | 2020 4:19 am |
|---|---|---|---|---|---|
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | [blank] | Alteration in comfort evidenced by/related to: (/ c/c of musculoskeletal pain locate on middle to upper back as well as right side of torso.) | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Suicide Watch Initial Assessment for MH | Allergies: | GLUTEN, CRUSH AND FLOAT ATARAX DUE TO CHEEKING | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Gender: | Female | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | [blank] | Check here if patient refuses to answer | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Type of Watch and Frequency | Staggered 15 minutes | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Date placed on watch: | 03/25/2020 | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Number of Days on Watch | [blank] | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Time placed on Watch | 0952 | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Reason for Watch | Other (Describe): (refuses to confirm or deny and other inmates stated she was saying she was going to "kill herself") | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Placed on watch by | Mental Health | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Events Leading to Suicide/Self-Harm Watch (include patient's report as well as the official records of the event) | Met with patient in holding cell #4. She had been threatening to "harm herself" while housed in S1. Writer attempted multiple therapeutic techniques to calm patient down and she refused to participate. She was obsessed with getting moved to different housing. "I cannot be in there". She would not state what the issue in the S cell currently was. Patient then reported that she stopped taking her mental health medication because "she is taking medications for her physical pain and it is too many pills to drink". Patient refused to confirm or deny whether or not she was going to harm herself. | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Appearance | Disheveled | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Speech | Other (Describe): (tearful, crying, sobbing) | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Depressed | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Anxious | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Mood | Irritable | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Affect | Tearful | Woods, Dustina | 03-25-2020 7:36 pm |
| 180252039 | Suicide Watch Initial Assessment for MH | Affect | Labile | Woods, Dustina | 03-25-2020 7:36 pm |

| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | | | | 4:19 am |
|---|---|---|---|---|---|
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Frequency: | continues | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Interference with: | ADLs | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Interference with: | work | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Interference with: | play | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Pain: | dull | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Pain scale (1-10): | 8 | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Location: | c/c of musculoskeletal pain locate on middle to upper back as well as right side of torso. | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Additional injuries: | denies | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Similar problems in past? (If yes, describe): | No | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Prior surgeries: | none | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Current medications: | HYDROXYZINE HCL (ATARAX)50MG TAKE 1 TABLET BY MOUTH IN THE EVENING | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Additional notes: | a/ox4 walking to medical w/ stable gait without assistive devices. | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | *Starred items below are considered high risk findings and require further evaluation. *Pulse of 110 or greater; *Systolic BP of 180 or greater *Diastolic BP of 110 or greater *Temp of 100.0 or greater *SP02 of less than 90 *Respirations of less than 12/min or greater than 24/min | [blank] | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Appearance | alert | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Gait and coordination: | normal | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Back exam (describe abnormal): | normal exam | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Pain (location, precipitating factors): | points at the upper posterior torso and right side or torso | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Pulses (distal to injury): | equal bilaterally | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Parasthesia: | sensation equal bilaterally | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back Pain/Cervical Injury - CMG | Paralysis: | normal movement | McPherson, Francis | 03-18-2020 4:19 am |
| 180252039 | Musculoskeletal: Back | Pallor (compare bilaterally): | normal | McPherson, | 03-18- |

| 180252039 | | medications? | | Cotie | 2019 10:47 pm |
|---|---|---|---|---|---|
| 180252039 | PNP Mental Health | Is diagnosis: | Patient self-report | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Appearance | Normal | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Speech | Clear/Coherent | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Mood | Angry | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Affect | Appropriate | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Hallucinations | None/Denies | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Delusions | None | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Activity | Appropriate | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Suicide level recommended: | Level 2 – Suicide watch: monitoring twice every hour, house in step down housing cell or dorm setting | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Mental Health Professional Called: (include date/time) | Susan Bruno LMFT | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Mental Health | Nurse Signature: | C Spear RN :::03/17/2019 | Spear, Cotie | 03-17-2019 10:47 pm |
| 180252039 | PNP Ear Conditions | Current symptoms: | other: (DIRTY EARS) | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Onset: | gradual | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Location: | right | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Location: | left | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Location: | ear | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Pain: | pressure | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Worse: | night | Watson, Shannon | 05-19-2019 4:15 pm |
| 180252039 | PNP Ear Conditions | Worse: | day | Watson, | 05-19- |

| | | | | | |
|---|---|---|---|---|---|
| | Population Rounding Log | | | | |
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/20/2020 1005 | Woods, Dustina | 03-20-2020 5:08 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Seen by: | Mental Health | Woods, Dustina | 03-20-2020 5:08 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Comments: | Patient in ICE COURT during Ad Seg checks | Woods, Dustina | 03-20-2020 5:08 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/21/2020 2100 | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Speech: | Clear | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Gait: | Steady | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Room: | Clean | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Hygiene: | Groomed | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Physical/Mental "Direct Quotes from Patient" | "There is a bruise and a pain in my hip" "I want a picture to be taken." | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Seen by: | Nursing | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Comments: | Pt showed a small bruise on right hip and was stating she had back pain, i gave her a call slip to see medical. She wanted a picture to be taken, said she was hit. The bruise was minor, size of a quarter. | Litwinko, Joellen | 03-21-2020 11:15 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/22/2020 1323 | Woods, Dustina | 03-22-2020 1:24 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Seen by: | Mental Health | Woods, Dustina | 03-22-2020 1:24 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Comments: | In T tank for hallway during Ad Seg checks | Woods, Dustina | 03-22-2020 1:24 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/23/2020 1021 | Boets, Christina | 03-23-2020 10:21 am |
| 180252039 | Nursing Segregated Population Rounding Log | Speech: | Clear | Boets, Christina | 03-23-2020 10:21 am |
| 180252039 | Nursing Segregated Population Rounding Log | Gait: | Steady | Boets, Christina | 03-23-2020 10:21 am |

| | Safety Cell / Restraints Log / Step Down - CMG | Notified (only for safety cell and/or restraints) | | Susan | 2019 3:05 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Suicide attempt/gesture in past, SI now? | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | patient no longer a danger to self, DC STEPDOWN and cleared for custody to house | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/19/2020 2105 | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Gait: | Lying | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Room: | Clean | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Hygiene: | Groomed | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Physical/Mental "Direct Quotes from Patient" | none | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Seen by: | Nursing | Wahlin, Tyler | 03-19-2020 11:11 pm |
| 180252039 | Nursing Segregated | Comments: | pt is resting with eyes closed, respirations even and unlabored | Wahlin, Tyler | 03-19-2020 11:11 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | REFUSING-- FLUIDS ENCOURAGED-- WILL CONTINUE TO MONITOR | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | MOVED TO STEP DOWN @ 0905 PER MH | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/20/2019 1424 | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 10-20-19 0905 placed in STEPDOWN and discharged @ 1424 on 10-20-19 | Bruno, Susan | 10-20-2019 3:05 pm |
| 180252039 | Sobering / | Medical provider / | Brittany RN present during assessment | Bruno, | 10-20- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | safety cell and/or restraints) | | | |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Suicide attempt/gesture in past, SI now? | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Bruno, Susan | 10-20-2019 7:12 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | pt uncooperative with MH and states "you know what I want" and "you just torture me" | Bruno, Susan | 10-20-2019 7:12 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/20/2019 0905 | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 10/20/2019 0905 | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Zaniroli, Brittany | 10-20-2019 10:10 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Suicide attempt/gesture in past, SI now? | Zaniroli, Brittany | 10-20-2019 10:10 am |

| | | | | Francis | 2019 4:47 am |
|---|---|---|---|---|---|
| | Safety Cell / Restraints Log / Step Down - CMG | | | | |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | declined at the time | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | Pt found supine unlabored breathing in no s/s of acute distress. Left 240 mls of gatorade and 240 mls of water near by for convenient accessibility. | McPherson, Francis | 10-20-2019 4:55 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/20/2019 0703 | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Safety Cell | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 1600 on 10-19-19 | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Bruno, Susan | 10-20-2019 7:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Medical provider / Notified (only for | notified medical | | Bruno, Susan | 10-20-2019 7:08 am |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | McPherson, Francis | 10-19-2019 10:32 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | 240 mls of gatorade left at cell side | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | pt refused vitals to be taken pt is crying and states she does not want to be in a small place education reinforced on importance of protecting her safety against self-harm. No s/s of acute distress. Unlabored breathing. | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/20/2019 0418 | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Safety Cell | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 10/19/19 @ 1630 | McPherson, Francis | 10-20-2019 4:47 am |
| 180252039 | Sobering / | Reason: | DTS | McPherson, | 10-20- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Step Down - CMG | | | | |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | notified medical | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | *Unstable | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | | Bruno, Susan | 10-19-2019 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/19/2019 2218 | | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Safety Cell | | McPherson, Francis | 10-19-2019 10:32 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 10/19/19 @ 1630 | | McPherson, Francis | 10-19-2019 10:32 pm |

| | | placement: | | | Brittany | 2019<br>5:43 pm |
|---|---|---|---|---|---|---|
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Reason: | DTS | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Safety Garments: | Yes | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Psychiatric<br>History: | Yes | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Medical History: | Denies or none known | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | General<br>Appearance: | Appears well | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Fluid intake? (If<br>yes, list how<br>much): | FLUIDS GIVEN WITH DINNER | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Voided in the last<br>8 hours? | Yes | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Behavior: | Non-Cooperative | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Breathing: | Unlabored | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Pupils: | Equal size | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Comments: | UNLABORED BREATHING,PROTECTING AIRWAY. NO DISTRESS<br>NOTED.REFUSING TO RESPOND TO VERBALLY STIMULI BUT<br>MADE PURPOSEFUL MOVEMENTS WHEN REMOVING THE BP<br>CUFF. PUPILS 4MM BILATERALLY BRISK PERRLA | | Zaniroli,<br>Brittany | 10-19-<br>2019<br>5:43 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Date and Time: | 10/19/2019 1924 | | Bruno,<br>Susan | 10-19-<br>2019<br>7:26 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log /<br>Step Down -<br>CMG | Select: | Safety Cell | | Bruno,<br>Susan | 10-19-<br>2019<br>7:26 pm |
| 180252039 | Sobering /<br>Safety Cell /<br>Restraints Log / | Date and time of<br>placement: | 1910 @ 10-19-19 | | Bruno,<br>Susan | 10-19-<br>2019<br>7:26 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 10-19-19 placed on SAFETY CELL @ 1600 | Bruno, Susan | 10-19-2019 4:13 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | notified medical Brittany RN | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Suicide attempt/gesture in past, SI now? | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | patient states "I am thinking of harming myself and ending my life" she states she had a plan but refused to answer further questions. Placed in SAFETY CELL and a danger to self due to SI with a plan. | Bruno, Susan | 10-19-2019 4:13 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 10/19/2019 1630 | Zaniroli, Brittany | 10-19-2019 5:43 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Safety Cell | Zaniroli, Brittany | 10-19-2019 5:43 pm |
| 180252039 | Sobering / | Date and time of | 10/19/2019 1600 | Zaniroli, | 10-19- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | Ocheltree, Michael | 03-27-2020 2:07 am |
|---|---|---|---|---|---|
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/26/2020 2140 | Wahlin, Tyler | 03-27-2020 2:16 am |
| 180252039 | Nursing Segregated Population Rounding Log | Comments: | pt is in booking at this time | Wahlin, Tyler | 03-27-2020 2:16 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/27/2020 0804 | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | MIKE RN | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Woods, Dustina | 03-27-2020 8:05 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | LCSW was apprised that the patient left the facility with ICE AGENTS at approximately 0400 hours. | Woods, Dustina | 03-27-2020 8:05 am |

## Medications

| | | | | | | |
|---|---|---|---|---|---|---|
| | Step Down - CMG | | | | | |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/27/2020 0054 | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see mar | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | fluids encouraged. | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | | Ocheltree, Michael | 03-27-2020 2:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | | Ocheltree, Michael | 03-27-2020 2:07 am |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Safety Cell / Restraints Log / Step Down - CMG | | CONTINUE STEPDOWN | | Dustina | 2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 1914 | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | FLUIDS ENCOURAGED | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | | Zaniroli, Brittany | 03-26-2020 7:26 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Behavior: | Cooperative | | Zaniroli, Brittany | 03-26-2020 7:26 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Zaniroli, Brittany | 03-26-2020 3:48 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 1920 | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/26/2020 @ 0951 | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | RN ZANIROLI | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Woods, Dustina | 03-26-2020 7:24 pm |
| 180252039 | Sobering / | Comments: | PATIENT CONTINUES TO BE NON-COOPERATIVE W/LCSW. | Woods, | 03-26- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 1345 | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
|---|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | | Zaniroli, Brittany | 03-26-2020 6:31 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | WAS GIVEN 500ML OF FLUIDS. PT DRANK 240 ML FLUIDS. | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | | Zaniroli, Brittany | 03-26-2020 3:48 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | | Zaniroli, Brittany | 03-26-2020 3:48 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | | | Dustina | 2020 2:52 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | CONTINUE STEPDOWN | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 1445 | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | RN BRITTANY | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Woods, Dustina | 03-26-2020 2:54 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Comments: | CONTINUE STEPDOWN, REFUSES TO COOPERATE W/LCSW | Woods, Dustina | 03-26-2020 2:54 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 0711 | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | RN FRANCES | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Woods, Dustina | 03-26-2020 2:52 pm |
| 180252039 | Sobering / | Behavior: | Non-Cooperative | Woods, | 03-26- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | | | | |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | found sleeping on right side easily awakens left water next to sleeping area. | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 0747 | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0951 | Zaniroli, Brittany | 03-26-2020 6:31 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see mar | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | Zaniroli, Brittany | 03-26-2020 12:24 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | 500ml water given | Zaniroli, Brittany | 03-26-2020 12:24 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | | | Francis | 2020 2:18 am |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | easily awakens no s.s of acute distress. | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 0434 | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 03/25/2020 @ 0952 | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | McPherson, Francis | 03-26-2020 5:08 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | 240 mls of water | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | McPherson, Francis | 03-26-2020 5:07 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Breathing: | Unlabored | McPherson, Francis | 03-26-2020 5:07 am |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | found laying on right side not s.s of acute distress. | McPherson, Francis | 03-25-2020 8:18 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/26/2020 0204 | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 03/25/2020 @ 0952 | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | McPherson, Francis | 03-26-2020 2:18 am |
| 180252039 | Sobering / | Pupils: | Equal size | McPherson, | 03-26- |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/25/2020 2010 | McPherson, Francis | 03-25-2020 8:17 pm |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | McPherson, Francis | 03-25-2020 8:17 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0952 | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | McPherson, Francis | 03-25-2020 8:18 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | McPherson, Francis | 03-25-2020 8:18 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | unable to check pupil. | Bowman, Miraflor | 03-25-2020 3:25 pm |
|---|---|---|---|---|---|
| 180252039 | Nursing Segregated Population Rounding Log | Date and Time: | 03/25/2020 1538 | Boets, Christina | 03-25-2020 3:39 pm |
| 180252039 | Nursing Segregated Population Rounding Log | Comments: | in STEPDOWN | Boets, Christina | 03-25-2020 3:39 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/25/2020 0952 | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Select: | Step Down | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 3/25/2020 @ 0952 | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | RN MYRA | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Yes | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | SEE MAR | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Woods, Dustina | 03-25-2020 5:05 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Comments: | PATIENT REFUSES TO CONFIRM OR DENY SUICIDALITY. START STEPDOWN | Woods, Dustina | 03-25-2020 5:05 pm |

| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | | | | |
|---|---|---|---|---|---|
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and time of placement: | 03/25/2020 @ 0952 | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Reason: | DTS | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Safety Garments: | Yes | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | yes | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Denies or none known | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | Inmate refused v/s checked. Verbalized "No" "I'm okay" Fluid intake encourage. Has water faucet inside the cell. Inmate awake, reg/unlabored breathing, speech clear. No medical complaint. will continue to monitor. | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Voided in the last 8 hours? | Yes | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Non-Cooperative | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Bowman, Miraflor | 03-25-2020 3:25 pm |

| | | | | | |
|---|---|---|---|---|---|
| | Restraints Log / Step Down - CMG | | | | 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical provider / Notified (only for safety cell and/or restraints) | 03/25/2020 | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Psychiatric History: | Denies or none known | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Medical History: | Yes | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Current Medications (List dose, frequency, last taken): | see MAR | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Level of consciousness: | Awake and alert | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | General Appearance: | Appears well | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Gait: | Steady | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Fluid intake? (If yes, list how much): | yes and has faucet in cell. Encourage fluid intake. | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Behavior: | Cooperative | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Breathing: | Unlabored | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Pupils: | Equal size | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Comments: | Pt. a/o x4, sitting on the floor, crying, regular/unlabored breathing, no medical complaint. Will continue monitoring. | Bowman, Miraflor | 03-25-2020 10:06 am |
| 180252039 | Sobering / Safety Cell / Restraints Log / Step Down - CMG | Date and Time: | 03/25/2020 1522 | Bowman, Miraflor | 03-25-2020 3:25 pm |
| 180252039 | Sobering / Safety Cell / Restraints Log / | Select: | Step Down | Bowman, Miraflor | 03-25-2020 3:25 pm |

| Date of Reading | 03-18-2020 4:19 am |
|---|---|
| Date Entered | 03-18-2020 4:19 am |
| Blood Pressure Sitting | 112/78 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 79 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.5 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | [blank] |

| Date of Reading | 03-01-2020 10:05 pm |
|---|---|
| Date Entered | 03-01-2020 10:05 pm |
| Blood Pressure Sitting | 101/67 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 69 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.7 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | Entered on a sick call created 03-01-2020 2159 |

| Date of Reading | 02-22-2020 9:15 am |
|---|---|
| Date Entered | 02-22-2020 9:15 am |
| Blood Pressure Sitting | 145/74 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 85 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.1 |
| Weight | [blank] |
| SPO2 | 99.0 |
| Notes | Entered on a sick call created 02-22-2020 0912 |

| Date of Reading | 02-14-2020 6:38 pm |
|---|---|
| Date Entered | 02-14-2020 6:38 pm |
| Blood Pressure Sitting | 115/75 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 98 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 98.3 |
| Weight | 155 |
| SPO2 | 98.0 |
| Notes | Entered on a sick call created 02-14-2020 1833 |

| Date Entered | 03-26-2020 2:13 am |
|---|---|
| Blood Pressure Sitting | 105/65 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 82 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.7 |
| Weight | 155 |
| SPO2 | 98.0 |
| Notes | [blank] |

| Date of Reading | 03-25-2020 8:10 pm |
|---|---|
| Date Entered | 03-25-2020 8:15 pm |
| Blood Pressure Sitting | 113/65 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 68 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.7 |
| Weight | 155 |
| SPO2 | 98.0 |
| Notes | found laying on right side no s.s of acute distress. Pt does not want to talk at this time. |

| Date of Reading | 03-25-2020 10:00 am |
|---|---|
| Date Entered | 03-25-2020 10:04 am |
| Blood Pressure Sitting | 109/75 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 105 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 98.3 |
| Weight | [blank] |
| SPO2 | 99.0 |
| Notes | [blank] |

| Date of Reading | 03-18-2020 5:59 pm |
|---|---|
| Date Entered | 03-18-2020 5:59 pm |
| Blood Pressure Sitting | 112/74 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 78 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 97.6 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | Entered on a sick call created 03-18-2020 1744 |

CoreEMR - FERREIRA DA SILVA, ALEXANDRE - #180252059 (07-20-1977) - Full Patient History - v5.5.0

| | |
|---|---|
| **Date Entered** | 03-26-2020 7:24 pm |
| **Blood Pressure Sitting** | 97/68 |
| **Blood Pressure Standing** | *[blank]* |
| **Pulse Sitting** | 85 |
| **Pulse Standing** | *[blank]* |
| **Respiration** | 16 |
| **Temperature** | 98.4 |
| **Weight** | *[blank]* |
| **SPO2** | 99.0 |
| **Notes** | STEP DOWN CHECK |

| | |
|---|---|
| **Date of Reading** | 03-26-2020 1:45 pm |
| **Date Entered** | 03-26-2020 3:45 pm |
| **Blood Pressure Sitting** | 98/66 |
| **Blood Pressure Standing** | *[blank]* |
| **Pulse Sitting** | 60 |
| **Pulse Standing** | *[blank]* |
| **Respiration** | 16 |
| **Temperature** | 98.2 |
| **Weight** | *[blank]* |
| **SPO2** | 98.0 |
| **Notes** | STEP DOWN CHECK |

| | |
|---|---|
| **Date of Reading** | 03-26-2020 7:47 am |
| **Date Entered** | 03-26-2020 12:21 pm |
| **Blood Pressure Sitting** | 0/0 |
| **Blood Pressure Standing** | 96/66 |
| **Pulse Sitting** | *[blank]* |
| **Pulse Standing** | 90 |
| **Respiration** | 16 |
| **Temperature** | 98.2 |
| **Weight** | *[blank]* |
| **SPO2** | 98.0 |
| **Notes** | StepDown Check |

| | |
|---|---|
| **Date of Reading** | 03-26-2020 4:34 am |
| **Date Entered** | 03-26-2020 5:04 am |
| **Blood Pressure Sitting** | 100/60 |
| **Blood Pressure Standing** | *[blank]* |
| **Pulse Sitting** | 65 |
| **Pulse Standing** | *[blank]* |
| **Respiration** | 16 |
| **Temperature** | 98.7 |
| **Weight** | 155 |
| **SPO2** | 98.0 |
| **Notes** | found sleeping on right side easily awakens left water next to sleeping area. |

| | |
|---|---|
| **Date of Reading** | 03-26-2020 2:04 am |

| | | | | |
|---|---|---|---|---|
| 3:31 pm | | | | |
| 03-20-2020 8:51 am | Received verbal order to renew the following medications for 30 days: —ARTIFICIAL TEARS 15MLMODERATE 1 DROP [OU] Into Both Eyes BID —OMEPRAZOLE20MG 1 CAP [BY MOUTH] BY MOUTH DAILY | Prado, Christina | Medical Staff | Medical Note |
| 03-20-2020 11:51 am | Signature pad not working at this time. 03/20/2020 Orders signed and submitted for scanning. | Malasan, Maria | Medical Staff | Medical Note |
| 03-26-2020 2:51 pm | LCSW met w/patient again at 1445 hours. She continues to refuse to sit up and cooperate. Laying flat on the floor, "I am feeling dizzy". Medical continues to check vitals. Patient will not confirm or deny her safety in housing. Continue STEPDOWN. | Woods, Dustina | Medical Staff | Mental Health Note |
| 03-26-2020 2:54 pm | Patient refused to come to the MH office and talk to Dr. Boora today during his Telemedicine MH Clinic. | Woods, Dustina | Medical Staff | Mental Health Note |

## Problems

| Date Opened | Problem Type | Problem Subtype | Current Status | Date Closed | Closed By |
|---|---|---|---|---|---|
| 09-27-2018 3:01 pm | F32.9 Major depressive disorder, single episode, unspecified | *[blank]* | open | *[blank]* | , |
| 09-27-2018 3:01 pm | F41.9 Anxiety disorder, unspecified | *[blank]* | open | *[blank]* | , |
| 10-24-2018 4:15 pm | H57.12 Ocular pain, left eye | *[blank]* | open | *[blank]* | , |
| 10-24-2018 4:15 pm | H04.2 Epiphora | *[blank]* | open | *[blank]* | , |
| 11-13-2018 7:45 pm | R21 Rash and other nonspecific skin eruption | *[blank]* | open | *[blank]* | , |
| 04-24-2019 2:53 pm | K03.89 Other specified diseases of hard tissues of teeth | *[blank]* | open | *[blank]* | , |
| 07-09-2019 8:27 am | F43.1 Post-traumatic stress disorder (PTSD) | *[blank]* | open | *[blank]* | , |
| 03-18-2020 5:54 pm | M54.2 Cervicalgia | *[blank]* | open | *[blank]* | , |
| 03-18-2020 5:55 pm | M54.5 Low back pain | *[blank]* | open | *[blank]* | , |

## Vital Signs

| | |
|---|---|
| Date of Reading | 03-27-2020 3:24 am |
| Date Entered | 03-27-2020 3:25 am |
| Blood Pressure Sitting | 0/0 |
| Blood Pressure Standing | 91/70 |
| Pulse Sitting | *[blank]* |
| Pulse Standing | 86 |
| Respiration | 16 |
| Temperature | *[blank]* |
| Weight | *[blank]* |
| SPO2 | 98.0 |
| Notes | Pt stated she was feeling dizzy, Provided pt with 4 cups of Gatorade and a sack lunch. |

| | |
|---|---|
| Date of Reading | 03-26-2020 7:14 pm |

Notes | [blank]

| Date of Reading | 09-30-2019 12:24 pm |
|---|---|
| Date Entered | 09-30-2019 12:24 pm |
| Blood Pressure Sitting | 107/76 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 71 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 97.9 |
| Weight | [blank] |
| SPO2 | 99.0 |
| Notes | [blank] |

| Date of Reading | 09-01-2019 9:56 am |
|---|---|
| Date Entered | 09-01-2019 9:57 am |
| Blood Pressure Sitting | 0/0 |
| Blood Pressure Standing | 111/70 |
| Pulse Sitting | [blank] |
| Pulse Standing | 88 |
| Respiration | 14 |
| Temperature | 97.9 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | Pt c/o dizziness. Task created to see NP FSBG 98 |

| Date of Reading | 07-19-2019 6:53 pm |
|---|---|
| Date Entered | 07-19-2019 6:53 pm |
| Blood Pressure Sitting | 107/74 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 69 |
| Pulse Standing | [blank] |
| Respiration | 16 |
| Temperature | 97.8 |
| Weight | 152 |
| SPO2 | 100.0 |
| Notes | Entered on a sick call created 07-19-2019 1853 |

| Date of Reading | 07-01-2019 12:49 pm |
|---|---|
| Date Entered | 07-01-2019 12:49 pm |
| Blood Pressure Sitting | 104/71 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 71 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 98.1 |
| Weight | [blank] |
| SPO2 | 96.0 |

| | |
|---|---|
| Sitting | |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 112 |
| Pulse Standing | [blank] |
| Respiration | 14 |
| Temperature | 98.2 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | UNLABORED BREATHING AND PROTECTING AIRWAY. NO DISTRESS NOTED. PT WAS REFUSING TO RESPOND TO VERBALLY STIMULI BUT MADE PURPOSEFUL MOVEMENTS WHEN REMOVING THE BP CUFF. AFTER LEAVING THE CELL FOR 60 SECONDS THE PT MADE A POS CHANGE. |

| | |
|---|---|
| Date of Reading | 10-16-2019 11:03 am |
| Date Entered | 10-16-2019 11:03 am |
| Blood Pressure Sitting | 118/72 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 79 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 98.4 |
| Weight | [blank] |
| SPO2 | 99.0 |
| Notes | Entered on a sick call created 10-16-2019 1100 |

| | |
|---|---|
| Date of Reading | 10-01-2019 2:05 pm |
| Date Entered | 10-01-2019 2:05 pm |
| Blood Pressure Sitting | 94/63 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 77 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 98.3 |
| Weight | 156 |
| SPO2 | 99.0 |
| Notes | [blank] |

| | |
|---|---|
| Date of Reading | 10-01-2019 2:05 pm |
| Date Entered | 10-01-2019 2:05 pm |
| Blood Pressure Sitting | 94/63 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 77 |
| Pulse Standing | [blank] |
| Respiration | 18 |
| Temperature | 98.3 |
| Weight | 156 |
| SPO2 | 99.0 |

| | |
|---|---|
| Date of Reading | 10-20-2019 9:05 am |
| Date Entered | 10-20-2019 10:09 am |
| Blood Pressure Sitting | 0/0 |
| Blood Pressure Standing | 97/63 |
| Pulse Sitting | [blank] |
| Pulse Standing | 107 |
| Respiration | 16 |
| Temperature | 98.2 |
| Weight | [blank] |
| SPO2 | 98.0 |
| Notes | MOVED TO STEP DOWN @ 0905 PER MH |

| | |
|---|---|
| Date of Reading | 10-20-2019 4:18 am |
| Date Entered | 10-20-2019 4:32 am |
| Blood Pressure Sitting | 104/67 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | 76 |
| Pulse Standing | [blank] |
| Respiration | 17 |
| Temperature | 98.7 |
| Weight | 152 |
| SPO2 | 98.0 |
| Notes | Pt found supine unlabored breathing in no s/s of acute distress. Left 240 mls of gatorade and 240 mls of water near by for convenient accessibility. |

| | |
|---|---|
| Date of Reading | 10-19-2019 10:18 pm |
| Date Entered | 10-19-2019 10:31 pm |
| Blood Pressure Sitting | 0/0 |
| Blood Pressure Standing | [blank] |
| Pulse Sitting | [blank] |
| Pulse Standing | [blank] |
| Respiration | [blank] |
| Temperature | [blank] |
| Weight | [blank] |
| SPO2 | [blank] |
| Notes | pt refused vitals to be taken pt is crying and states she does not want to be in a small place education reinforced on importance of protecting her safety against self-harm. No s/s of acute distress. Unlabored breathing. |

| | |
|---|---|
| Date of Reading | 10-19-2019 4:30 pm |
| Date Entered | 10-19-2019 5:40 pm |
| Blood Pressure | 121/82 |

| | |
|---|---|
| Weight | 155 |
| SPO2 | 99.0 |
| Notes | Entered on a sick call created 09-22-2018 0117 |

## Blood Glucose Levels

(No Records)

## Medical Sick Calls

| | |
|---|---|
| Call Date | 09-22-2018 1:39 am |
| Clinician Name | Yesenia Rodriguez |
| Requested by Patient? | Yes |
| Subjective | 09-22-2018 1:39 am - Rodriguez, Yesenia : 09/21/2018 @ 2254 FEMALE ICE INTAKE PMH: SUBARACHNOID CYST, GASTRITIS |
| Objective | 09-22-2018 1:39 am - Rodriguez, Yesenia : SEE ATTACHED |
| Assessment | 09-22-2018 1:39 am - Rodriguez, Yesenia : SEE ABOVE |
| Plan | 09-22-2018 1:39 am - Rodriguez, Yesenia : START ON MEDICATIONS MENTAL HEAL EVAL NEXT PROVIDER SC |
| Education | 09-22-2018 1:39 am - Rodriguez, Yesenia : PLAN OF CARE |
| Recorded By | Rodriguez, Yesenia |
| Notes Regarding Note Off | [blank] |

| | |
|---|---|
| Call Date | 09-29-2018 3:18 pm |
| Clinician Name | Maria Malasan |
| Requested by Patient? | Yes |
| Subjective | 09-29-2018 3:18 pm - Malasan, Maria : Late entry for 9/28/18 Pt is a transfer from Mesa Verde Reported hx of left foot surgery in 2007 and hx of Celiac disease x 20 years Was having some vomiting and abdominal pain the day before, and it is getting better Also reported hx of subarachnoid cyst to left side of head in 2008, discovered by CT scan Stated that cyst caused an epileptic episode with last seizure in 2008 Reported no seizures while here, no pain or growth to cyst LMP 2 weeks ago |
| Objective | 09-29-2018 3:18 pm - Malasan, Maria : A/O x 3, NAD, steady gait Good color, no diaphoresis, afebrile, cooperative HEENT: NC, AT, no visible/palpable mass noted along left side of head, PERRL, EOMI, oropharynx clear CV: RRR with no murmurs/gallops/rubs noted, no BLE edema RESP: even, unlabored, CTAB ABD: soft, nondistended, mild tenderness upon palpation throughout without rebound tenderness noted, +BS x 4 quadrants with no masses/guarding/rebound tenderness/organomegaly noted MUSC: MAEW NEURO: bilateral hand grip strength strong/equal, BUE/BLE strength 5/5, CN II-XII grossly intact, no cerebellar deficits, Romberg negative |
| Assessment | 09-29-2018 3:18 pm - Malasan, Maria : Hx subarachnoid cyst per pt statement Hx Celiac disease per pt statement |
| Plan | 09-29-2018 3:18 pm - Malasan, Maria : ROI Mesa Verde MTO for Gluten Free diet if available Tylenol 650 mg PO BID x 30 days |
| Education | [blank] |
| Recorded By | Malasan, Maria |
| Notes Regarding Note Off | [blank] |

| | |
|---|---|
| Call Date | 10-02-2018 1:12 am |
| Clinician Name | Adriana Gonzales |

| Assessment | 07-19-2019 8:05 pm - Malasan, Maria : Abdominal pain Left eye pain |
|---|---|
| Plan | 07-19-2019 8:05 pm - Malasan, Maria : Pt with pending lab draw. Will add Food Allergy to lab draw: Milk (0672-6), Wheat (0673-4), Soybean (0680-9), Gluten (0935-7), Barley (0816-9). Advised pt to avoid spicy/citrus foods, increase fluid intake as tolerated, and elevate HOB while in bed. Tylenol 650 mg PO BID PRN pain x 10 days. Informed pt of plan of care = Verbalized understanding. SC PRN. |
| Education | 07-19-2019 8:05 pm - Malasan, Maria : As above |
| Recorded By | Malasan, Maria |
| Notes Regarding Note Off | *[blank]* |

| Call Date | 09-06-2019 3:58 pm |
|---|---|
| Clinician Name | Maria Malasan |
| Requested by Patient? | No |
| Subjective | 09-05-2019 4:52 pm - Malasan, Maria : ICE- Requesting chronic pain medication for headaches<br>09-06-2019 3:58 pm - Malasan, Maria : Pt with multiple medical concerns. Requesting for Tylenol to be long term for both headaches and for pain with menses. Would like to have the orange pills again for constipation with last BM yesterday but she was straining. Also requesting salt packets for her allergies. Wants to be referred back to optometrist because she was supposed to be prescribed sunglasses because the sun is too bright. Still with stomach pain and wants diet to be changed. States dizziness is getting better and she has been drinking water. |
| Objective | 09-06-2019 3:58 pm - Malasan, Maria : A/O x 3, NAD, steady gait into medical Good color, no diaphoresis Respirations even and unlabored MAEW |
| Assessment | 09-06-2019 3:58 pm - Malasan, Maria : Consipation Abdominal pain |
| Plan | 09-05-2019 4:52 pm - Malasan, Maria : Bisacodyl 10 mg PO q PM x 5 days 5 salt packets to be given at PM med pass<br>09-06-2019 3:58 pm - Malasan, Maria : 08/06/2019 Ultrasound results and 07/29/2019 lab results reviewed with pt = Verbalized understanding. Diet MTO for bland diet, no milk, no gluten x 90 days. Offered H.Pylori testing and informed pt that Prilosec would have to be changed due to interference with results = PT VERBALIZED UNDERSTANDING AND REFUSED LAB TEST MTO for low bunk x 30 days Advised pt to increase fluid intake as tolerated, slow transfers, and fall precautions. Tylenol 650 mg PO BID PRN pain/headache x 21 days- Informed pt of adverse side effects with chronic use. Informed pt of plan of care = Verbalized understanding. SC PRN. |
| Education | 09-06-2019 3:58 pm - Malasan, Maria : As above |
| Recorded By | Malasan, Maria |
| Notes Regarding Note Off | *[blank]* |

| Call Date | 09-30-2019 12:26 pm |
|---|---|
| Clinician Name | Brittany Zaniroli |
| Requested by Patient? | No |
| Subjective | 09-30-2019 12:26 pm - Zaniroli, Brittany : SC 9/26/19 Pain in eye. Need eye Doctor. |
| Objective | *[blank]* |
| Assessment | *[blank]* |
| Plan | 09-30-2019 12:26 pm - Zaniroli, Brittany : 1. RTC IF SYMPTOMS GET WORSE 2. FOLLOW UP WITH PROVIDER TO DISCUSS REFERRAL TO OPTOMETRY. |
| Education | 09-30-2019 12:26 pm - Zaniroli, Brittany : RTC IF SYMPTOMS GET WORSE |
| Recorded By | Zaniroli, Brittany |
| Notes Regarding Note Off | *[blank]* |

| Call Date | 10-01-2019 2:19 pm |
|---|---|
| Clinician Name | Maria Malasan |
| Requested by Patient? | No |
| Subjective | 10-01-2019 2:19 pm - Malasan, Maria : ICE- Requesting renewal of MTOs and complaints of constipation Pt seen for annual physical |

# AmplaHealth
**Care to improve your life.**

Ampla Health Yuba City Medical
1000 Sutter Street   Yuba City, CA  95991-3459
5306739420  Fax:5306739451

*September 23, 2021*
Page 2
Office Visit

**Alexandra Ferreira De Silva**
Female  DOB: 07/20/1977                    550618          Ins: Anthem Medi Cal Managed Care

developed back pain. Denies h/o back pain prior to incident. Pain is present if she sits or stands for long
periods of time. Does not apply ice/heat. Currently rx Ibuprofen 600mg BID and Baclofen 10mg BID. Pt
currently has an open case with her lawyer. Pt to sign for release of medical records.
XR thoracic on 1/5/21 indicated "Minimal wedging superior endplate of T11 is likely chronic or
developmental. Minimal degenerative changes."

Pt currently sees counseling and telemedicine psychiatry d/t abuse pt experienced in the detention center.
Pt reqeusting for next available appt with psychiatry, to discuss sx and tx options.

## Past Medical History:
Reviewed history from 01/13/2021 and no changes required:
  Allergic rhinitis
  Back pain
  Anemia
  Vitamin D deficiency
  Anixety
  Depression
  Prediabetes A1C on 1/5/21 at 5.7%

## Past Surgical History:
Reviewed history from 01/13/2021 and no changes required:
  Bilateral foot surgery

[Family History-CCC]

## Risk Factors:
Smoked Tobacco Use:  Unknown if ever smoked
Seatbelt Use:  100 %
Sun Exposure:  rarely

**Previous Tobacco Use:** Signed On - 01/13/2021
Smoked Tobacco Use:  Unknown if ever smoked
Seatbelt Use:  100 %
Sun Exposure:  rarely
Alcohol Use:  no

**Previous Drug Use:** Signed On - 01/04/2021
Drug Use:  no

## Review of Systems



**Ampla Health**
355 Samuel Dr
Yuba City, CA 95991

09/24/2021

**Patient:** Alexandra Ferreira De Silva

To Whom It May Concern:

The above named patient has a history of back pain related to injury, patient had delay in
treatment from Physical Therapy mainly COVID-19 related  and visits were not covered by
insurance.

If you need additional information, please feel free to contact our office.

Sincerely,

Mustafa Ammar, MD

From:                        To:5306744169          09/15/2021 15:38    #211 P.001/001

**Sierra Injury & Sports Rehab**

**1110 Civic Center Blvd Suite 502**

**Yuba City, CA 95993  530 671 7977**

September 15, 2021

To Whom It May Concern;

This is to certify that our Physical Therapy Clinic cannot accept for treatment patients that are involved in a legal situation w/o being represented by an attorney.

Siri Pritam Khalsa, CFO



# AmplaHealth
## Care to improve your life.

Ampla Health Yuba City Medical
1000 Sutter Street  Yuba City, CA  95991-3459
5306739420  Fax:5306739451

September 23, 2021
Page 3
Office Visit

**Alexandra Ferreira De Silva**
Female  DOB: 07/20/1977                    550618          Ins: Anthem Medi Cal Managed Care

. Though the patient would improve more rapidly and thorough with a higher frequency of care, the outlined treatment plan is likely to mitigate their symptoms. The following factors pose limitations in the prognosis, limiting both the speed of improvement and/or the overall degree of improvement. Though treatment will likely help to lower pain levels, provide functional improvement and improve ADLs (goal of the treatment plan), it is likely that the patient will experience flares in her condition from time to time based on these factors: New Injuries, non-compliance with care, insurance deactivation, family or personal emergencies, pandemics & any and all other factors which may hinder patient care, recovery, & progress". (CMT); spinal, 1-2 regions [98940]

## Instructions:
Apply an ice pack to the upper and midback region today for 30 sec TID to avoid/decrease the pain & soreness of the first time tx from tomorrow TID for 2-5 min use heating pad on the mentioned areas daily to relax the muscles. What to expect after the adjustment: Pt was explained to that after an adjustment a pt may experience mild to moderate P and soreness in the adjusted regions of the spine which shall not last for more than 1-3 days. After an initial adjustment this soreness is due to an increase in inflammatory response due to aligning the joints and the surrounding tissues.
Please rest and keep hydrated today as much as possible since you just received your initial Chiropractic adjustment; Increased movement shall elicit an increase in the inflammation at the joint line.

## Patient Instructions:
1)  Apply an ice pack to the upper and midback region today for 30 sec TID to avoid/decrease the pain & soreness of the first time tx from tomorrow TID for 2-5 min use heating pad on the mentioned areas daily to relax the muscles. What to expect after the adjustment: Pt was explained to that after an adjustment a pt may experience mild to moderate P and soreness in the adjusted regions of the spine which shall not last for more than 1-3 days. After an initial adjustment this soreness is due to an increase in inflammatory response due to aligning the joints and the surrounding tissues.
2)  Please rest and keep hydrated today as much as possible since you just received your initial Chiropractic adjustment; Increased movement shall elicit an increase in the inflammation at the joint line.

**Electronically signed by Bahareh Daneshbod DC on 02/08/2021 at 10:12 AM**


### Care to improve your life.

Ampla Health Yuba City Medical
1000 Sutter Street   Yuba City, CA  95991-3459
5306739420  Fax:5306739451

*September 23, 2021*
Page 2
Office Visit

**Alexandra Ferreira De Silva**
Female  DOB: 07/20/1977                    550618              Ins: Anthem Medi Cal Managed Care


PRS: T2, T10


## Problem List:
Thoracic back pain (ICD-724.5) (ICD10-M54.9)
Dysfunction, somatic, thoracic region (ICD-739.2) (ICD10-M99.02)
Prediabetes (ICD-790.29) (ICD10-R73.09)
Anemia (ICD-285.9) (ICD10-D64.9)
Vitamin D deficiency (ICD-268.9) (ICD10-E55.9)
PTSD (ICD-309.81) (ICD10-F43.10)
Depression / anxiety (ICD-300.4) (ICD10-F41.8)
Allergic rhinitis (ICD-477.9) (ICD10-J30.9)
Depression (ICD-311) (ICD10-F32.9)
Back pain (ICD-724.5) (ICD10-M54.9)
Fatigue (ICD-780.79) (ICD10-R53.83)
Encounter for observation for suspected exposure to other biological agents ruled out (ICD10-Z03.818)


## Medications
FERROUS SULFATE 325 (65 FE) MG ORAL TABLET (FERROUS SULFATE) Take one (1) tablet by
mouth daily.; Route: ORAL
VITAMIN D3 50 MCG (2000 UT) ORAL CAPSULE (CHOLECALCIFEROL) Take one (1) tablet by mouth
daily.; Route: ORAL
BACLOFEN 10 MG ORAL TABLET (BACLOFEN) Take one (1) tablet by mouth twice daily.; Route: ORAL
IBUPROFEN 600 MG ORAL TABLET (IBUPROFEN) Take one (1) tablet by mouth twice daily PRN pain;
Route: ORAL
LORATADINE 10 MG ORAL TABLET (LORATADINE) Take one (1) tablet by mouth daily.; Route: ORAL


## Assessment
**1:** Dysfunction, somatic, thoracic region - Improved - prognosis: good, provided that pt complies with care
plan and abides by the at-home instructions.
Thoracic back pain - We informed the pt that by law she can speak with our site administrator in regards
to her abuse and have it reported. Pt very much welcommed the idea as she stated she is very concerned
about being abused again and is concerned about finding a safe home.


## Plan
CMT of the T/S for 8 visits, X2 per month, per CC including the initial visit w/pertinent evaluations during
every visit to assess pt recovery and progress (complete re-evaluation shall be at the end of the tx plan).

Pt was adjusted on the mentioned misaligned segments of the spine using the gentle activator technique
via which no torque or twist is applied to the spine during the course of the adjustment.
 Post tx the pt took a deep breath, twisted her torso, shrugged shoulders, and reported that she was
feeling all better in her upper and midback regions.
post tx pt left the clinic in a happy mood, having normal gait/ambulation and behavior.
We escorted the pt to the supervisor's office post tx today.

# AmplaHealth
**Care to improve your life.**

Ampla Health Yuba City Medical
1000 Sutter Street   Yuba City, CA  95991-3459
5306739420  Fax:5306739451

*September 23, 2021*
Page 1
Office Visit

**Alexandra Ferreira De Silva**
Female  DOB: 07/20/1977                          550618          Ins: Anthem Medi Cal Managed Care

**02/08/2021 - Office Visit**
**Provider: Bahareh Daneshbod DC**
**Location of Care: Ampla Health Yuba City Medical**

## Chief Complaint
Midback pain

## History of Present Illness
pt states she has been experiencing midback pn since March 17th of 2020, pt states she was physically asulted , she was beated by a big person on the back. pt denies numbness in the midback pn, pt feels her back muscles are tightening. pt rates her back pn 5/10 pn intensity. pt is very concerned about being abused again and finding a safe home for herself.

## Past Medical History
Allergic rhinitis
Back pain
Anemia
Vitamin D deficiency
Anixety
Depression
Prediabetes A1C on 1/5/21 at 5.7%

## Past Surgical History
Bilateral foot surgery

## Allergies
No Known Allergies

## Vital Signs
**Height:** 65 in.
**BP:** 90/60 mm Hg

## Review of Systems
Patient complains of the following: **joint pain**.
Patient denies the following: fatigue, fever, headaches, insomnia/sleep difficulty, nausea, pain at night, palpitations, restless legs, weakness.

## Physical Exam
per Xray of T/S: minimal wedging of superior end plate of T11,
 Per Xray image:R sided curve T2-T6, peak T3 and T4
Spinal percussion test: + on all upper and mid T/S vertebrae
Hypertonic B upper and mid Trapezius muscles and B T/S erector spinae muscles
PLS: T3-T7

**Advanced Spinal Rehabilitation, Inc**
1585 Butte House Rd Ste A
Yuba City, CA 95993-2200
Phone: (530)751-9340
Fax: (530)673-0151

## Physical Therapy
## Initial
## Examination

**Patient Name:** Ferreira De Silva, Alexandra
**Date of Birth:** 07/20/1977
**Referring Physician(s):** Bath, Kami FNP

**Date of Initial Examination:** 09/24/2021
**Injury/Onset/Change of Status Date:** 03/17/2020
**Diagnosis:** ICD10: M54.9: Dorsalgia, unspecified, M99.08: Segmental and somatic dysfunction of rib cage, M99.05: Segmental and somatic dysfunction of pelvic region, F43.10: Post-traumatic stress disorder, unspecified, M99.03: Segmental and somatic dysfunction of lumbar region, M99.02: Segmental and somatic dysfunction of thoracic region

**Visit No.:** 1

**Treatment Diagnosis:** ICD10: M54.9: Dorsalgia, unspecified, M54.2: Cervicalgia, M54.5: Low back pain, M54.6: Pain in thoracic spine

**SOC Date:** 09/24/2021
**Insurance Name:** Anthem Blue Cross Medical

**Visits from SOC:** 1

## Subjective

**History of Present Condition/Mechanism of Injury:** Pt has been pre-screen with COVID-19 questions and has been deemed safe to begin out patient physical therapy. Pt reports to the clinic with chronic neck and mid back pain following altercation with ICE officer 3/17/20. Pt reports being detained by ICE and while in detention center going to the library and started to have a panic attack and did not have any water. Pt reports leaving the library and an officer twisted patience torso and pushed the patient mid back down a hall way. Pt reports having an altercation with the officer due to not responding to request being made. pt reports being released from the detention center and had neck, mid back and low back pain as results from altercation with the officer. Pt reports following being released 5/7/2020. Pt reports going to the ER in January 2021 and had X-rays taken on her back but was unsure of the results. Pt reports starting chiropractic care which has been making slight changes to her pain. pt reports following up with MD and was recommended to attempt physical therapy. Pt reports constant dull progressing to sharp pain about her mid back ranging 3-10/10. pt reports intermittent sharp pain about her low back 5/10. Pt reports aggravating factors include: sitting, laying down, removing clothes, lifting purse.

**Primary Concern/Chief Complaint:** Pt reports primary complaint being her mid back pain.

**Pain Location:** Mid back
  **Pain Scale: Worst:** 10 **Best:** 3 **Current:**
    **Pain Description:** Constant
**Pain Location:** Low back
  **Pain Scale: Worst:** 5 **Best:** 0 **Current:**
    **Pain Description:** Intermittent
**General Health:** Good
**Occupation/Social History:**
  **Status of Occupation:** Not Working
  **Duty Level:** Sedentary
  **Workers Compensation:** No
  **Litigation:** No
**Home Health Care:** No
**Medical History:** arachnoid cyst
Epilepsy
Blood clots
Anemia

**Diagnostic Testing/Imaging:** X-ray Back unsure of results.
**Complicating/Personal Factors:** Mechanism of injury/ Illness, Multiple Treatment Areas, Time since onset of injury/illness
**Medical History Review:** The patient has a history of present problem without any personal factors and/or comorbidities that impact the plan of care.
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** ibuprofen
**Patient Goals:** Pt primary goal is to return to ADL's without pain.

## Objective

### Inspection

**Patient Consent**
Patient/Parent/Guardian Consent          Yes

**Advanced Spinal Rehabilitation, Inc.**
1585 Butte House Rd Ste A
Yuba City, CA 95993-2200
Phone: (530)751-9340
Fax: (530)673-0151

# Physical Therapy
## Initial
## Examination

**Patient Name:** Ferreira De Silva, Alexandra
**Date of Birth:** 07/20/1977
**Document Date:** 09/24/2021

---

## Body Mass Index

| | |
|---|---|
| Weight | 148 |
| Height | 66 |
| Units | lbs/in |
| Index | 23.89 |

## Outcome Measurement Tools

**Spine**
Neck Disability Index Questionnaire
Total Score: 41
Total %: 82%

## Observation

---

**Standing Posture**  Normal

**Gait**  Normal

## Range of Motion

---

**Cervical AROM**

| | |
|---|---|
| Forward Bending | 50° |
| Backward Bending | 50° |
| Right Rotation | 80° |
| Left Rotation | 70° |
| Right Side Bending | 50° |
| Left Side Bending | 50° |

| **Shoulder AROM** | Right | Left |
|---|---|---|
| Flexion | 160 ° | 160 ° |
| Abduction | 130 ° | 150 ° |

**Lumbar AROM**

| | |
|---|---|
| Forward Bending | 75° |
| Backward Bending | 50° |
| Right Rotation | 50° |
| Left Rotation | 75° |
| Right Side Bending | 25° |
| Left Side Bending | 25° |
| Lumbar AROM Comments | Pain with side bending |

| **Hip AROM** | Right | Left |
|---|---|---|
| Flexion | 120 ° | 120 ° |
| Abduction | 35 ° | 30 ° |

**Comments**  Hasmtim length right 70 degrees, left 80 degrees

## Strength

---

**Gross Muscle Tests Upper**

**Shoulder**

| | Right | Left |
|---|---|---|
| Shoulder Flexion | 5/5 | 5/5 |

**Advanced Spinal Rehabilitation, Inc.**
1585 Butte House Rd Ste A
Yuba City, CA 95993-2200
Phone: (530)751-9340
Fax: (530)673-0151

# Physical Therapy
## Initial
## Examination

**Patient Name:** Ferreira-De Silva, Alexandra
**Date of Birth:** 07/20/1977
**Document Date:** 09/24/2021

| | | |
|---|---|---|
| Shoulder Abduction | 5/5 | 5/5 |
| Shoulder Internal Rotation | 5/5 | 5/5 |
| Shoulder External Rotation | 5/5 | 5/5 |

**Gross Muscle Tests Lower**

**Hip**

| | Right | Left |
|---|---|---|
| Hip Flexion | 5/5 | 5/5 |
| Hip Extension | 5/5 | 5/5 |
| Hip Abduction | 5/5 | 5/5 |

**Neuro-Vascular**

**Complaints of any radicular symptoms in either extremity**

| | | |
|---|---|---|
| Complaints of any radicular symptoms in either extremity | No | |

**Lower Reflexes**

| | Right | Left |
|---|---|---|
| Knee Jerk (L4) | 2 + Normal | 2 + Normal |

| Neural Tissue Tension Upper | Right | Left |
|---|---|---|
| Median Nerve | Negative | Negative |
| Radial Nerve | Negative | Negative |
| Ulnar Nerve | Negative | Negative |

| | Right | Left |
|---|---|---|
| Lasegue's SLR | Negative | Negative |

**Special Tests**

| | | |
|---|---|---|
| Compression/Distraction | Compression: Negative  Distraction: Negative | |

| Labrum Integrity Hip | Right | Left |
|---|---|---|
| FABER | Negative | Negative |

**Palpation**

| | |
|---|---|
| Comments | Tightness and tenderness about C/S parapsinals, T/S paraspinals, rhomboids, upper trap, levator scap, L/S paraspinals |

## Assessment

**Assessment/Diagnosis:** Upon todays examination pt presents with signs and symptoms of chronic cervical/thoracic/lumbar pain due to muscle tightness, hypomobility cervical/thoracic/lumbar PA joints mobility, muscle guarding, limited mobility and history of pain. Pt is recommended to start self stretching and stabilization program to address current physical limitations. Pt MD recommended to start PT for her mid back which her neck and low back has also displays physical limitations. pt displays good strength with UE and LE but is most limited with muscle guarding and restriction. Pt is recommended to start physical therapy 2x4 weeks and has an excellent prognosis fo managing her physical limitations. If you have any questions of concerns please do not hesitate to contact our office. Thank you for your referral.

**Patient Clinical Presentation:** The clinical presentation is stable and/or uncomplicated.

Patient requires skilled therapy to restore prior level of function utilizing the treatment and modalities described in this plan of care.

**Patient Education:** Pt is recommended to perform HEP 2-3x/day as tolerated within pain free range

**Advanced Spinal Rehabilitation, Inc**
1585 Butte House Rd Ste A
Yuba City, CA 95993-2200
Phone: (530)751-9340
Fax: (530)673-0151

**Patient Name:** Ferreira De Silva, Alexandra
**Date of Birth:** 07/20/1977
**Document Date:** 09/24/2021

# Physical Therapy
## Initial
## Examination

Following the evaluation and extensive patient education regarding diagnosis, prognosis, and treatment goals, the patient (parent/guardian, power of attorney holder) actively participated in the creation of the current goals and agrees to the current treatment plan.

**Rehab Potential:** Good

**Contraindications to Therapy:** None

**Patient Problems:**
- Tightness and tenderness about C/S paraspinals, T/S paraspinals, rhomboids, upper trap, levator scap, L/S paraspinals
- Pain frequency constant in nature
- Pain with ADL's
- Limited cervical and shoulder AROM in all directions
- Limited lumbar AROM in all directions

**Long Term Goals:**
1: (4 Weeks) | Pt to be independent with HEP in order to manage symptoms at home
2: (4 Weeks) | Pt able to decrease back pain from constant to intermittent in nature
3: (4 Weeks) | Pt able to decrease back pain to 0-3/10
4: (4 Weeks) | Pt able to restore full C/S AROM in all directions without pain
5: (4 Weeks) | Pt able to restore full shoulder AROM in all directions without pain
6: (4 Weeks) | Pt able to restore full L/S AROM in all directions without pain
7: (4 Weeks) | Pt return to sitting, laying down, removing clothes, lifting purse without back pain

## Plan

**Frequency:** 2 times a week
**Duration:** 4 weeks
Medicaid Certification
**From:** 09/24/2021
**To:** 11/21/2021
**Plan:** Begin Plan as Outlined
**Treatment to be provided:**

**Procedures**

Therapeutic Exercises (ROM, Strength, Endurance, Stability), Therapeutic Activity (Work Specific, ADL Specific), Neuromuscular Rehabilitation (Balance/Proprioception Training, Muscle Re-Education), Manual Therapy (Soft Tissue Mobilization, Joint Mobilization, Spinal Mobilization, Manual Traction, Myofascial Release, Muscle Energy Techniques, Manual Resistive Exercise), Patient Education (Home Exercise Program, Postural Training, Ergonomics, Lifting Mechanics, Activity Modification), Self Care

**Modalities**

To Improve (Pain Relief), Electrical Stimulation, Cryotherapy, Hot Packs

Certification of Medical Necessity: It will be understood that the treatment plan mentioned above is certified medically necessary by the documenting therapist and referring physician mentioned in this report. Unless the physician indicates otherwise through written correspondence with our office, all further referrals will act as certification of medical necessity on the treatment plan indicated above.

Thank you for this referral. If you have questions regarding this plan of care, please contact me at (530)751-9340.

Please sign and return: Fax#: (530)673-0151

I certify the need for these services furnished under this plan of treatment and while under my care.

__I have no revisions to the plan of care.
__Revise the plan of care as follows_____
_____

_PT.,D.P.T_

**Jose Solis, PT, DPT**
PT292974 for State of CA
*Electronically Signed by Jose Solis, PT, DPT on September 29, 2021 at 9:55 am*

Physician Signature_____
K. Bath, FNP

Date:_____   Time:_____

 **Gmail**                                                      Alex S <9figar@gmail.com>

---

## notice case 2:21-cv-01208 litigation hold letter/EFFECTIVELY PRESERVING EVIDENCE
4 messages

---

**Alex S <9figar@gmail.com>**                                                    Thu, Aug 26, 2021 at 8:22 PM
To: "Sullivan, Anastasia" <asullivan@co.yuba.ca.us>, "Morawcznski, Nicholas" <nmorawcznski@co.yuba.ca.us>

Dear Sullivan, Anastasia

I am attaching the request of EFFECTIVELY PRESERVING OF EVIDENCE. As you can observe, I am sending it also to Capitan Gaza and undersheriff Nicholas Morawcznski.
Thank you so much for your time and consideration. Receive my best wishes of great night


Respectfully submitted by

Alexandra Ferreira da Silva

Phone: +1 530 315 21 90

**CONFIDENTIALITY NOTICE:** This transmission is intended only for the use of the persons or entities to whom it is addressed. It may contain legally privileged and confidential information. If you are not the intended recipient of the transmission, you are immediately notified that any dissemination, distribution, or copying of the contents of this transmission is strictly prohibited. You are further notified that transmission of the document to any persons or entities other than the intended recipients shall not be construed as a waiver of other limitations upon the privileged or confidential nature of the transmission or its contents. If you are not the intended recipient of this transmission, if you are not the person to whom it is addressed or if you have otherwise received this transmission in error, please notify me by telephone %30 315 2190 and return its contents to me at the address listed above. Thank you for your anticipated courtesy and cooperation.

         Reply          Forward


📄 **litigation hold letter.xps**

**Alex S** <9figar@gmail.com>                                              Thu, Aug 26, 2021 at 8:25 PM
To: "Garza, Allan" <agarza@co.yuba.ca.us>, "Sullivan, Anastasia" <asullivan@co.yuba.ca.us>

[Quoted text hidden]

---

☐   **litigation hold letter.xps**
     226K

---

**Sullivan, Anastasia** <asullivan@co.yuba.ca.us>                          Fri, Aug 27, 2021 at 8:45 AM
To: Alex S <9figar@gmail.com>
Cc: "Garza, Allan" <agarza@co.yuba.ca.us>, "Morawcznski, Nicholas" <nmorawcznski@co.yuba.ca.us>, "Larmour, Joseph" <jlarmour@co.yuba.ca.us>, "Ciccozzi, Michael" <mciccozzi@co.yuba.ca.us>

Ms. Ferreira da Silva,

Please note that neither myself or Capt. Garza is authorized to accept service on behalf of the County of Yuba. **The County does not consent to service by electronic means.** Please consult the Federal Rules of Civil Procedure and the Local Rules as to proper service of pleadings as your e-mails do not constitute sufficient service of process.

To date, we have no record of having been properly served with any documents related to any suit you may have filed against the County.

Best,

Anastasia Sullivan



**Anastasia M. Sullivan**

Deputy County Counsel

Office of the Yuba County Counsel

T: 530.749.7565

asullivan@co.yuba.ca.us

[Quoted text hidden]

---

**Alex S** <9figar@gmail.com>                                              Sun, Aug 29, 2021 at 4:42 PM
To: "Sullivan, Anastasia" <asullivan@co.yuba.ca.us>

Dear Anastasia, Sullivan
Thank you for your email. I am sending my request by regular mail as well..
If you don't mind, I would like to speak with you, I will call you tomorrow...
Recieve my best wishes for a blessed week.
[Quoted text hidden]
[Quoted text hidden]

**Litigation Hold Letter**

## REQUESTE FOR EVIDENCE PRESERVATION AND LITIGATION HOLDS

By

Alexandra Ferreira da Silva

10232 Luther Rd.

Live Oak California 95953.

August 18, 2021

> To:  Yuba County Jail
>
> 215 5th St,
>
> Marysville, CA 95901

**To whom it may concern**

I hereby request that the evidence related to the period of time when I was held by ICE (Immigration Customs Enforcement) in the Yuba County Jail to be maintained and that the destruction or loss of hard copy of documents or electronically stored information ("ESI"), Internal and external recording from security cameras should be prevented. Any information related to me regarding my stay at the facility needs to be kept and preserved. The information that needs to be Held is all information for the period of time between September 25, 2018 to March 27, 2020.

Federal Law: "Schwarzer, Tashima & Wagstaffe, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial, (The Rutter Group - June 2016 Update) Ch. 11(I)-C, ¶ 11:125. (Emphasis original.) Kronisch v. U.S., 150 F.3d 112, 126 (2nd Cir. 1998.) In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006.) In re Ethicon, Inc. Pelvic Repair Systems Product Liability Litig., 299 FRD 502, 512 (SD WV 2014.)

The December 2015 amendment to the Federal Rule of Civil Procedure ("FRCP") Rule 26 added the requirement that the parties specifically address the issue of ESI preservation as part of their initial Rule 26 conference and discovery plan. (See FRCP 26(f)(3).) The Rule 26 amendment highlights how potentially thorny the issue of evidence preservation has become in the modern digital age and how critical it is to be on top of the issue at the earliest possible stage. The Rule 26 amendment also emphasizes how important it is for the parties to address and discuss evidence preservation issues early in the case and work cooperatively to sort through them.

"Spoliation" is the willful destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. (See United States v. Kitsap Physicians Svs., 314 F.3d 995 (9th Cir. 2002).) Acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses, but spoliation of evidence may give rise to court imposed sanctions. Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001.) The court's authority to sanction a party for spoliation derives from two sources: the inherent power of federal courts to levy sanctions in

response to abusive litigation practices, and the availability of sanctions under FRCP Rule 37. (See Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006.)

With respect to ESI specifically, the December 2015 amendment to FRCP 37(e) changed the language of the rule to deal with the failure to preserve ESI, rather than the failure to produce ESI. FRCP 37(e) now addresses the sanctions that may be imposed for spoliation of ESI and the considerations that the courts must balance in determining if sanctions are appropriate. The spirit of the rule amendment is remediation as opposed to punishment. Upon finding prejudice to another party from loss of the information, a court may order measures no greater than necessary to cure the prejudice. (FRCP 37(e)(1).) Only upon finding that a party acted with the intent to deprive another party of the information's use in the litigation may a court: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment. (FRCP 37(e)(2)(A)–(C).) The Advisory Committee Notes to the December 2015 FRCP amendments explicitly state that the rule does not apply when information is lost before a duty to preserve arises.

California State Law

Unlike federal discovery law, the California Civil Discovery Act ("Discovery Act") does not specifically prohibit spoliation of evidence before a lawsuit has been filed or before a discovery request, however, California courts may issue an injunction in aid of discovery, requiring a party to preserve relevant evidence in its possession for discovery purposes. (See Dodge, Warren & Peters Inc. v. Riley (2003) 105 Cal.App.4th 1414, 1419.) Disobedience of such a court order constitutes an abuse of discovery for which the court may impose sanctions under California Code of Civil Procedure ("CCP") § 2023.030. CCP § 2023.030 provides for the imposition of monetary sanctions, issue sanctions, evidence sanctions, terminating sanctions and contempt sanctions. (CCP § 2023.030(a)–(e).)

Like federal law, there is no tort cause of action for the intentional destruction of evidence after litigation has commenced. (See Williams v. Russ (2008) 167 Cal.App.4th 1215, 1223; Cedars-Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1.) However, such intentional destruction of evidence is a misuse of the discovery process that is subject to a broad range of sanctions under CCP § 2023.030 as described above. Id. The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. Doppes v. Bentley Motors, Inc. (2009) 174 Cal.App.4th 967, 992. Also consistent with federal law, discovery sanctions under California law are intended to remedy discovery abuse, not to punish the offending party. Williams v. Russ, supra, 167 Cal.App.4th at 1223. The trial court is to consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should attempt to tailor the sanction to the harm caused by the withheld discovery. Doppes v. Bentley Motors, Inc., supra, 174 Cal.App.4th at 992.

In addition, where there is spoliation of evidence, the prejudiced party may be entitled to an adverse inference jury instruction. CACI 204 entitled "Willful Suppression of Evidence" states: "You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."

With respect to ESI specifically, CCP § 2023.030(f)(1) states that "…absent exceptional circumstances, the court shall not impose sanctions on a party or any attorney of a party for failure to provide electronically stored information that has been lost, damaged, altered, or overwritten, as the result of the routine, good faith operation of an electronic information system." CCP § 2023.030(f)(2) clarifies, however, that "[t]his subdivision shall not be construed to alter any obligation to preserve discoverable information."

## Litigation Hold Letters

While sanctions for spoliation under both federal and state law are intended to be remedial and not for punishment, the failure to preserve evidence can result in severe consequences for a party failing to properly preserve and/or prevent destruction of evidence.

Respectfully submitted by

Alexandra Ferreira da Silva

August 26, 2021

 **Gmail**                                                              Alex S <9figar@gmail.com>

---

### notice case 2:21-cv-01208 litigation hold letter/EFFECTIVELY PRESERVING EVIDENCE
1 message

---

**Alex S <9figar@gmail.com>**                                                   Fri, Oct 1, 2021 at 2:23 AM
To: "Jonathan K. (CIV) Ross" <Jonathan.K.Ross@usdoj.gov>

Dear Ross

I am attaching the request for EFFECTIVELY PRESERVING OF EVIDENCE. As you can observe, the records were requested a couple of months ago and it wasn't provided.
Thank you so much for your time and consideration.  Receive my best wishes for a great day


Respectfully submitted by

Alexandra Ferreira da Silva

Phone: +1 530 315 21 90


**CONFIDENTIALITY NOTICE:** This transmission is intended only for the use of the persons or entities to whom it is addressed. It may contain legally privileged and confidential information. If you are not the intended recipient of the transmission, you are immediately notified that any dissemination, distribution, or copying of the contents of this transmission is strictly prohibited. You are further notified that transmission of the document to any persons or entities other than the intended recipients shall not be construed as a waiver of other limitations upon the privileged or confidential nature of the transmission or its contents. If you are not the intended recipient of this transmission, if you are not the person to whom it is addressed or if you have otherwise received this transmission in error, please notify me by telephone %30 315 2190 and return its contents to me at the address listed above. Thank you for your anticipated courtesy and cooperation.

📄 **litigation hold letter.docx.pdf**
101K

### Litigation Hold Letter

## REQUESTE FOR EVIDENCE PRESERVATION AND LITIGATION HOLDS

By

Alexandra Ferreira da Silva

10232 Luther Rd unit B.

Live Oak California 95953.

August 18, 2021

To: ICE and DHS

Care of: Mr. Jonathan Kevin Ross, Esquire, Trail Attorney

DJO – US Division Office of immigration Litigation

P.O. Box 878, Benjamin Franklin Station

Washington, DC 20044

**To whom it may concern**

I hereby request that the evidence related to the period of time when I was held by ICE (Immigration Customs Enforcement) in the Yuba County Jail to be maintained and that the destruction or loss of hard copy of documents or electronically stored information ("ESI"), Internal and external recording from security cameras should be prevented. Any information related to me regarding my stay at any ICE facility where I was held needs to be kept and preserved. The information that needs to be Held is all information for the period of time between October 13, 2017 to May 7, 2020.

Federal Law: "Schwarzer, Tashima & Wagstaffe, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial, (The Rutter Group - June 2016 Update) Ch. 11(I)-C, ¶ 11:125. (Emphasis original.) Kronisch v. U.S., 150 F.3d 112, 126 (2nd Cir. 1998.) In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006.) In re Ethicon, Inc. Pelvic Repair Systems Product Liability Litig., 299 FRD 502, 512 (SD WV 2014.)

The December 2015 amendment to the Federal Rule of Civil Procedure ("FRCP") Rule 26 added the requirement that the parties specifically address the issue of ESI preservation as part of their initial Rule 26 conference and discovery plan. (See FRCP 26(f)(3).) The Rule 26 amendment highlights how potentially thorny the issue of evidence preservation has become in the modern digital age and how critical it is to be on top of the issue at the earliest possible stage. The Rule 26 amendment also emphasizes how important it is for the parties to address and discuss evidence preservation issues early in the case and work cooperatively to sort through them.

The December 2015 amendment to the Federal Rule of Civil Procedure ("FRCP") Rule 26 added the requirement that the parties specifically address the issue of ESI preservation as part of their initial Rule 26 conference and discovery plan. (See FRCP 26(f)(3).) The Rule 26 amendment highlights how potentially thorny the issue of evidence preservation has become in the modern digital age and how critical it is to be on top of the issue at the earliest possible stage. The Rule 26 amendment also emphasizes how important it is for the parties to address and discuss evidence preservation issues early in the case and work cooperatively to sort through them.

"Spoliation" is the willful destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. (See United States v. Kitsap Physicians Svs., 314 F.3d 995 (9th Cir. 2002).) Acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses, but spoliation of evidence may give rise to court imposed sanctions. Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001.) The court's authority to sanction a party for spoliation derives from two sources: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under FRCP Rule 37. (See Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006.)

With respect to ESI specifically, the December 2015 amendment to FRCP 37(e) changed the language of the rule to deal with the failure to preserve ESI, rather than the failure to produce ESI. FRCP 37(e) now addresses the sanctions that may be imposed for spoliation of ESI and the considerations that the courts must balance in determining if sanctions are appropriate. The spirit of the rule amendment is remediation as opposed to punishment. Upon finding prejudice to another party from loss of the information, a court may order measures no greater than necessary to cure the prejudice. (FRCP 37(e)(1).) Only upon finding that a party acted with the intent to deprive another party of the information's use in the litigation may a court: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment. (FRCP 37(e)(2)(A)–(C).) The Advisory Committee Notes to the December 2015 FRCP amendments explicitly state that the rule does not apply when information is lost before a duty to preserve arises.

California State Law

Unlike federal discovery law, the California Civil Discovery Act ("Discovery Act") does not specifically prohibit spoliation of evidence before a lawsuit has been filed or before a discovery request, however, California courts may issue an injunction in aid of discovery, requiring a party to preserve relevant evidence in its possession for discovery purposes. (See Dodge, Warren & Peters Inc. v. Riley (2003) 105 Cal.App.4th 1414, 1419.) Disobedience of such a court order constitutes an abuse of discovery for which the court may impose sanctions under California Code of Civil Procedure ("CCP") § 2023.030. CCP § 2023.030 provides for the imposition of monetary sanctions, issue sanctions, evidence sanctions, terminating sanctions and contempt sanctions. (CCP § 2023.030(a)-(e).)

Like federal law, there is no tort cause of action for the intentional destruction of evidence after litigation has commenced. (See Williams v. Russ (2008) 167 Cal.App.4th 1215, 1223; Cedars-Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1.) However, such intentional destruction of evidence is a misuse of the discovery process that is subject to a broad range of sanctions under CCP § 2023.030 as described above. Id. The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. Doppes v. Bentley Motors, Inc. (2009) 174 Cal.App.4th 967, 992. Also consistent with federal law, discovery sanctions under California law are intended to remedy discovery abuse, not to punish the offending party. Williams v. Russ, supra, 167 Cal.App.4th at 1223. The trial court is to consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should attempt to tailor the sanction to the harm caused by the withheld discovery. Doppes v. Bentley Motors, Inc., supra, 174 Cal.App.4th at 992.

In addition, where there is spoliation of evidence, the prejudiced party may be entitled to an adverse inference jury instruction. CACI 204 entitled "Willful Suppression of Evidence" states: "You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."

With respect to ESI specifically, CCP § 2023.030(f)(1) states that "…absent exceptional circumstances, the court shall not impose sanctions on a party or any attorney of a party for failure to provide electronically stored information that has been lost, damaged, altered, or overwritten, as the result of the routine, good faith operation of an electronic information system." CCP § 2023.030(f)(2) clarifies, however, that "[t]his subdivision shall not be construed to alter any obligation to preserve discoverable information."

## Litigation Hold Letters

While sanctions for spoliation under both federal and state law are intended to be remedial and not for punishment, the failure to preserve evidence can result in severe consequences for a party failing to properly preserve and/or prevent destruction of evidence.

Respectfully submitted by

Alexandra Ferreira da Silva

October 1, 2021

6 – Form - Claim for damage, injury, or death

7 – Pictures 1– hallway/ area where physical assault took place

8 – Pictures 1– hallway/ area S-tank where harassments and psychological tort took place

9 –   Overview about officer Morgan accusation

9 – Several issues at Yuba County Jail

10  – Accusation of fraud – ICE

11 –  F1 Visa General information

12 –  Medico record

13 – Litigation hold letter

14 –Litigation letter / notification  parties

14 –   Proof of service

**❓ FAQs**    **📧 Subscribe to Our Email Lists**    **➡ Log in**



**About Us** ▼    **Advocacy** ▼

**Find Legal Help** ▼    **Immigration Issues**

**Resource Library** ▼    **Training** ▼

**👤 DONATE**

# Biden Administration Announces New Prosecutorial Discretion Policy

**Author:** Rebecca Scholtz

**Last Updated:** June 28, 2021

**Topics:** Removal Proceedings,  Prosecutorial Discretion,  Enforcement and Detention

### Background on Biden Administration Immigration Enforcement Priorities

On his first day in office, President Biden revoked former President Trump's sweeping executive order on immigration enforcement and directed executive agencies to issue new guidance advancing the Biden administration's values and immigration policies —"protect[ing] national and border security, address[ing] the humanitarian challenges at the southern border, . . . . ensur[ing] public health and safety," and "adher[ing] to due

process of law as we safeguard the dignity and well-being of all families and

communities." That same day, the acting Department of Homeland Security, or DHS, secretary issued a memo establishing three interim immigration enforcement priorities:

1. National security (related primarily to terrorism and espionage);
2. Border security (related to noncitizens who entered on or after Nov. 1, 2020); and
3. Public safety (applying to noncitizens with "aggravated felony" convictions who also met additional criteria).

Immigration and Customs Enforcement, or ICE, subsequently issued interim guidance requiring ICE officials to get pre-approval for enforcement and removal actions against non-priority individuals. However, the ICE guidance expanded the public safety priority category to cover those who pose a threat to public safety and (1) have an "aggravated felony" conviction, (2) have certain specified gang-related convictions, or (3) are at least 16 years old and intentionally participated in gang activity.

## May 2021 OPLA Memo On

May 27, 2021, ICE Principal Legal Advisor John D. Trasviña issued a memo to ICE Office of the Principal Legal Advisor, or OPLA, attorneys providing interim guidance on exercising prosecutorial discretion in removal proceedings. The memo discusses six ways for OPLA to exercise prosecutorial discretion, by: (1) not filing Notices to Appear, or NTAs; (2) agreeing to administrative closure or continuances of a noncitizen's removal proceedings; (3) moving to dismiss removal proceedings; (4) not pursuing appeals; (5) stipulating to issues, joining motions to grant relief, and joining motions to reopen or remand; and (6) stipulating to bond amounts. Generally, the memo encourages OPLA attorneys to focus agency resources on cases that fall within one of the three priority categories, and to exercise prosecutorial discretion in non-priority cases. The memo also lists non-exclusive mitigating and aggravating factors that OPLA attorneys should consider in evaluating requests for prosecutorial discretion.

On the topic of dismissal of removal proceedings, the memo describes five types of cases that "generally will merit dismissal in the absence of serious aggravating factors": (1) military service members and their immediate relatives; (2) noncitizens likely to be granted temporary or permanent relief, listing as examples those with approved I-130

petitions who are *prima facie* eligible for adjustment of status or consular processing and

those *prima facie* eligible for Temporary Protected Status or Special Immigrant Juvenile Status; (3) noncitizens presenting compelling humanitarian factors; (4) noncitizens whose cases implicate significant law enforcement or other government interests; and (5) long-term lawful permanent residents.

Regarding motions to reopen, the memo states that further guidance will be forthcoming but that in the meantime "OPLA should continue addressing requests for joint motions to reopen on a case-by-case basis, giving favorable consideration to cases that are not priorities and where dismissal would be considered under [the memo's section on dismissal]." The week after publishing the interim guidance, OPLA announced a policy on joining motions to reopen in certain cases impacted by the Supreme Court's April 29 decision in *Niz-Chavez v. Garland*. The *Niz-Chavez* decision expanded the group of noncitizens eligible for cancellation of removal by ruling that the NTA "stop-time rule" used to calculate whether a noncitizen has accrued the required years of continuous physical presence or continuous residence was not triggered if the NTA the noncitizen received lacked the time or place of the immigration court hearing—even if the immigration court later provided this information to the noncitizen through a hearing notice. Under OPLA's *Niz-Chavez* policy, for 180 days from the date of the *Niz-Chavez* decision OPLA attorneys will "presumptively exercise their prosecutorial discretion to join or not oppose a motion to reopen filed by" a noncitizen impacted by the *Niz-Chavez* decision who demonstrates *prima facie* eligibility for cancellation.

## Other Developments

Following the May 2021 OPLA Memo Following the issuance of the prosecutorial discretion memo, OPLA published a webpage providing details for how noncitizens should make prosecutorial discretion requests. The webpage includes email addresses for each OPLA office that noncitizens can use to submit prosecutorial discretion requests.

On June 11, 2021, the Executive Office for Immigration Review, or EOIR, issued a policy memo on the "Effect of Department of Homeland Security Enforcement Priorities." The memo notes that there are 1.3 million cases pending in immigration court and before the Board of Immigration Appeals, or BIA, and directs immigration judges, or IJs, and the BIA to "use adjudication resources to resolve questions before them in cases that remain in

dispute." The memo suggests that IJs should inquire on the record at hearings whether
the case remains a removal priority, whether DHS intends to exercise prosecutorial
discretion, and what the respondent's position is. The memo states that for cases on
appeal, the BIA "may solicit supplemental briefing from the parties regarding whether the
case remains a removal priority for ICE or whether the parties intend to seek or exercise
some form of prosecutorial discretion."

## Practice Tips in Light of Developments in Prosecutorial Discretion

Policy Practitioners should assess cases of clients in removal proceedings to consider
whether a prosecutorial discretion request under the agency's new guidance would
benefit the client. While OPLA encourages noncitizens to make prosecutorial discretion
requests at the earliest point possible in the case, it is possible to make such requests at
any point in proceedings, including in case that are on appeal at the BIA or where a
noncitizen wishes to reopen a case with a final removal order.

Practitioners should ascertain and follow the particular OPLA office's "standard operating
procedures" governing prosecutorial discretion requests. The OPLA prosecutorial
discretion webpage notes that "[t]he more forthcoming a noncitizen is in submitting
information related to his or her request for PD (including information detailing both the
equities in the case and potentially negative considerations), the more readily OPLA
attorneys will be able to assess the totality of the circumstances and make informed
discretionary judgments."

In addition to making prosecutorial discretion requests with OPLA, practitioners should be
familiar with other ICE tools that facilitate individualized review of cases, particularly for
individuals who are detained or facing imminent removal. These include the ICE case
review process, the ICE Enforcement and Removal Operations, or ERO, Detention
Reporting and Information Line, and case assistance requests through the ERO
Ombudsman.

Practitioners should stay tuned for future guidance from DHS. Advocates anticipate that
the DHS secretary will issue further guidance on completion of his review of immigration
policies and practices after which the interim policies discussed in this article may be
revised.

# Related Content

## The Board of Immigration Appeals Recognizes Tardiness May Present Exceptional Circumstances for Reopening an In Absentia Removal Order

### Posted on July 28, 2021

The Board of Immigration Appeals, or BIA, issued a published decision establishing that the "exceptional circumstances" in absentia reopening provision may encompass situations that led to a respondent's late arrival to court and, therefore, absence at a removal hearing. This decision provides a non-exhaustive list of factors and corroborative evidence for immigration judges to consider when adjudicating late arrival in absentia motions to reopen on a case-by-case basis.

Removal Proceedings, Litigation, Asylum and Refugee Law, Humanitarian Relief

## Supreme Court Decision Expands Eligibility for Cancellation of Removal

### Posted on May 27, 2021

In Niz-Chavez v. Garland, the U.S. Supreme Court ruled that the "stop-time rule" — used to calculate the 10-year continuous physical presence requirement for non-lawful permanent resident cancellation of removal and the 7-year continuous residence requirement for permanent resident cancellation of removal — is only triggered when the Department of Homeland Security serves a single "Notice to Appear" that contains all of the statutorily required information, including the time and place of the immigration court

hearing. As a result of the Court's April 29, 2021 decision, noncitizens with deficient NTAs who have since completed the required period of time in the United States for cancellation of removal may be eligible to apply for that form of relief, if they meet the other requirements.

Case 2:21-cv-01268-DJC-CKD   Document 12   Filed 10/01/21   Page 183 of 203

**Practice Pointer Temporary Protected Status: Navigating Removal Proceedings, Dual Nationality, and Asylum**

**Posted on March 24, 2021**

Despite the welcome news of these additional TPS designations, many Venezuelan nationals, Burmese nationals, and stateless people who last resided in Venezuela or Burma are currently in removal proceedings or face removal proceedings.

Asylum and Refugee Law, Temporary Protected Status and Deferred Enforced Departure, Removal Proceedings

# Promoting the Dignity of Immigrants with Affordable Legal Expertise

As it has for more than 30 years, CLINIC will fight for the rights of immigrants. CLINIC trains legal representatives who provide **high-quality** and **affordable** immigration legal services. We develop and sustain a network of nonprofit programs that serve close to 500,000 immigrants every year. We cultivate projects that support and defend vulnerable immigrant populations by:

- providing direct representation for asylum seekers at the U.S.-Mexico border and educating them about their rights;
- reuniting formerly separated families;
- increasing legal representation for those in removal proceedings and in detention;

- providing public education on immigration law and policies; and
- advocating for fair and just immigration policies that acknowledge the inherent dignity and value of all people.

History has taught us that people who step up can make a difference. **We hope you will join us.**

## ❤ **Make a Monthly Donation**

- It's quick and simple

## Support a Scholarship

- Help representatives gain crucial training

# About the Catholic Legal Immigration Network, Inc.

Embracing the Gospel value of welcoming the stranger, CLINIC promotes the dignity and protects the rights of immigrants in partnership with a dedicated network of Catholic and community legal immigration programs. We are based out of Silver Spring, Maryland (Washington, D.C. metropolitan area), with an office in Oakland, California, and additional staff working from locations throughout the country. Questions and inquiries can be sent to national@cliniclegal.org.

## National Office

8757 Georgia Avenue, Suite 850, Silver Spring, MD 20910
Main Phone: (301) 565-4800 / Main Fax: (301) 565-4824

# Stay Up-to-Date

## Subscribe to Our Email Lists

Receive daily immigration news, agency updates, advocacy alerts and information about our latest trainings and resources. It only takes a moment to sign up.

## Use Your Affiliate Benefits

If you are a CLINIC affiliate, be sure to regularly use your benefits. The page includes exclusive content and tools that will help you as a legal practitioner. Interested in learning more about affiliation? Read through our frequently asked questions to get started.

## Additional Items

Stories | Press Releases | Financials | Annual Reports

Catholic Identity | Other Ways to Donate

Tweets by @cliniclegal

 

**CLINIC**
@cliniclegal
Replying to @cliniclegal
"CLINIC applauds Ms. Jaddou's nomination and looks forward to

her swift confirmation. She will bring a renewed commitment to
our shared goal of being a fair, equitable and welcoming United
States."

30s

 **CLINIC**
@cliniclegal

Embed

View on Twitter

## Connect with Us on Social Media



   

2021 © Catholic Legal Immigration Network, Inc. | **Privacy Policy**



OOD
PM 21-25

Effective:    June 11, 2021

To:        All Immigration Court Personnel & Board of Immigration Appeals Personnel
From:      Jean King, Acting Director      **JEAN KING**  Digitally signed by JEAN
                                                        KING
                                                        Date: 2021.06.11
                                                        16:27:19 -04'00'
Date:      June 11, 2021

## EFFECT OF DEPARTMENT OF HOMELAND SECURITY
## ENFORCEMENT PRIORITIES

| | |
|---|---|
| PURPOSE: | Provides EOIR policies regarding the effect of Department of Homeland Security enforcement priorities and initiatives. |
| OWNER: | Office of the Director |
| AUTHORITY: | 8 C.F.R. § 1003.0(b) |
| CANCELLATION: | None. |

### I.  Introduction

President Biden issued Executive Order 13993 on January 20, 2021, and directed relevant agencies to take appropriate action to review and "reset the policies and practices for enforcing civil immigration laws to align enforcement" with the Administration's priorities "to protect national and border security, address the humanitarian challenges at the southern border, and ensure public health and safety." Exec. Order No. 13993, 86 Fed. Reg. 7,051 (Jan. 20, 2021).

Accordingly, the Department of Homeland Security (DHS) has issued a number of memoranda and guidance documents regarding its enforcement priorities and framework for the exercise of prosecutorial discretion.[1] Those memoranda establish the DHS general enforcement and removal priorities as three categories of cases of noncitizens who present risks to (1) national security, (2) border security, and (3) public safety.[2]

---

[1] *See, e.g.*, Memorandum from John D. Tasviña, Principal Legal Advisor, ICE, Office of the Principal Legal Advisor (OPLA), to All OPLA Att'ys, *Interim Guidance to OPLA Att'ys Regarding Civil Immigr. Enf't and Removal Policies and Priorities* (May 27, 2021), *available at https://www.ice.gov/doclib/about/offices/opla/OPLA-immigration-enforcement_interim-guidance.pdf*; Memorandum from Tae D. Johnson, Acting Dir., ICE, to All ICE Emps., *Interim Guidance: Civil Immigr. Enf't and Removal Priorities* (Feb. 18, 2021), *available at https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf*.
[2] These DHS memoranda and DHS priorities do not change EOIR's current adjudication priorities, which remain in effect. *See, e.g.*, PM 21-23, *Dedicated Docket* (May 28, 2021); Exec. Office for Immigr. Rev. Mem., *Case Priorities and Immigration Court Performance Measures* (Jan. 2018).

1

Through individualized review of pending cases, DHS, U.S. Immigration and Customs Enforcement (ICE), attorneys will be determining which cases are enforcement priorities and which are not. Overall, these memoranda explain that DHS will exercise discretion based on individual circumstances and pursue these priorities at all stages of the enforcement process. This includes a wide range of enforcement decisions involving proceedings before EOIR, such as deciding whether to issue, reissue, serve, file, or cancel Notices to Appear; to oppose or join respondents' motions to continue or to reopen; to request that proceedings be terminated or dismissed; to pursue an appeal before the Board of Immigration Appeals (BIA); and to agree or stipulate to bond amounts or other conditions of release. Accordingly, these memoranda are likely to affect many cases currently pending on the immigration courts' and BIA's dockets.

## II.   Role of the EOIR Adjudicator

The role of the immigration court and the BIA, like all other tribunals, is to resolve disputes. *Cf.* 8 C.F.R. §§ 1003.1(d) ("The Board shall resolve *the questions before it* in a manner that is timely, impartial, and consistent with the Act and regulations."), 1003.10(b) ("In all cases, immigration judges shall seek to resolve *the questions before them* in a timely and impartial manner consistent with the Act and regulations.") (emphasis added). At the present time, there are over 1.3 million combined cases pending before the immigration courts[3] and the BIA.[4] In light of the DHS memoranda, it is imperative that EOIR's adjudicators use adjudication resources to resolve questions before them in cases that remain in dispute.

### A. Immigration Court

Immigration judges should be prepared to inquire, on the record, of the parties appearing before them at scheduled hearings as to whether the case remains a removal priority for ICE and whether ICE intends to exercise some form of prosecutorial discretion, for example by requesting that the case be terminated or dismissed, by stipulating to eligibility for relief or, where permitted by case law, by agreeing to the administrative closure of the case.[5] The judge should ask the respondent or his or her representative for the respondent's position on these matters, and take that position into account, before taking any action.

In addition, immigration judges are encouraged to use all docketing tools available to them to ensure the fair and timely resolution of cases before them.

---

[3] Exec. Office for Immigr. Rev., *Adjudication Statistics: Pending Cases, New Cases, and Total Completions*, Apr. 19, 2021, *available at https://www.justice.gov/eoir/page/file/1242166/download.*

[4] Exec. Office for Immigr. Rev., *Adjudication Statistics: Case Appeals Filed, Completed, and Pending*, Apr. 19, 2021, *available at https://www.justice.gov/eoir/page/file/1248501/download.*

[5] Administrative closure is currently permitted in the Third, Fourth, and Seventh Circuits. *See Arcos Sanchez v. Att'y Gen. U.S.A.*, 997 F.3d 113 (3d Cir. 2021); *Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020); *Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019).  Administrative closure is currently permitted in the Sixth Circuit, but only to allow respondents to apply with U.S. Citizenship and Immigration Services for provisional unlawful presence waivers. *See Garcia-DeLeon v. Garland*, __ F.3d __, 2021 WL 2310055 (6th Cir., June 4, 2021).  Administrative closure is not currently permitted in the other circuits. *See Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018).

## B. Board of Immigration Appeals

Appellate immigration judges should be prepared to review and adjudicate motions from DHS regarding prosecutorial discretion. In addition, appellate immigration judges may solicit supplemental briefing from the parties regarding whether the case remains a removal priority for ICE or whether the parties intend to seek or exercise some form of prosecutorial discretion. *See* 8 C.F.R. § 1003.1(e)(9) ("[T]he Board may rule, in the exercise of its discretion . . . , on any issue, argument, or claim not raised by the parties, and the Board may solicit supplemental briefing from the parties on the issues to be considered before rendering a decision.").

## III.  Conclusion

EOIR expects the parameters of the new DHS memoranda to focus DHS resources on cases that meet the DHS-determined priorities. All EOIR adjudicators are encouraged to use docketing practices that ensure respondents receive fair and timely adjudications, and act consistently with the role of the immigration courts and the BIA in resolving disputes. That includes disposing of cases as appropriate, based on the specific circumstances of the individual matter, with consideration of ICE's determinations that 1) a case does not fit within the Secretary's enforcement priorities, and 2) accordingly, pursuit is no longer in the best interest of the Government. If you have any questions, please contact your Assistant Chief Immigration Judge or the Chief Appellate Immigration Judge.

Nothing in this PM is intended to replace independent research, the application of case law and regulations to individual cases, or the decisional independence of immigration judges and appellate immigration judges as defined in 8 C.F.R. §§ 1003.1(d)(1)(ii), 1003.10.

*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

May 27, 2021

**MEMORANDUM FOR:**     All OPLA Attorneys

**FROM:**     John D. Trasviña
Principal Legal Advisor

JOHN D
TRASVINA      Digitally signed by JOHN D
TRASVINA
Date: 2021.05.27 07:04:19 -07'00'

**SUBJECT:**     Interim Guidance to OPLA Attorneys Regarding Civil
Immigration Enforcement and Removal Policies and Priorities

On January 20, 2021, President Biden issued Executive Order (EO) 13993, *Revision of Civil
Immigration Enforcement Policies and Priorities*, 86 Fed. Reg. 7051 (Jan. 20, 2021), which
articulated foundational values and priorities for the Administration with respect to the
enforcement of the civil immigration laws. On the same day, then-Acting Secretary of Homeland
Security David Pekoske issued a memorandum titled, *Review of and Interim Revision to Civil
Immigration Enforcement and Removal Policies and Priorities* (Interim Memorandum).

The Interim Memorandum did four things. First, it directed a comprehensive Department of
Homeland Security (DHS or Department)-wide review of civil immigration enforcement
policies. Second, it established interim civil immigration enforcement priorities for the
Department. Third, it instituted a 100-day pause on certain removals pending the review. [1]
Fourth, it rescinded several existing policy memoranda, including a prior U.S. Immigration and
Customs Enforcement (ICE) Office of the Principal Legal Advisor (OPLA) memorandum, as
inconsistent with EO 13993. [2] The Interim Memorandum further directed that ICE issue interim
guidance implementing the revised enforcement priorities and the removal pause.

On February 18, 2021, ICE Acting Director Tae D. Johnson issued ICE Directive No. 11090.1,

---

[1] On January 26, 2021, a federal district court issued a temporary restraining order (TRO) enjoining DHS and its
components from enforcing and implementing Section C of the Interim Memorandum titled, *Immediate 100-Day
Pause on Removals*. *See Texas v. United States*, --- F. Supp. 3d ---, 2021 WL 247877 (S.D. Tex. 2021); *see also
Texas v. United States*, 2021 WL 411441 (S.D. Tex. Feb. 8, 2021) (extending TRO to February 23, 2021). On
February 23, 2021, the district court issued an order preliminarily enjoining DHS from "enforcing and implementing
the policies described in . . . Section C." *Texas v. United States*, 2021 WL 723856 (S.D. Tex. Feb. 23, 2021). In
light of the expiration of the 100-day period described in Section C, that case has been dismissed as moot. Similarly,
in light of the preliminary injunction, and the fact that the 100-day period described in the Interim Memorandum has
now expired, this interim OPLA guidance does not implement Section C of the Interim Memorandum.

[2] The Interim Memorandum revoked, as inconsistent with EO 13993, the memorandum from former Principal Legal
Advisor Tracy Short, *Guidance to OPLA Attorneys Regarding the Implementation of the President's Executive
Orders and the Secretary's Directives on Immigration Enforcement* (Aug. 15, 2017). OPLA attorneys should no
longer apply that prior guidance.

www.ice.gov
**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD    Document 12    Filed 10/01/21    Page 191 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 2 of 13

*Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Johnson
Memorandum). And, on May 27, 2021, Acting General Counsel Joseph B. Maher issued a
memorandum titled, *Implementing Interim Civil Immigration Enforcement Policies and
Priorities* (Maher Memorandum). In accordance with these memoranda, and pending the
outcome of the Secretary's review and any resulting policy guidance, I am providing this
additional interim direction to OPLA attorneys to guide them in appropriately executing the
Department's and ICE's interim enforcement and removal priorities and exercising prosecutorial
discretion.

Prosecutorial discretion is an indispensable feature of any functioning legal system. The exercise
of prosecutorial discretion, where appropriate, can preserve limited government resources,
achieve just and fair outcomes in individual cases, and advance the Department's mission of
administering and enforcing the immigration laws of the United States in a smart and sensible
way that promotes public confidence. In performing their duties, including through
implementation of this memorandum, OPLA attorneys should remain mindful that
"[i]mmigration enforcement obligations do not consist only of initiating and conducting prompt
proceedings that lead to removals at any cost. Rather, as has been said, the government wins
when justice is done."[3] As a result, they are both authorized by law and expected to exercise
discretion in accordance with the factors and considerations set forth in the Interim
Memorandum, the Johnson Memorandum, the Maher Memorandum, and in this guidance at all
stages of the enforcement process and at the earliest moment practicable in order to best
conserve prosecutorial resources and in recognition of the important interests at stake.

## I.    Enforcement and Removal Priority Cases

The Johnson Memorandum identifies three categories of cases that are presumed to be
enforcement and removal priorities for ICE personnel. Subject to preapproval from supervisory
personnel, other civil immigration enforcement or removal actions also may be deemed
priorities. OPLA attorneys assigned to handle exclusion, deportation, and removal proceedings
are directed to prioritize agency resources consistent with those presumed priorities and other
matters approved as priorities under the Johnson Memorandum or by their Chief Counsel. The
presumed priority categories are:

1.    **National Security**. Noncitizens[4] who have engaged in or are suspected of

---

[3] *Matter of S-M-J-*, 21 I&N Dec. 722, 727 (BIA 1997) (en banc). In remarks delivered at the Second Annual
Conference of United States Attorneys more than 80 years ago, Attorney General Robert H. Jackson said, "[n]othing
better can come out of this meeting of law enforcement officers than a rededication to the spirit of fair play and
decency that should animate the federal prosecutor. Your positions are of such independence and importance that
while you are being diligent, strict, and vigorous in law enforcement you can also afford to be just. Although the
government technically loses its case, it has really won if justice has been done." Robert H. Jackson, *The Federal
Prosecutor*, 24 J. AM. JUD. SOC'Y 18, 18-19 (1940).

[4] Consistent with ICE guidance, this memorandum uses the word "noncitizen" to refer to individuals described in
section 101(a)(3) of the Immigration and Nationality Act (INA). *See* Memorandum from Tae Johnson, ICE Acting
Director, *Updated Terminology for Communications and Materials* (Apr. 19, 2021). OPLA attorneys should
familiarize themselves with this ICE guidance and use the appropriate terminology set forth therein when engaged in
outreach efforts, drafting internal documents, and communicating with stakeholders, partners, and the general

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD Document 12 Filed 10/01/21 Page 192 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 3 of 13

terrorism or espionage or terrorism-related or espionage-related activities, or whose apprehension, arrest, or custody, is otherwise necessary to protect the national security of the United States.[5]

2. **Border Security**. Noncitizens who were apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020, or who were not physically present in the United States before November 1, 2020.

3. **Public Safety**. Noncitizens who have been convicted of an "aggravated felony," as that term is defined in section 101(a)(43) of the Immigration and Nationality Act (INA), or who have been convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or who are not younger than 16 years of age and intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization; **and** are determined to pose a threat to public safety.[6]

Neither the presumed priorities nor the guidance regarding other priority cases subject to preapproval are intended to require or prohibit taking or maintaining a civil immigration enforcement or removal action against any individual noncitizen. Rather, OPLA attorneys are expected to exercise their discretion thoughtfully, consistent with ICE's important national security, border security, and public safety mission. Civil immigration enforcement and removal efforts involving a noncitizen whose case fits within the three areas just listed are presumed to be a justified allocation of ICE's limited resources. Enforcement and removal efforts may also be justified in other cases, under appropriate circumstances.[7] Prioritization of finite agency

---

public. Formal legal terminology (e.g., "alien," "alienage") should continue to be used by OPLA attorneys when appearing before judicial and quasi-judicial tribunals, and when quoting or citing to sources of legal authority or other official documents like immigration forms.

[5] For purposes of the national security presumed enforcement priority, the terms "terrorism or espionage" and "terrorism-related or espionage-related activities" should be applied consistent with (1) the definitions of "terrorist activity" and "engage in terrorist activity" in section 212(a)(3)(B)(iii)-(iv) of the INA, and (2) the manner in which the term "espionage" is generally applied in the immigration laws. In evaluating whether a noncitizen's "apprehension, arrest, and/or custody, or removal is otherwise necessary to protect" national security, officers and agents should determine whether a noncitizen poses a threat to United States sovereignty, territorial integrity, national interests, or institutions. General criminal activity does not amount to a national security threat.

[6] In evaluating whether a noncitizen currently "pose[s] a threat to public safety," consideration should be given to the extensiveness, seriousness, and recency of the criminal activity, as well as to mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available. *See* Johnson Memorandum at 5.

[7] As reflected in the Johnson Memorandum, Field Office Director (FOD) or Special Agent in Charge (SAC) approval is generally required in advance of civil immigration enforcement or removal actions taken by ICE officers and agents in cases *other than* presumed priority cases. Where exigent circumstances and public safety concerns make it impracticable to obtain pre-approval for an at-large enforcement action (e.g., where a noncitizen poses an imminent threat to life or an imminent substantial threat to property), approval should be requested within 24 hours following the action. *See* Johnson Memorandum at 6.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 193 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 4 of 13

resources is a consideration in all civil immigration enforcement and removal decisions, including but not limited to the following:

- Deciding whether to issue a detainer, or whether to assume custody of a noncitizen subject to a previously issued detainer;

- Deciding whether to issue, reissue, serve, file, or cancel a Notice to Appear (NTA);

- Deciding whether to focus resources only on administrative violations or conduct;

- Deciding whether to stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;

- Deciding whether to detain or release from custody subject to conditions or on the individual's own recognizance;

- Deciding whether to settle, dismiss, oppose or join in a motion on a case, narrow the issues in dispute through stipulation, or pursue appeal in removal proceedings;

- Deciding when and under what circumstances to execute final orders of removal; and

- Deciding whether to grant deferred action or parole.

This non-exhaustive list of civil immigration enforcement and removal decisions identifies opportunities at every stage of the process to ensure the most just, fair, and legally appropriate outcome, whether that outcome is a grant of relief, an order of removal, or an exercise of discretion that allows the noncitizen to pursue immigration benefits outside the context of removal proceedings. This memorandum provides interim guidance regarding the following enforcement decisions within OPLA's purview: filing or canceling an NTA; moving to administratively close or continue proceedings; moving to dismiss proceedings; pursuing appeal; joining in a motion to grant relief or to reopen or remand removal proceedings and entering stipulations; and taking a position in bond proceedings, as discussed below.[8] While discretion may be exercised at any stage of the process and changed circumstances for an individual denied prosecutorial discretion at one stage may warrant reconsideration at a later stage, discretion generally should be exercised at the earliest point possible, once relevant facts have been established to properly inform the decision.

---

[8] While resources should be allocated to the presumed priorities enumerated above, "nothing in [the Interim M]emorandum prohibits the apprehension or detention of individuals unlawfully in the United States who are not identified as priorities herein." Interim Memorandum at 3. *See also* Johnson Memorandum at 3 ("[I]t is vitally important to note that the interim priorities do not require or prohibit the arrest, detention, or removal of any noncitizen."); Maher Memorandum at 3 ("Neither the presumed priorities nor the guidance regarding other priority cases subject to preapproval are intended to require or prohibit taking or maintaining a civil immigration enforcement action against an individual noncitizen."). OPLA may dedicate its resources to pursuing enforcement action against a noncitizen who does not fall into one of the presumed enforcement priorities where the FOD or SAC has approved taking enforcement action in the case, where the NTA-issuing agency has exercised its own discretion to prioritize the noncitizen for enforcement under the Interim Memorandum, or where the Chief Counsel, in their discretion, decides that OPLA resources should be committed to the case.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD  Document 12  Filed 10/01/21  Page 194 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 5 of 13

This memorandum is intended to provide guidance pending completion of the DHS-wide comprehensive review of civil immigration enforcement and removal policies and practices contemplated in the Interim Memorandum. To that end, additional guidance will be forthcoming.

## II.    Prosecutorial Discretion

OPLA will continue to fulfill its statutory responsibility as DHS's representative before the Executive Office for Immigration Review (EOIR) with respect to exclusion, deportation, and removal proceedings. *See* 6 U.S.C. § 252(c). In that capacity, prosecutorial discretion plays an important role in OPLA's enforcement decision making. The following general guidance on prosecutorial discretion should inform how OPLA attorneys apply the enforcement priorities of DHS and ICE.

OPLA attorneys may exercise prosecutorial discretion in proceedings before EOIR, subject to direction from their chain of command and applicable guidance from DHS. In exercising such discretion, OPLA attorneys will adhere to the enduring principles that apply to all of their activities: upholding the rule of law; discharging duties ethically in accordance with the law and professional standards of conduct; following the guidelines and strategic directives of senior leadership; and exercising considered judgment and doing justice in individual cases, consistent with DHS and ICE priorities.

Prosecutorial discretion is the longstanding authority of an agency charged with enforcing the law to decide where to focus its resources and whether or how to enforce, or not to enforce, the law against an individual. In the context of OPLA's role in the administration and enforcement of the immigration laws, prosecutorial discretion arises at different stages of the removal process, takes different forms, and applies to a variety of determinations. As the Supreme Court explained more than two decades ago when discussing the removal process, "[a]t each stage the Executive has discretion to abandon the endeavor . . . ."[9]

OPLA's policy is to exercise prosecutorial discretion in a manner that furthers the security of the United States and the faithful and just execution of the immigration laws, consistent with DHS's and ICE's enforcement and removal priorities. While prosecutorial discretion is not a formal program or benefit offered by OPLA, OPLA attorneys are empowered to exercise prosecutorial discretion in their assigned duties consistent with this guidance. Among other decisions, the exercise of discretion also generally includes whether to assign an attorney to represent the department in a particular case. *See* 8 C.F.R. § 1240.2(b) (creating expectation that DHS will assign counsel to cases involving mental competency, noncitizen minors, and contested removability, but that otherwise, "in his or her discretion, whenever he or she deems such assignment necessary or advantageous, the General Counsel *may* assign a [DHS] attorney to any other case at any stage of the proceeding") (emphasis added). OPLA Chief Counsel are permitted to exercise this discretion on my behalf, in appropriate consultation with their chain of command.

In determining whether to exercise prosecutorial discretion, OPLA should consider relevant aggravating and mitigating factors. Relevant mitigating factors may include a noncitizen's length

---

[9] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483-84 (1999).

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 195 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 6 of 13

of residence in the United States; service in the U.S. military; family or community ties in the United States; circumstances of arrival in the United States and the manner of their entry; prior immigration history; current immigration status (where lawful permanent resident (LPR) status generally warrants greater consideration, but not to the exclusion of other noncitizens depending on the totality of the circumstances); work history in the United States; pursuit or completion of education in the United States; status as a victim, witness, or plaintiff in civil or criminal proceedings; whether the individual has potential immigration relief available; contributions to the community; and any compelling humanitarian factors, including poor health, age, pregnancy, status as a child, or status as a primary caregiver of a seriously ill relative in the United States. Relevant aggravating factors may include criminal history, participation in persecution or other human rights violations, extensiveness and seriousness of prior immigration violations (e.g., noncompliance with conditions of release, prior illegal entries, removals by ICE), and fraud or material misrepresentation. Where a criminal history exists, OPLA should consider the extensiveness, seriousness, and recency of the criminal activity, as well as any indicia of rehabilitation; extenuating circumstances involving the offense or conviction; the time and length of sentence imposed and served, if any; the age of the noncitizen at the time the crime was committed; the length of time since the offense or conviction occurred; and whether subsequent criminal activity supports a determination that the noncitizen poses a threat to public safety. These factors are not intended to be dispositive or exhaustive. Discretion should be exercised on a case-by-case basis considering the totality of the circumstances.

Requests for prosecutorial discretion may be made in accordance with the instructions provided in Section IX of this guidance. Where a request for prosecutorial discretion is made, the OPLA attorney handling the case must document that request in PLAnet, identifying the requester and the substance of the request and uploading any supporting documentation consistent with standard operating procedures (SOPs).[10] Based on my experience working with you over the past few months, I believe strongly in the professionalism, legal skill, and judgment of OPLA's attorneys, working through their supervisors to advise our clients and manage an enormous workload with limited resources. I trust and expect that all OPLA field attorneys, under the leadership of our Chief Counsel, will work strenuously to ensure the timely and appropriate exercise of discretion in meritorious removal cases. That being said, given the tremendous importance of achieving just and correct outcomes on these issues, it is entirely permissible for any OPLA attorney to raise prosecutorial discretion decisions through their chain of command to OPLA headquarters (HQ) for additional review or discussion.

Appropriate exercises of prosecutorial discretion are in the mutual interest of both the person benefitting from the exercise of discretion and the government itself. This mutual interest is no less significant because a noncitizen does not affirmatively request prosecutorial discretion. In the absence of an affirmative request for prosecutorial discretion by a noncitizen or a noncitizen's representative, OPLA attorneys should nonetheless examine the cases to which they are assigned to determine independently whether a favorable exercise of discretion may be

---

[10] If the case involves classified information, the OPLA attorney must transmit such information only in accordance with the DHS Office of the Chief Security Officer Publication, *Safeguarding Classified & Sensitive But Unclassified Information Reference Pamphlet* (Feb. 2012, or as updated), and all other applicable policies governing the handling of classified information.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 196 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 7 of 13

appropriate. This affirmative duty to evaluate assigned cases is central to an OPLA attorney's job. Chief Counsel should include in their local SOPs ways to address these cases including how OPLA attorneys should document their affirmative consideration of prosecutorial discretion in PLAnet.

## III.   Notices to Appear

When a legally sufficient, appropriately documented NTA has been issued by a DHS component consistent with the component's issuing and enforcement guidelines, [11] it will generally be filed with the immigration court and proceedings litigated to completion unless the Chief Counsel exercises prosecutorial discretion based on their assessment of the case. [12] As prosecutorial discretion is expected to be exercised at all stages of the enforcement process and at the earliest moment practicable, it may be appropriate for the Chief Counsel to conclude that a legally sufficient, appropriately documented administrative immigration case warrants non-filing of an NTA. (b)(5)

(b)(5)

(b)(5)           Where an NTA is issued but not filed with the immigration court pursuant to this section, OPLA should document the reasoning for this position in PLAnet and the OPLA Field Location should work with its local Enforcement and Removal Operations (ERO) Field Office to cancel the NTA and inform the noncitizen of the cancellation. [13]

## IV.   Administrative Closure and Continuance of Proceedings

In the past, OPLA had broad authority to exercise prosecutorial discretion by agreeing to administrative closure of cases by EOIR. However, due to conflicting court of appeals decisions

---

[11] This includes NTAs submitted to OPLA by ICE operational components as well as U.S. Citizenship and Immigration Services (USCIS) and U.S. Customs and Border Protection (CBP) for review. "Appropriately documented" in this context means that, in OPLA's litigation judgment, sufficient information has been provided by the NTA-issuing component to carry any DHS burden of proof. *See* INA § 240(c), 8 C.F.R. § 1240.8.

[12] Separate and apart from the enforcement priority framework outlined in the Interim Memorandum and Johnson Memorandum, certain noncitizens have an established right to be placed into removal proceedings. *See, e.g.*, 8 C.F.R. §§ 208.14(c)(1) (requiring referral for removal proceedings of a removable noncitizen whose affirmative asylum application is not granted by USCIS); 216.4(d)(2) (requiring NTA issuance to noncitizen whose joint petition to remove conditional basis of LPR status is denied by USCIS); 216.5(f) (same; USCIS denial of application for waiver of the joint petition requirement). In other cases, USCIS may issue an NTA on a discretionary basis to a noncitizen who wishes to pursue immigration benefits before the immigration court. Although such cases do not fall within the priority framework, absent an affirmative request by the noncitizen *prior to the merits hearing* for the favorable exercise of prosecutorial discretion to dismiss removal proceedings, OPLA attorneys should generally litigate them to completion. If such noncitizens are ordered removed, requests for prosecutorial discretion would then most properly be made to ERO for evaluation in accordance with the Department's and ICE's stated priorities.

[13] The NTA cancellation regulation vests immigration officers who have the authority to *issue* NTAs with the authority to also cancel them. 8 C.F.R. § 239.2(a). The regulation expresses a preference for certain NTAs to be cancelled by the same officer who issued them "unless it is impracticable" to do so. *Id.* § 239.2(b). Given the enormous size of the EOIR docket, current OPLA staffing levels, and complexities associated with routing any significant number of NTAs back to specific issuing officers stationed around the country, it would be impracticable to require OPLA attorneys to do so. By contrast, the local ERO Field Offices with which OPLA Field Locations routinely interact are well suited to assist with this function promptly and efficiently.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 197 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 8 of 13

on the validity of *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018) (limiting administrative closure by EOIR adjudicators to circumstances where a previous regulation or judicially approved settlement expressly authorizes such an action), the availability of administrative closure as a form of prosecutorial discretion for ICE and a tool of docket management for EOIR is limited in certain jurisdictions for certain types of cases. [14] Nevertheless, OPLA retains authority to handle pending cases on EOIR's docket by deciding whether to agree to a continuance for "good cause shown" under 8 C.F.R. § 1003.29, *see also Matter of L-A-B-R-*, I&N Dec. 405 (A.G. 2018) (interpreting this regulation), and whether to seek, oppose, or join in a motion for dismissal of proceedings pursuant to 8 C.F.R. § 1239.2(c).

The presumed priorities outlined above will be a significant factor informing the position that OPLA attorneys take in response to continuance motions made by noncitizens in removal proceedings. Indeed, given the comprehensive review of immigration enforcement and removal policies and practices directed by Section A of the Interim Memorandum, OPLA attorneys are authorized to take the general position that "good cause" exists in cases in which noncitizens who fall outside the presumed priorities seek to have their cases continued to await the outcome of that comprehensive review. [15] Continuing cases in these circumstances may conserve OPLA resources in cases where the ultimate arrest, detention, and removal of a noncitizen are unlikely. Accordingly, while immigration judges (IJs) will make case-by-case assessments whether continuance motions are supported by "good cause shown" under 8 C.F.R. § 1003.29, and OPLA attorneys should assess each continuance motion on its own terms, in the absence of serious aggravating factors, the fact that a noncitizen is not a presumed priority should weigh heavily in favor of not opposing the noncitizen's motion. Before opposing a continuance in such cases, OPLA attorneys should confer with their supervisors. The reason for opposing the motion should also be documented in PLAnet.

## V.    Dismissal of Proceedings

With approximately 1.3 million cases on the immigration courts' dockets nationwide, and the varied procedural postures of such cases, including many set for future merits hearings on relief or protection from removal, OPLA will cover, at a later date and in a comprehensive fashion, how to address the potential dismissal of proceedings consistent with its limited resources and DHS and ICE guidance. The size of the court backlog and extraordinary delays in completing cases impede the interests of justice for both the government and respondents alike and undermine public confidence in this important pillar of the administration of the nation's

---

[14] *Compare Hernandez-Serrano v. Barr*, 981 F.3d 459 (6th Cir. 2020) (agreeing with *Castro-Tum*), *with Arcos Sanchez*, 2021 WL 1774965, --- F.3d --- (3d Cir. 2021) (rejecting *Castro-Tum* and finding that EOIR regulations giving broad case management authority to its adjudicators includes administrative closure authority), *Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020) (Coney Barrett, J.) (same), *and Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019) (same). Notwithstanding this variation in circuit law, administrative closure remains available under *Castro-Tum* for T and V nonimmigrant visa applicants. *See* 8 C.F.R. §§ 1214.2(a) (expressly allowing for administrative closure for noncitizens seeking to apply for T nonimmigrant status), 1214.3 (same; V nonimmigrant status).

[15] This does not imply that "good cause" cannot exist in cases of noncitizens who fall into the presumed priority categories or are otherwise a civil immigration enforcement or removal priority. OPLA attorneys retain discretion to, as appropriate, agree to continuances in such cases.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD    Document 12    Filed 10/01/21    Page 198 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 9 of 13

immigration laws. In advance of future guidance, cases that generally will merit dismissal in the absence of serious aggravating factors include:

### 1. *Military Service Members or Immediate Relatives Thereof*[16]

A favorable exercise of prosecutorial discretion (i.e., concurrence with or non-opposition to a motion for dismissal of proceedings without prejudice) generally will be appropriate if a noncitizen or immediate relative is a current or former member (honorably discharged) of the Armed Forces, including the U.S. Army, Air Force, Navy, Marine Corps, Coast Guard, and Space Force, or a member of a reserve component of the Armed Forces or National Guard, particularly if the individual may qualify for U.S. citizenship under sections 328 or 329 of the INA.[17]

### 2. *Individuals Likely to be Granted Temporary or Permanent Relief*

When a noncitizen has a viable avenue available to regularize their immigration status outside of removal proceedings, whether through temporary or permanent relief, it generally will be appropriate to move to dismiss such proceedings without prejudice so that the noncitizen can pursue that relief before the appropriate adjudicatory body.[18] This may be appropriate where, for instance, the noncitizen is the beneficiary of an approved Form I-130, Petition for Alien Relative, and appears prima facie eligible for either adjustment of status under INA section 245 or an immigrant visa through consular processing abroad, including in conjunction with a provisional waiver of unlawful presence under 8 C.F.R. § 212.7(e), immediately or in the near future; appears prima facie eligible to register for Temporary Protected Status (TPS);[19] or is a child who appears prima facie eligible to pursue special immigrant juvenile status under INA section 101(a)(27) and 8 C.F.R. § 204.11. In such a circumstance, the exercise of prosecutorial discretion itself can help to promote the integrity of our immigration system by enhancing the ability of certain noncitizens to come into compliance with our immigration laws.

### 3. *Compelling Humanitarian Factors*

The favorable exercise of prosecutorial discretion—including agreeing to dismissal of proceedings without prejudice—generally will be appropriate when compelling humanitarian factors become apparent during NTA review or litigation of the case. While some factors will weigh more heavily than others, this can include cases where, for instance, the noncitizen has a serious health condition, is elderly, pregnant, or a minor; is the primary caregiver to, or has an

---

[16] *See* Email from Kenneth Padilla, DPLA, Field Legal Operations, to all OPLA attorneys, *Refresher Guidance Regarding United States Veterans and Military Service Members in Removal* (Nov. 18, 2019).

[17] Relatedly, OPLA attorneys must continue to follow ICE guidance related to the evaluation of claims to U.S. citizenship. *See* ICE Directive 16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015).

[18] DHS regulations expressly contemplate joint motions to terminate removal proceedings in appropriate cases in which the noncitizen is seeking to apply for U nonimmigrant status. *See* 8 C.F.R. § 214.14(c)(1)(i).

[19] Stipulation to TPS in such cases may also be an option, in the exercise of discretion. *Cf. Matter of D-A-C-*, 27 I&N. Dec. 575 (BIA 2019) (discussing discretionary authority of IJs to grant TPS); Section VII, *infra*.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 199 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 10 of 13

immediate family or household member who is, known to be suffering from serious physical or mental illness; is a victim of domestic violence, human trafficking, or other serious crime; [20] came to the United States as a young child and has since lived in the United States continuously; or is party to significant collateral civil litigation (e.g., family court proceedings, non-frivolous civil rights or labor claims).

### 4. Significant Law Enforcement or Other Governmental Interest

Where a noncitizen is a cooperating witness or confidential informant or is otherwise significantly assisting state or federal law enforcement, it may be appropriate in certain cases to agree to the dismissal of proceedings without prejudice. "Law enforcement" in this context includes not only conventional criminal law enforcement, but also enforcement of labor and civil rights laws. In exercising discretion related to law enforcement equities, OPLA attorneys should be guided by the perspectives of the relevant investigating agency components (e.g., the Office of Inspector General, Office for Civil Rights and Civil Liberties, Department of Justice Immigrant and Employee Rights Section, Department of Labor, National Labor Relations Board, Equal Employment Opportunity Commission, other federal agencies, ERO, Homeland Security Investigations, and any relevant state counterparts). Additionally, such law enforcement entities may have tools at their disposal that OPLA does not, including stays of removal, deferred action, T and U nonimmigrant status law enforcement certification, and requests for S nonimmigrant classification. In any event, national security, border security, and public safety are paramount in deciding whether to continue litigating removal proceedings.

### 5. Long-Term Lawful Permanent Residents

A favorable exercise of prosecutorial discretion should also be considered for LPRs who have resided in the United States for many years, particularly when they acquired their LPR status at a young age and have demonstrated close family and community ties. Dismissal of such cases that do not present serious aggravating factors will allow the noncitizen to maintain a lawful immigration status and conserve finite government resources.

When OPLA agrees to dismissal of removal proceedings as an exercise of prosecutorial discretion in the categories above, the reasoning for this position should be recorded in PLAnet.

## VI.    Pursuing Appeal

In our immigration system, DHS initiates removal proceedings while IJs and the Board of Immigration Appeals (BIA) exercise the Attorney General's delegated authority to adjudicate issues of removability and relief and protection from removal. OPLA attorneys continue to possess the discretion to take legally viable appeals of IJ decisions and make appropriate legal arguments in response to noncitizen appeals and motions. [21] Appellate advocacy should generally

---

[20] *See generally* ICE Directive No. 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (June 17, 2011).

[21] OPLA headquarters divisions should continue to coordinate with impacted DHS Office of the General Counsel (OGC) headquarters and component counsel offices when preparing briefs and motions in significant litigation.

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 200 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 11 of 13

focus on priority cases—national security, border security, and public safety. Of course, other considerations, such as significant aggravating and mitigating factors and the need to seek clarity on an important legal issue, are appropriate for OPLA attorneys to take into account, consistent with direction from their respective Chief Counsel.

Consistent with any local guidance issued by their respective Chief Counsel, [22] OPLA attorneys may waive appeal in a case that is not a priority. OPLA attorneys may also decline to appeal where there is little likelihood of success before the BIA. While OPLA attorneys may reserve appeal to ensure the articulation of a fully reasoned decision by an IJ to help inform whether the appeal should ultimately be perfected, OPLA attorneys may also waive appeal, where appropriate, in the interest of judicial efficiency and in recognition of limited resources.

OPLA Field Locations generally coordinate appellate advocacy before the BIA with the Immigration Law and Practice Division (ILPD). [23] OPLA Field Locations and ILPD should continue to work together, along with any other relevant OPLA HQ divisions, to craft strong and nationally consistent appellate work product. Again, in committing OPLA resources to perfecting appeal and drafting appellate pleadings, Field Locations and ILPD should focus their efforts on presumed priority cases. Furthermore, to ensure efficiency in litigation, OPLA attorneys should generally limit briefing schedule extension requests before the BIA and should not request briefing extensions in detained matters without prior approval from a supervisor. However, it is permissible to agree to briefing extension requests filed by non-detained noncitizens whose cases are not presumed priorities.

## VII.   Joining in Motions for Relief and Motions to Reopen and Entering Stipulations

In order to conserve resources and expedite resolution of a case—as well as where doing so would fulfill the duty to do justice and achieve the best outcome—OPLA attorneys have the discretion to join motions for relief (oral or written), consistent with any local guidance issued by their respective Chief Counsel. An OPLA attorney should be satisfied that the noncitizen qualifies for the relief sought under law and merits relief as a matter of discretion or qualifies

---

[22] Chief Counsel should review existing local practice guidance to ensure that it conforms to current interim enforcement priorities and amend such guidance where necessary. Similarly, any new local practice guidance should conform to this memorandum and the presumed priorities.

[23] *See* Gwendolyn Keyes Fleming, *Promoting Excellence in OPLA's Advocacy Before the Board of Immigration Appeals* (Feb. 22, 2016); Email Message from Kenneth Padilla and Adam Loiacono, *Final Rule – Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure* (Jan. 22, 2021). (b)(5)
(b)(5)

(b)(5)                                                                                                             Further,
special procedures apply in the context of national security and human rights violator cases. *See* Email Message from Riah Ramlogan, *OPLA Supplemental Guidance on the Proper Handling of National Security and Human Rights Violator Cases* (May 28, 2015), *as supplemented and modified by* OPLA Memorandum, *Proper Handling of OPLA National Security (NS) Cases* (May 21, 2015) and OPLA Memorandum, *Proper Handling of OPLA Human Rights Violator (HRV) Cases* (May 21, 2015).

Case 2:21-cv-01208-DJC-CKD    Document 12    Filed 10/01/21    Page 201 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 12 of 13

under law for protection from removal when agreeing to such motions. [24] Such decisions to join in motions should be made in a manner that facilitates the efficient operation of OPLA Field Locations in immigration court. The same applies with respect to narrowing disputed issues through stipulation in order to promote fair and efficient proceedings.

OPLA intends to address in future guidance when to join in motions to reopen cases with final removal orders. In the meantime, OPLA should continue addressing requests for joint motions to reopen on a case-by-case basis, giving favorable consideration to cases that are not priorities and where dismissal would be considered under Section V, *supra*.

## VIII.  Bond Proceedings

OPLA attorneys appearing before EOIR in bond proceedings must follow binding federal and administrative case law regarding the standards for custody redeterminations. [25] OPLA attorneys should also make appropriate legal and factual arguments to ensure that DHS's interests, enforcement priorities, and custody authority are defended. In particular, in bond proceedings OPLA attorneys should give due regard to custody determinations made by an authorized immigration officer pursuant to 8 C.F.R. § 236.1(c)(8), while not relinquishing the OPLA attorney's own responsibility to consider and appropriately apply the factors and considerations set forth in the Interim Memorandum, the Johnson Memorandum, the Maher Memorandum, and this guidance. Where a noncitizen produces new information that credibly mitigates flight risk or danger concerns, OPLA attorneys have discretion to agree or stipulate to a bond amount or other conditions of release with a noncitizen or their representative, and to waive appeal of an IJ's order redetermining the conditions of release in such cases. [26]

---

[24] *See, e.g.*, INA §§ 208 (asylum), 240A(a) (cancellation of removal for certain permanent residents), 240A(b) (cancellation of removal and adjustment of status for certain nonpermanent residents), 240B (voluntary departure), 245 (adjustment of status), 249 (registry). Additionally, OPLA attorneys represent DHS in cases where noncitizens apply for withholding of removal under INA section 241(b)(3) and protection under the regulations implementing U.S. obligations under Article 3 of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). *See, e.g.*, 8 C.F.R. §§ 1208.16-.18. Withholding and CAT protection both impose significant burdens of proof (i.e., qualifying mistreatment must be "more likely than not" to occur). When a noncitizen moves to reopen their proceedings to pursue such non-discretionary protection, and the motion is supported by evidence that strongly suggests the noncitizen will be able to meet their burden, OPLA attorneys should ordinarily not oppose reopening and can also consider joining in such motions, as resources permit.

[25] *See, e.g., Matter of R-A-V-P-*, 27 I&N Dec. 803, 804-05 (BIA 2020) (assessing whether respondent had met burden to demonstrate that he did not pose a risk of flight in INA section 236(a) discretionary detention case); *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018) (addressing interplay between flight risk and dangerousness considerations in INA section 236(a) discretionary detention case involving recidivist drunk driver); *Matter of Kotliar*, 24 I&N Dec. 124 (BIA 2007) (discussing general parameters of INA section 236(c) mandatory detention).

[26] DHS and EOIR regulations recognize that, as a prerequisite for even being considered for discretionary release by an ICE officer under INA section 236(a), a noncitizen "must demonstrate *to the satisfaction of the officer* that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (emphasis added). Additionally, prior to agreeing to non-monetary conditions of release, OPLA attorneys should consult with their local ERO Field Offices to ensure that such conditions are practicable (e.g., GPS monitoring, travel restrictions).

**FOR OFFICIAL USE ONLY**

Case 2:21-cv-01208-DJC-CKD   Document 12   Filed 10/01/21   Page 202 of 203
OPLA Guidance Regarding Civil Immigration Enforcement and Removal Policies and Priorities
Page 13 of 13

IJ custody redetermination decisions that are factually or legally erroneous are subject to appeal to the BIA. Decisions on whether to appeal or to continue to prosecute an appeal should be guided by the presumed priorities and the sound use of finite resources. *See* Section VI, *supra*. It may also be appropriate for an OPLA Field Location to seek a discretionary or automatic stay under 8 C.F.R. § 1003.19(i) in conjunction with a DHS bond appeal, particularly where issues of public safety are implicated. OPLA Field Locations should work closely with ILPD and other relevant OPLA HQ divisions to identify instances where use of this authority may be warranted.[27]

## IX.    Responding to Inquiries

Each OPLA Field Location should maintain email inboxes dedicated to receiving inquiries related to this memorandum, including requests for OPLA to favorably exercise its discretion, and socialize the existence and use of these mailboxes with their respective local immigration bars including non-governmental organizations assisting or representing noncitizens before EOIR. OPLA Field Locations and sub-offices should strive to be as responsive to such inquiries as resources permit.

## X.    Oversight and Monitoring

This memorandum serves as interim guidance, and OPLA's experience operating under this guidance will inform the development of subsequent guidance aligning with the outcome of the comprehensive review directed by the Interim Memorandum. It is therefore critical that prosecutorial discretion decision-making information be promptly and accurately documented in PLAnet and that SOPs be implemented to ensure consistent PLAnet recordkeeping. Field Legal Operations (FLO) should issue such SOPs within two weeks of this memorandum. FLO's regular review of PLAnet and the SOPs will form the basis of recommendations on process improvements, if and as necessary.

**Official Use Disclaimer**

This memorandum, which may contain legally privileged information, is intended *For Official Use Only*. It is intended solely to provide internal direction to OPLA attorneys and staff regarding the implementation of Executive Orders and DHS guidance. It is not intended to, does not, and may not be relied upon to create or confer any right or benefit, substantive or procedural, enforceable at law or equity by any individual or other party, including in removal proceedings or other litigation involving DHS, ICE, or the United States, or in any other form or manner whatsoever. Likewise, this guidance does not and is not intended to place any limitations on DHS's otherwise lawful enforcement of the immigration laws or DHS's litigation prerogatives.

---

[27] Existing OPLA guidance on automatic and discretionary stays remains in effect. *See, e.g.,* Barry O'Melinn, *Revised Procedures for Automatic Stay of Custody Decisions by Immigration Judges* (Oct. 26, 2006).

**FOR OFFICIAL USE ONLY**

**Proof of service**

**Alexandra Ferreira da Silva**

10232 Luther Rd, unit B

Live Oak, ca, 95953


Was provide to the Robert T. Matsui Federal Courthouse. Address 501 I St, Sacramento, CA 95814 – 4th Floor by regular mail the following document.

*Claim amended Serving by hand and* to inform that the others parties will receive it by their personal e-mail.


Alexandra Ferreira da Silva

September 30, 2021

